## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| LIFE UNIFORM HOLDING CORP., *et al.*,[1] | ) | Case No. 13-11391 (  ) |
|  | ) |  |
| Debtors. | ) | Joint Administration Requested |
|  | ) |  |

## DEBTORS' MOTION FOR
## ENTRY OF INTERIM AND FINAL ORDERS
## (I) DETERMINING ADEQUATE ASSURANCE OF PAYMENT
## FOR FUTURE UTILITY SERVICES, (II) PROHIBITING UTILITY
## PROVIDERS FROM ALTERING, REFUSING OR DISCONTINUING UTILITY
## SERVICE AND (III) ESTABLISHING ADEQUATE ASSURANCE PROCEDURES

Life Uniform Holding Corp., Healthcare Uniform Company, Inc., and Uniform City National, Inc., the debtors and debtors-in-possession herein (collectively, the "***Debtors***"),[2] respectfully represent:

### Jurisdiction

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.      Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer-identification number, are: Life Uniform Holding Corp. (1018), Healthcare Uniform Company, Inc. (0640), and Uniform City National, Inc. (0392).

[2]     A detailed description of the Debtors and their businesses, and the facts and circumstances supporting this motion and the Debtors' chapter 11 cases, are set forth in greater detail in the Declaration of Robert Frezza (the "***First Day Declaration***"), filed contemporaneously with the Debtors' voluntary petitions for relief filed under chapter 11 of title 11 of the United States Code (the "***Bankruptcy Code***"), which were filed on May 29, 2013 (the "***Petition Date***").

3.    The bases for the relief requested herein are sections 105(a) and 366 of the Bankruptcy Code, Rule 6003(b) of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***") and Rule 9013-1(m) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "***Local Rules***").

### Relief Requested

4.    By this motion, the Debtors request entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B** (the "***Interim Order***" and "***Final Order***," respectively), (a) determining that the Debtors' utility providers (as such term is used in section 366 of the Bankruptcy Code and as described herein, collectively the "***Utility Providers***") have been provided with adequate assurance of payment within the meaning of section 366 of the Bankruptcy Code, (b) approving the Debtors' proposed adequate assurance, (c) prohibiting the Utility Providers from altering, refusing or discontinuing services on account of prepetition amounts outstanding or on account of any perceived inadequacy of the Debtors' proposed adequate assurance pending entry of the Final Order, (d) determining that the Debtors are not required to provide any additional adequate assurance beyond what is proposed by this motion and the adequate assurance procedures annexed as **Exhibit 1** to **Exhibit A** attached hereto and incorporated herein by reference (the "***Adequate Assurance Procedures***") and (e) scheduling a final hearing (the "***Final Hearing***") to consider entry of the Final Order to the extent a Final Hearing is necessary.

### Basis for Relief

**A.    Utility Services**

5.    In the ordinary course of business, the Debtors obtain gas, water, sewer, electric, telephone, internet and other similar utility services from various Utility Providers. As of the

2

Petition Date, approximately 357 Utility Providers render these services to the Debtors. A list of the Utility Providers that provide services to the Debtors as of the Petition Date (the "*Utility Service List*") is set forth on **Exhibit 2** to **Exhibit A** attached hereto.[3] On average, the Debtors spend approximately $77,000 per month for utility services.

6.     Uninterrupted utility services are essential to the Debtors' ongoing operations. Indeed, any interruption in utility services – even for a brief period of time – would negatively affect the Debtors' operations, customer relationships, revenues and profits, thereby seriously jeopardizing the Debtors' reorganization efforts and, ultimately, value and creditor recoveries. Thus, it is critical that utility services continue uninterrupted during these chapter 11 cases.

**B.    The Proposed Adequate Assurance**

7.     The Debtors intend to pay postpetition obligations owed to the Utility Providers in a timely manner.  Contemporaneously herewith, the Debtors have filed a motion seeking authority to enter into a debtor in possession credit facility (the "*Proposed DIP Facility*").[4]  The Debtors expect that cash flows from operations and borrowings under the Proposed DIP Facility will be sufficient to pay postpetition obligations related to their utility services.

---

[3]   The Debtors reserve the right to modify the Utility Service List with regard to the Utility Providers, as necessary. The listing of an entity on the Utility Service List is not an admission that such entity is a Utility Provider within the meaning of section 366 of the Bankruptcy Code. The Debtors reserve the right to contest any such characterization at any time in the future.

[4]   Contemporaneously herewith, the Debtors filed a motion to approve the Proposed DIP Facility. *See Debtors' Motion for Entry of Interim and Final Orders Pursuant to 11 U.S.C. Sections 105, 361, 362, 363, and 364 and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (1) Authorizing Incurrence by the Debtors of Post Petition Secured Indebtedness with Priority Over All Secured Indebtedness and with Administrative Superpriority, (2) Granting Liens, (3) Authorizing Use of Cash Collateral by the Debtors Pursuant to 11 U.S.C. Section 363 and Providing for Adequate Protection, (4) Modifying the Automatic Stay, and (5) Scheduling Final Hearing.*

3

8.    To provide additional assurance of payment for future services to the Utility Providers, the Debtors propose to deposit $38,678 – which represents an amount equal to the estimated aggregate cost for two weeks of utility service, calculated as a historical average over the past twelve months (the "*Adequate Assurance Deposit*") – into a segregated, interest-bearing account (the "*Utility Deposit Account*") for the benefit of Utility Providers on or before the date that is 20 days after the Petition Date.[5]

9.    In the event that the Debtors amend the Utility Service List to add one or more additional Utility Providers, the Debtors shall promptly add to the Adequate Assurance Deposit in the Utility Deposit Account the estimated amount equivalent to two weeks of utility services for each subsequently-added Utility Provider.

10.    The Debtors submit that the Adequate Assurance Deposit, in conjunction with the Debtors' demonstrated ability to pay for future utility services in the ordinary course of business (together, the "*Proposed Adequate Assurance*"), constitutes sufficient adequate assurance to the Utility Providers in full satisfaction of section 366 of the Bankruptcy Code.

C.    **The Adequate Assurance Procedures**

11.    If a Utility Provider is not satisfied with the Proposed Adequate Assurance, any such Utility Provider may make requests for additional or different adequate assurance of future payment pursuant to the Adequate Assurance Procedures (each a "*Request*").

12.    The Adequate Assurance Procedures set forth a streamlined process to enable Utility Providers to address potential concerns with respect to the Proposed Adequate Assurance,

---

[5]    The Debtors further request that any Adequate Assurance Deposit required by and deposited into the Utility Deposit Account on behalf of any Utility Provider, be returned to the Debtors after the effective date of any plan of reorganization in these chapter 11 cases or a sale of the Debtors pursuant to section 363 of the Bankruptcy Code, if not applied earlier by any such Utility Provider.

4

while at the same time allowing the Debtors to continue their business operations uninterrupted. More specifically, the Adequate Assurance Procedures permit a Utility Provider to object to the Proposed Adequate Assurance by filing and serving a Request upon the Notice Parties (as defined in the Adequate Assurance Procedures). The Debtors may then resolve, in their discretion, subject to the prepetition secured lender's consent, any Request by mutual agreement with the Utility Provider and without further order by the Court. If the Request cannot be resolved, the Debtors request the right to seek a hearing with the Court to resolve the Request. Furthermore, the Adequate Assurance Procedures set forth notice procedures to Utility Providers subsequently added to the Utility Service List. Subsequently added Utility Providers will also be bound by the Adequate Assurance Procedures. The Debtors request that the relief granted in the Interim Order and the Final Order apply to all Utility Providers rendering utility services to the Debtors and not be limited to those listed on the Utility Service List.

**D.     Final Hearing Date**

13.     Section 366(c)(2) of the Bankruptcy Code provides that a utility provider may alter, refuse or discontinue service if the Debtor does not provide adequate assurance of payment "satisfactory" to the utility provider within 30 days of the petition date. The Debtors request that, pursuant to the Adequate Assurance Procedures, all Utility Providers be required to raise any objections to the Proposed Adequate Assurance so that objections may be heard within the first 30 days of these chapter 11 cases. Requiring objections to be heard within 30 days will avoid the potentially harmful consequence of a Utility Provider claiming that the Proposed Adequate Assurance is not "satisfactory" and suddenly discontinuing service.

14.     Accordingly, the Debtors request that the Court schedule the Final Hearing within 30 days after the Petition Date. The Debtors will send notice of the Final Hearing (the "*Final*

5

*Hearing Notice*") annexed as **Exhibit 3** to **Exhibit A** attached hereto, together with this motion and the Interim Order, to all Utility Providers listed on the Utility Service List, no later than three business days after entry of the Interim Order. The Debtors further request that in the event no objections to entry of the Final Order are timely received, the Court may enter the Final Order without need for the Final Hearing.

**Supporting Authority**

**A.     The Utility Providers are Adequately Assured of Payment for Future Service**

15.     Approval of the Proposed Adequate Assurance, including the Adequate Assurance Deposit and the Adequate Assurance Procedures, is appropriate pursuant to sections 105(a) and 366 of the Bankruptcy Code.[6]

16.     Section 366(a) of the Bankruptcy Code provides that "a utility may not alter, refuse, or discontinue service to, or discriminate against, the trustee or the debtor solely on the basis of the commencement of a case under this title or that a debt owed by the debtor to such utility for service rendered before the order for relief was not paid when due." 11 U.S.C. § 366(a).

17.     Sections 366(b) and (c), however, provide that a utility may discontinue service to a debtor after specified periods where the debtor has failed to provide adequate assurance of payment for future services. Specifically, section 366(b) of the Bankruptcy Code provides that a utility provider "may alter, refuse, or discontinue service if neither the trustee nor the debtor,

---

[6]     Section 105(a) of the Bankruptcy Code also provides that the Court "may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." The purpose of section 105(a) of the Bankruptcy Code is "to assure the bankruptcy courts [sic] power to take whatever action is appropriate or necessary in aid of the exercise of their jurisdiction." Collier on Bankruptcy P 105.01 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).

6

within 20 days after the date of the order for relief, furnishes adequate assurance of payment, in the form of deposit or other security, for services after such date." 11 U.S.C. § 366(b). Similarly, section 366(c)(2) of the Bankruptcy Code provides that a utility provider may discontinue its services to a debtor if the debtor has not furnished adequate assurance of payment "satisfactory" to the Utility Provider within 30 days after the petition date. 11 U.S.C. § 366(c)(2).

18.     Congress enacted section 366 of the Bankruptcy Code to protect debtors from utility service cutoffs upon a bankruptcy filing, while at the same time providing utility companies with adequate assurance that the debtors will pay for postpetition services. *See* H.R. REP. NO. 95-595, at 350 (1978), reprinted in 1978 U.S.C.C.A.N. 5963, 6306. Accordingly, section 366 of the Bankruptcy Code protects debtors by prohibiting utilities from altering, refusing or discontinuing services to a debtor solely on account of unpaid prepetition amounts for a period of 20 days after a chapter 11 filing. At the same time, section 366 of the Bankruptcy Code protects utilities by permitting them to alter, refuse or discontinue service after 30 days if the debtor has not furnished "adequate assurance" of payment in a form "satisfactory" to the utility provider. 11 U.S.C. § 366(c)(2).

19.     Section 366(c) of the Bankruptcy Code also restricts the factors that a court may consider when determining whether adequate assurance is, in fact, adequate. Specifically, courts no longer may consider (a) the absence of a security deposit before a debtor's petition date; (b) a debtor's history of timely payments; or (c) the availability of an administrative expense priority when determining the amount of a deposit. 11 U.S.C. § 366(c). Notwithstanding these changes, Congress did not intend to – nor did it– abrogate the bankruptcy court's ability to determine the

7

amount of adequate assurance necessary or change the fundamental requirement that assurance of payment must simply be "adequate."

20.    Thus, while section 366(c) of the Bankruptcy Code limits the factors a court can consider when determining whether a debtor has provided adequate assurance of payment, it does not limit a court's ability to determine the appropriate amount of assurance of payment. Instead, section 366(c) of the Bankruptcy Code gives courts the same discretion in determining the amount necessary for adequate assurance that they previously had under section 366(b) of the Bankruptcy Code. *Compare* 11 U.S.C. § 366(b) (2005) ("On request of a party in interest and after notice and a hearing, the court may order reasonable modification of the amount of the deposit or other security necessary to provide adequate assurance of payment."), *with* 11 U.S.C. § 366(c)(3)(A) (2005) ("On request of a party in interest and after notice and a hearing, the court may order modification of the amount of an assurance payment under paragraph (2)."), *and In re Circuit City Stores, Inc.*, Case No. 08-35653, 2009 WL 484553, at *4 (Bankr. E.D.Va. Jan. 14, 2009) ("Section 366(c)(3) uses language almost identical as that employed in § 366(b) in allowing courts to modify the amount of adequate assurance. It follows that courts retain similar discretion even after the enactment of the BAPCPA.") *See also In re Bedford Town Condominium*, 427 B.R. 380 (Bankr. D. Md. 2010) ("The Debtor's payment of the adequate assurance required by the [u]tilities is not a condition precedent to the Court's authority to modify that amount under § 366(c)(3)(A).")

21.    Further, section 366 of the Bankruptcy Code requires only that a utility provider's assurance of future payment be "adequate." 11 U.S.C. § 366. Courts recognize that adequate assurance of performance does not constitute an absolute guarantee of a debtor's ability to pay. *See, e.g., In re Circuit City Stores, Inc.*, Case No. 08-35653, 2009 WL 484553, at *4 (Bankr.

8

E.D.Va. Jan. 14, 2009) ("A debtor need not provide utility companies an absolute guarantee of payment."); *see also In re Steinebach*, 303 B.R. 634, 641 (Bankr. D. Ariz. 2004) ("Adequate assurance of payment is not, however, absolute assurance . . . a Bankruptcy Court is not required to give a utility company the equivalent of a guarantee of payment, but must only determine that the utility is not subject to any unreasonable risk of non-payment for postpetition services.") (citing *In re Adelphia Bus. Solutions, Inc.*, 280 B.R. 63, 80 (Bankr. S.D.N.Y. 2002)); *see also In re Caldor, Inc.-N.Y.*, 199 B.R. 1, 3 (Bankr. S.D.N.Y. 1996) (section 366(b) "does not require an 'absolute guarantee of payment'"), *aff'd sub nom. Virginia Elec. & Power Co. v. Caldor, Inc.-N.Y.*, 117 F.3d 646 (2d Cir. 1997).

22.    Courts have also recognized that, in determining the requisite level of adequate assurance, bankruptcy courts should "focus upon the need of the utility for assurance, and to require that the debtor supply *no more than that*, since the debtor almost perforce has a conflicting need to conserve scarce financial resources." *Virginia Elec. & Power Co.*, 117 F.2d at 650 (emphasis in original); *see also In re Penn. Cent. Transp. Co.*, 467 F.2d 100, 103-04 (3d Cir. 1972) (affirming bankruptcy court's ruling that no utility deposits were necessary where such deposits likely would "jeopardize the continuing operation of the [debtor] merely to give further security to suppliers who already are reasonably protected"). Accordingly, demands by a utility provider for a guarantee of payment should be refused when the debtor's specific circumstances already afford adequate assurance of payment.

23.    The Debtors submit that the Proposed Adequate Assurance provides more than adequate assurance of payment to the Utility Providers. Contemporaneously herewith, the Debtors are seeking approval of the Proposed DIP Facility that will enable them to pay their operating costs and expenses, including utility costs, as they come due. The Debtors anticipate

9

having sufficient resources to pay, and intend to pay all valid postpetition obligations for utility services in a timely manner, especially considering that the aggregate amount of the Debtors' utility obligations is not overwhelming. In addition, the Debtors' reliance on utility services for the operation of their businesses provides them with a powerful incentive to stay current on their utility obligations. These factors, which the Court may (and should) consider when determining the amount of any adequate assurance payments, justify a finding that the Proposed Adequate Assurance is appropriate.

24.    Further, the proposed Adequate Assurance Procedures are necessary for the Debtors to carry out their restructuring efforts. If the Adequate Assurance Procedures are not approved, the Debtors could be forced to address a multitude of requests by their Utility Providers in a disorganized manner at critical points in these chapter 11 cases. *See, e.g., In re Circuit City Stores, Inc.*, Case No. 08-35653, 2009 WL 484553, at *4 (Bankr. E.D.Va. Jan. 14, 2009) (recognizing that without such procedures "debtors could be forced to address numerous requests by utility companies in an unorganized manner" and that an orderly process is necessary for a smooth transition in chapter 11); *see also In re Syroco, Inc.*, 374 B.R. 60 (Bankr. D.P.R. 2007) (noting that prohibiting the use of reasonable procedures to implement the protections afforded under section 366 of the Bankruptcy Code threatens a debtors' efforts to reorganize). Discontinuation of utility services, particularly telecommunications or electricity services, at any given location, could jeopardize the Debtors' ability to respond and distribute products and services to their customers, which could essentially shut down the Debtors' operations. Of course, any significant disruption of operations would jeopardize the Debtors' restructuring efforts.

10

25.    Courts in this jurisdiction have approved relief similar to the relief requested in this motion. *See, e.g., In re Vertis Holdings, Inc.,* No. 12-12821 (CSS) (Bankr. D. Del. Nov. 1, 2012) (final order deeming utility providers adequately assured of future performance upon deposit or letter of credit equal to, or greater than, two weeks of utilities services or advance payment for utilities services); *In re Neb. Book Co.,* No. 11-12005 (PJW) (Bankr. D. Del. July 21, 2011) (deeming utility providers adequately assured of future performance upon a deposit, equal two weeks of utilities services, into a segregated, interest bearing account); *In re Appleseed's Intermediate Holdings,* LLC, No. 11-10160 (KG) (Bankr. D. Del. Feb. 17, 2011) (same); *In re MagnaChip Semiconductor Finance Co.,* No. 09-12008 (PJW) (Bankr. D. Del. June 15, 2009) (same); *In re Spansion Inc.,* No. 09-10690 (KJC) (Bankr. D. Del. Mar. 23, 2009) (same).[7]

## The Requirements of Bankruptcy Rule 6003 are Satisfied

26.    As described above, the Debtors are seeking authority pursuant to the Interim Order to provide adequate assurance of payment for future utility services in the form of the Debtors' proposed Adequate Assurance Deposit during the first 21 days of these chapter 11 cases.    Under Bankruptcy Rule 6003, the Court may authorize the Debtors to provide the proposed Adequate Assurance Deposit within the 21-day period after the Petition Date because such relief is necessary to avoid immediate and irreparable harm to the Debtors' estates. *See* Fed. R. Bankr. P. 6003(b).    Immediate and irreparable harm exists where the absence of relief would impair a debtor's ability to reorganize or threaten the debtor's future as a going concern.

---

[7]    Because of the voluminous nature of the orders cited herein, such orders are not attached to this motion. Copies of these orders are available upon request to the Debtors' counsel.

*See In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 36 n.2 (Bankr. S.D.N.Y. 1990) (discussing the elements of "immediate and irreparable harm" in relation to Bankruptcy Rule 4001).

27.     As discussed above, it is essential that the Debtors are assured immediate and continuous access to the Utility Providers' services.  Any disruption in the Debtors' ability to obtain those services may result in an immediate interruption or diminution in the Debtors' business operations to the detriment of their estates and all parties in interest in these chapter 11 cases.  Accordingly, the Debtors respectfully submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 and seek authority to pay the Adequate Assurance Deposit into the Utility Deposit Account pursuant to the Interim Order.

### Waiver of Bankruptcy Rules Regarding Notice and Stay of an Order

28.     To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and any stay of an order granting the relief requested herein pursuant to Bankruptcy Rule 6004(h), 7062, 9014 or otherwise.

### The Debtors' Reservation of Rights

29.     Nothing contained herein is intended or should be construed as an admission as to the validity of any claim against the Debtors, a waiver of the Debtors' rights to dispute any claim or an approval or assumption of any agreement, agreement, contract or lease under section 365 of the Bankruptcy Code.  Additionally, nothing contained herein is intended or should be construed as an admission as to the validity of any claim against the Debtors or a waiver of the Debtors' rights to dispute any claims regarding escheatment.  The Debtors expressly reserve their rights to contest any claim or billing dispute.  Likewise, if this Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be

12

construed as an admission as to the validity of any claim or a waiver of the Debtors' rights to subsequently dispute such claim.

## Notice

30.     The Debtors have provided notice of this motion to: (a) the Office of the United States Trustee for the District of Delaware; (b) the entities listed on the Consolidated List of Creditors Holding the 20 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d); (c) counsel to the Debtors' prepetition secured lender and debtor in possession lender; (d) counsel for the Debtors' proposed stalking horse bidder; (e) the Delaware Secretary of State; (f) the Delaware Secretary of Treasury; (g) the Delaware State Attorney General; (h) the Office of the United States Attorney General for the State of Delaware; (i) the Internal Revenue Service; (j) the Securities and Exchange Commission; and (k) each of the Utility Providers listed on **Exhibit 2 to Exhibit A**. In light of the nature of the relief requested in this motion, the Debtors respectfully submit that no further notice is necessary.

## No Prior Request

31.     No prior motion for the relief requested herein has been made to this or any other court.

*[Remainder of page intentionally left blank.]*

13

WHEREFORE, for the reasons set forth herein and in the First Day Declaration, the Debtors respectfully request that the Court enter the Interim Order and Final Order, substantially in the forms attached hereto as **Exhibit A**, and **Exhibit B**, respectively, (a) determining that the Debtors' Utility Providers have been provided with adequate assurance of payment, (b) approving the Proposed Adequate Assurance, including the related Adequate Assurance Procedures, (c) prohibiting the Utility Providers from altering, refusing or discontinuing services on account of prepetition amounts outstanding or on account of any perceived inadequacy of the Debtors' proposed adequate assurance pending entry of a Final Order, (d) determining that the Debtors are not required to provide any additional adequate assurance beyond what is proposed by this motion and the Adequate Assurance Procedures annexed as **Exhibit 1** to **Exhibit A** attached hereto, (e) scheduling the Final Hearing and (f) granting such other and further relief as may be appropriate.

Dated: May 30, 2013
        Wilmington, Delaware

/s/ Domenic E. Pacitti
Domenic E. Pacitti (DE Bar No. 3989)
Michael W. Yurkewicz (DE Bar No. 4165)
**KLEHR HARRISON HARVEY BRANZBURG LLP**
919 N. Market Street, Suite 1000
Wilmington, Delaware 19801
Telephone:    (302) 426-1189
Facsimile:    (302) 426-9193

*Proposed Counsel to the Debtors and Debtors in Possession*

14