IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| LIFE UNIFORM HOLDING CORP., *et al.*,[1] ) | Case No. 13-11391 ( ) |
| ) | |
| Debtors. ) | Joint Administration Requested |
| ) | |

## DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS AUTHORIZING, BUT NOT DIRECTING, THE DEBTORS TO PAY PREPETITION CLAIMS OF LIEN CLAIMANTS

Life Uniform Holding Corp., Healthcare Uniform Company, Inc., and Uniform City National, Inc., the debtors and debtors-in-possession herein (collectively, the "***Debtors***"),[2] respectfully represent:

### Jurisdiction

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2. Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The bases for the relief requested herein are sections 105(a), 362(b)(3), 363(b), 363(e), 546(b), 1107(a) and 1108 of the Bankruptcy Code, Rules 6003 and 6004(h) of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***") and Rule 9013-1(m) of the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer-identification number, are: Life Uniform Holding Corp. (1018), Healthcare Uniform Company, Inc. (0640), and Uniform City National, Inc. (0392).

[2] A detailed description of the Debtors and their businesses, and the facts and circumstances supporting this motion and the Debtors' chapter 11 cases, are set forth in greater detail in the Declaration of Robert Frezza (the "***First Day Declaration***"), filed contemporaneously with the Debtors' voluntary petitions for relief filed under chapter 11 of title 11 of the United States Code (the "***Bankruptcy Code***"), which were filed on May 29, 2013 (the "***Petition Date***").

PHIL1 2817216v.3

Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "***Local Rules***").

### Relief Requested

4. By this motion, the Debtors request entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B** (the "***Interim Order***" and the "***Final Order***," respectively), (a) authorizing, but not directing, the Debtors to pay prepetition amounts owed to possessory lien claimants and statutory lien claimants (collectively, and as described herein, the "***Lien Claimants***"), in an amount not to exceed $155,000 (pursuant to the Interim Order) and not to exceed $200,000 (pursuant to the Final Order), each subject to the requirements imposed on the Debtors under any approved debtor-in-possession financing facility, or budget in connection therewith, or any order regarding the use of cash collateral approved by the Court in these cases, (b) authorizing financial institutions to receive, process, honor and pay all related checks and electronic payment requests for payment of Lien Claimants, and (c) scheduling a final hearing (the "***Final Hearing***") to consider entry of the Final Order to the extent a Final Hearing is necessary.

5. Specifically, the Debtors have identified approximately $185,000 in prepetition amounts that have accrued and remain unpaid on account of the claims of Lien Claimants. Because of the substantial harm that may befall the Debtors if the Lien Claimants fail to release the goods in their possession or otherwise move to assert their lien rights, the Debtors seek the authority, but not the direction, pursuant to the Interim Order, to remit payment on account of the Lien Claimants in amount up to $155,000 during the 21-day period after the Petition Date. Pursuant to the Final Order, the Debtors seek the authority, but not the direction, to pay Lien Claimants in an amount up to $200,000, subject to the requirements imposed on the Debtors

2

PHIL1 2817216v.3

under any approved debtor-in-possession financing facility, or budget in connection therewith, or any order regarding the use of cash collateral approved by the Court in these cases.

## Basis for Relief

**A.     Lien Claimants**

6.     The uninterrupted delivery of goods is essential to maintaining the going concern value of the Debtors. The Debtors' ability to generate sales is highly dependent on their ability to ensure that the proper mix of inventory is available for purchase and delivery to their customers. The Debtors' liquidity constraints have limited the amount of inventory the Debtors are able to maintain in reserve. Additionally, their small footprint locations require that they be able to replenish any delivery at their stores quickly and also be able to transfer inventory from one location to another quickly to meet their sales needs. Without the ability to deliver and redistribute product, the Debtors' ability to generate revenue is impaired. To maintain their operations and efficiently transport products, the Debtors employ a distribution network that uses third-party warehouses and carriers who are in current possession of the Debtors' property as of the Petition Date (collectively, and as discussed below, the "*Possessory Lien Claimants*"). Under the laws of most states,[3] these warehousemen and carriers will, in certain circumstances, have a lien on the goods in their possession that secures the charges or expenses incurred in connection with the transportation or storage of the goods. If the Possessory Lien Claimants' claims are not satisfied, they may refuse to release the Debtors' property, thereby disrupting the

---

[3]   For example, section 7-307 of the Uniform Commercial Code provides, in pertinent part, that a "carrier has a lien on the goods covered by a bill of lading or on the proceeds thereof in its possession for charges after the date of the carrier's receipt of the goods for storage or transportation (including demurrage and terminal charges) and for expenses necessary for preservation of the goods incident to their transportation or reasonably incurred in their sale pursuant to law." *See* U.C.C. § 7-307(a) (2005).

Debtors' product flow and operations.

7. The Possessory Lien Claimants fall into the following categories:

- *Shippers*: The Debtors' distribution network depends upon the use of reputable common carriers, truckers, and overnight couriers (collectively, the "*Shippers*") to deliver goods to the Debtors' retail locations and in certain circumstances directly to their customers. The services provided by the Shippers are essential to the Debtors' ordinary course, day-to-day operations. At any given time, there are numerous shipments of products en route to or from the Debtors' locations, third party warehouses, and customers. Thus, it is a certainty that some of the Shippers are currently in possession of the Debtors' property. The delivery of these goods is vital to maintaining the Debtors' operations during their transition into chapter 11. If the Debtors do not pay the prepetition, ordinary course obligations owed to these Shippers, they may refuse to deliver or release such property, thereby disrupting the Debtors' business operations.

- *Warehousemen*: The Debtors rely upon third-party contractors to store products in the ordinary course of their businesses (the "*Warehousemen*"). In the event that the Debtors fail to remit payment owed to the Warehousemen, they may refuse to release the goods they retain pending satisfaction of their claims, thereby disrupting the Debtors' operations.

- *Landlords*: The Debtors store products in the ordinary course of their businesses at facilities owned by other parties and leased by the Debtors (the "*Landlords*"). In the event that the Debtors fail to remit payment owed to the Landlords before the Petition Date and the underlying lease is in default or is terminated, the Landlords may refuse to release the goods they retain pending satisfaction of all or a portion of their claims, thereby disrupting the Debtors' operations.

- *Processors*: The Debtors also rely on numerous third-party processors to finish goods according to the Debtors' detailed specifications, including embroidery (the "*Processors*"). At any given time, the Processors may be performing services on, and therefore be in possession of, the Debtors' goods. Accordingly, the Debtors' failure to satisfy payment obligations to the Processors would result in the Processors' refusal to return the Debtors' goods, thereby disrupting the Debtors' business operations.

8. The Debtors also rely on, and contract with, a number of third parties to obtain equipment used at their facilities and also have such equipment maintained and repaired. The Debtors may owe money to these third parties as a result of the goods and services they have

4

provided. Under applicable state law,[4] many of these parties have a right to assert and perfect statutory liens, which attach to the Debtors' real and personal property (collectively, the "***Statutory Lien Claimants***").

<u>**Supporting Authority**</u>

A.  **Authority Exists to Support Payment of the Prepetition Amounts Owed to the Lien Claimants**

9.  Pursuant to section 363(e) of the Bankruptcy Code, the Lien Claimants may be entitled to adequate protection of a valid possessory lien to the extent that the Debtors use or sell the estate property against which a lien claim is asserted. Given that the value of such property will generally far exceed the value of the related lien claims, creditors will not be harmed – and, in fact, will be benefited – by the satisfaction of certain amounts owed to the Lien Claimants. Those payments will facilitate the use and/or sale of estate property against which liens may otherwise be asserted, helping to preserve the going-concern value of the Debtors' businesses. Conversely, if the lien claims are not satisfied, the Debtors' may experience a disruption of their business that results in an irrecoverable loss of revenue.

10. Similarly, under the laws of certain states, the lien rights of the Statutory Lien Claimants may attach simply by virtue of the lien claimant commencing work, while other states

---

[4] *See, e.g.*, M.G.L.A. 254 § 1 (2004) ("A person to whom a debt is due for personal labor performed in the erection, alteration, repair or removal of a building or structure upon land or improvement or alteration to real property . . . shall, under the provisions of this chapter . . . have a lien upon such building or structure and upon such interest in such real property, land, building, structure, or improvement owned by the party authorizing or consenting to said work . . . ."); Cal. Const. Art. XIV § 3 ("Mechanics, materialmen, artisans, and laborers of every class shall have a lien upon the property upon which they have bestowed labor or furnished materials, for the value of such labor done and materials furnished; and the Legislature shall provide by law, for speedy and efficient enforcement of claims."); 49 P.S. § 1301(2006) ("Every improvement and the estate or title of the owner in the property shall be subject to a lien . . . for the payment of all debts due by the owner to the contractor or by the contractor to any of his subcontractors for labor or materials furnished in the erection or construction, or the alteration or repair of the improvement . . . .").

have more stringent notice and perfection requirements. In any event, pursuant to section 362(b)(3) of the Bankruptcy Code, the act of perfecting liens, to the extent consistent with section 546(b) of the Bankruptcy Code, is expressly excluded from the automatic stay. Under section 546(b) of the Bankruptcy Code, a debtor's lien avoidance powers are "subject to any generally applicable law that . . . permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of perfection . . . ." 11 U.S.C. § 546(b)(1)(A). Therefore, notwithstanding the automatic stay imposed by section 362 of the Bankruptcy Code, the Statutory Lien Claimants will be entitled to assert and perfect liens against the Debtors' property during these chapter 11 cases with respect to their prepetition claims against the Debtors.

11.    Based on the foregoing, and in order to maintain a seamless transition of the Debtors' operations into chapter 11, the Debtors respectfully submit that honoring the prepetition claims of the Lien Claimants is justified under the circumstances.

1.    **Payment to the Lien Claimants is Warranted Under the Doctrine of Necessity**

12.    Courts generally acknowledge that, under appropriate circumstances, they may authorize a debtor to pay (or provide special treatment for) certain prepetition obligations. *See, e.g., In re Just for Feet, Inc.*, 242 B.R. 821, 824-45 (Bankr. D. Del. 1999) (noting that, in the Third Circuit, debtors may pay prepetition claims that are essential to the continued operation of the debtor's business); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (granting the debtor the authority to pay prepetition wages); *Armstrong World Indus., Inc. v. James A. Phillips, Inc., (In re James A. Phillips, Inc.)*, 29 B.R. 391, 398 (Bankr. S.D.N.Y. 1983) (granting the debtor the authority to pay prepetition claims of suppliers who were potential lien claimants). When authorizing payments of certain prepetition obligations, courts have relied

upon several legal theories rooted in sections 1107(a), 1108, 363(b) and 105(a) of the Bankruptcy Code.

13.   Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, debtors in possession are fiduciaries charged with "holding the bankruptcy estate[s] and operating the business[es] for the benefit of [their] creditors and (if the value justifies) equity owners." *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002). Inherent in a debtor in possession's fiduciary duties is the obligation to "protect and preserve the estate, including an operating business's going-concern value," which, in certain instances, can be fulfilled "only . . . by the preplan satisfaction of a prepetition claim." *Id.* Indeed, the *CoServ* court specifically noted that the preplan satisfaction of prepetition claims would be a valid exercise of the debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate . . . ." *Id.*

14.   Consistent with a debtor's fiduciary duties, where there is a sound business purpose for the payment of prepetition obligations, and where the debtor is able to "articulate some business justification, other than the mere appeasement of major creditors," courts have authorized debtors to make such payments under section 363(b) of the Bankruptcy Code. *See, e.g., In re Ionosphere Clubs, Inc.*, 98 B.R. at 175 (finding that a sound business justification existed to pay prepetition wages); *In re James A. Phillips, Inc.*, 29 B.R. at 397 (relying upon section 363 as a basis to allow a contractor to pay the prepetition claims of suppliers who were potential lien claimants).[5]

---

[5]   Courts have also authorized payment of prepetition claims in appropriate circumstances pursuant to section 105(a) of the Bankruptcy Code. Section 105(a) of the Bankruptcy Code, which codifies the inherent equitable powers of the bankruptcy court, empowers the bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Under section 105(a),
(Continued...)

7

15.     In addition to the authority granted a debtor in possession under sections 1107(a), 1108, 363(b) and 105(a) of the Bankruptcy Code, courts have developed the "doctrine of necessity" or the "necessity of payment" rule, which originated in the landmark case of *Miltenberger v. Logansport, C. & S.W.R. Co.*, 106 U.S. 286 (1882). Since *Miltenberger*, courts have expanded their application of the doctrine of necessity to cover instances of a debtor's reorganization, *see Dudley v. Mealey*, 147 F.2d 268, 271 (2d Cir. 1945) (holding, in a hotel reorganization matter, that the court was not "helpless" to apply the rule to supply creditors where the alternative was the cessation of operations), including the United States Court of Appeals for the Third Circuit, which recognized the doctrine in *In re Lehigh & New England Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981).

16.     In *Lehigh*, the Third Circuit held that a court could authorize the payment of prepetition claims if such payment was essential to the continued operation of the debtor. *Id.* (stating that a court may authorize payment of prepetition claims when there "is the possibility that the creditor will employ an immediate economic sanction, failing such payment"); *see also In re Penn Cent. Transp. Co.*, 467 F.2d 100, 102 n.1 (3d Cir. 1972) (holding that the necessity of payment doctrine permits "immediate payment of claims of creditors where those creditors will not supply services or material essential to the conduct of the business until their pre-reorganization claims have been paid"); *In re Just for Feet, Inc.*, 242 B.R. at 824-45 (noting that debtors may pay prepetition claims that are essential to continued operation of the business); *In*

---

courts may permit preplan payments of prepetition obligations when such payments are essential to the continued operation of the debtor's business and, in particular, where nonpayment of a prepetition obligation would trigger a withholding of goods or services essential to the debtors' business reorganization plan. *See In re UNR Indus.*, 143 B.R. 506, 520 (Bankr. N.D. Ill. 1992) (permitting the debtor to pay prepetition claims of suppliers or employees whose continued cooperation is essential to the debtors' successful reorganization); *Ionosphere Clubs*, 98 B.R. at 177 (finding that section 105 empowers bankruptcy courts to authorize payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor).

*re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191-92 (Bankr. D. Del. 1994) (same).

17. Today, the rationale for the necessity of payment rule – the rehabilitation of a debtor in reorganization cases – is "the paramount policy and goal of Chapter 11." *In re Ionosphere Clubs, Inc.*, 98 B.R. at 176; *Just For Feet*, 242 B.R. at 826 (finding that payment of prepetition claims to certain trade vendors was "essential to the survival of the debtor during the chapter 11 reorganization."); *see also In re Quality Interiors, Inc.*, 127 B.R. 391, 396 (Bankr. N.D. Ohio 1991) ("[P]ayment by a debtor-in-possession of pre-petition claims outside of a confirmed plan of reorganization is generally prohibited by the Bankruptcy Code", but "[a] general practice has developed . . . where bankruptcy courts permit the payment of certain pre-petition claims, pursuant to 11 U.S.C. § 105, where the debtor will be unable to reorganize without such payment."); *In re Eagle-Picher Indus., Inc.*, 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991) (approving payment of prepetition unsecured claims of tool makers as "necessary to avert a serious threat to the Chapter 11 process"); *Burchinal v. Cent. Wash. Bank (In re Adams Apple, Inc.)*, 829 F.2d 1484, 1490 (9th Cir. 1987) (finding that it is appropriate to provide for the "unequal treatment of pre-petition debts when [such treatment is] necessary for rehabilitation . . ."); Collier on Bankruptcy P 105.02[4][a] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. rev.) (discussing cases in which courts have relied upon the "doctrine of necessity" or the "necessity of payment" rule to pay prepetition claims immediately).

18. This flexible approach is particularly critical where prepetition creditors – like the Lien Claimants – provide vital goods or services to a debtor that would be unavailable if the debtor did not satisfy its prepetition obligations. Paying amounts owed to the Lien Claimants will benefit the Debtors' estates and their creditors by allowing the Debtors' business operations to continue without interruption.

19.     As described above, Possessory Lien Claimants may have liens on the goods in their possession; they may be unwilling to release these goods since this may result in their secured claims against the Debtors becoming unsecured. Therefore, unless the Debtors are authorized to pay amounts owed to the Possessory Lien Claimants, it is highly unlikely that the Debtors will continue to obtain goods currently in transit or in storage.

20.     Additionally, vendors who are Statutory Lien Claimants hold and may perfect liens on estate property for which goods or services were provided prepetition. If the Statutory Lien Claimants possess lien rights or have the ability to exercise "self-help" remedies to secure payment of their claims, failure to satisfy amounts owed to Statutory Lien Claimants could have a material adverse impact on the Debtors' business operations.

21.     Under some circumstances, contractual or other rights may permit the Lien Claimants to assert claims for interest during these chapter 11 cases to the extent that their statutory lien rights render their claims oversecured. Paying such oversecured claims during the course of these chapter 11 cases will benefit the Debtors and their estates by reducing interest expense. Further, payment of amounts owed to these claimants will eliminate the cost and potential inefficiency of responding to multiple requests for adequate protection or relief from the automatic stay with respect to such claims. Finally, payment of amounts owed to the Lien Claimants will not harm unsecured creditors in these chapter 11 cases because the creditors paid will not receive more than they would be entitled to under a plan of reorganization by virtue of their secured status.

22.     Courts in this jurisdiction have approved relief similar to the relief requested in this motion. *See, e.g., In re Local Insight Media Holdings, Inc.*, Case No. 10-13677 (Bankr. D. Del. Nov. 19, 2010) (final order authorizing debtors to pay prepetition lien claimants up to an

10

aggregate of $1.35 million); *In re OTC Holdings Corp.*, Case No. 10-12636 (Bankr. D. Del. Sept. 17, 2010) (final order authorizing debtors to pay prepetition lien claimants up to an aggregate of $1.815 million); *In re American Safety Razor Co., LLC*, Case No. 10-12351 (Bankr. D. Del. Aug. 23, 2010) (final order authorizing debtors to pay prepetition lien claimants up to an aggregate of $4.207 million); *In re Atrium Corp.*, Case No. 10-10150 (Bankr. D. Del. Feb. 23, 2010) (final order authorizing debtors to pay prepetition lien claimants up to an aggregate of $1.75 million); *In re Neenah Enters., Inc.*, Case No. 10-10360 (Bankr. D. Del. Feb. 4, 2010) (final order authorizing debtors to pay prepetition lien claimants up to an aggregate of $700,000); and *In re Visteon Corp.*, Case No. 09-11786 (Bankr. D. Del. June 1 2009).[6]

### 2. Cause Exists to Authorize the Debtors' Financial Institutions to Honor Checks and Electronic Fund Transfers

23.     The Debtors represent that they have sufficient availability of funds to pay the amounts described herein in the ordinary course of business by virtue of cash reserves, expected cash flows from ongoing business operations and anticipated access to debtor in possession financing. Also, under the Debtors' existing cash management system, the Debtors represent that checks or wire transfer requests can be readily identified as relating to an authorized payment made to a Lien Claimant. Accordingly, the Debtors believe that checks or wire transfer requests, other than those relating to authorized payments, will not be honored inadvertently and that all applicable financial institutions should be authorized, when requested by the Debtors, to receive, process, honor and pay any and all checks or wire transfer requests with respect to the prepetition lien claims.

---

[6] Because of the voluminous nature of the orders cited herein, such orders are not attached to this motion. Copies of these orders are available upon request to the Debtors' counsel.

11

### The Requirements of Bankruptcy Rule 6003 are Satisfied

24.     As described above, the Debtors are seeking authority pursuant to the Interim Order to pay $155,000 on account of prepetition claims of Lien Claimants during the first 21 days of these chapter 11 cases. Under Bankruptcy Rule 6003, the Court may authorize the Debtors to satisfy the claims of the Lien Claimants in the 21-day period after the Petition Date to the extent such relief is necessary to avoid immediate and irreparable harm to the Debtors' estates. *See* Fed. R. Bankr. P. 6003(b). Immediate and irreparable harm exists where the absence of relief would impair a debtor's ability to reorganize or threaten the debtor's future as a going concern. *See In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 36 n.2 (Bankr. S.D.N.Y. 1990) (discussing the elements of "immediate and irreparable harm" in relation to Bankruptcy Rule 4001).

25.     As discussed above, payment of the Lien Claimants is integral to the Debtors' operations. Failure to satisfy such prepetition obligations in the ordinary course of business during the first 21-days of these cases will cause significant disruption to the Debtors' operations. Accordingly, the Debtors respectfully submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 and seek authority to pay the prepetition obligations owed to the Lien Claimants pursuant to the Interim Order.

### Waiver of Bankruptcy Rules Regarding Notice and Stay of an Order

26.     To implement the foregoing successfully, the debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and any stay of an order granting the relief requested herein pursuant to Bankruptcy Rule 6004(h), 7062, 9014 or otherwise.

### The Debtors' Reservation of Rights

27.     Nothing contained herein is intended or should be construed as an admission as to

12

PHIL1 2817216v.3

the validity of any claim against the Debtors, a waiver of the Debtors' rights to dispute any claim or an approval or assumption of any agreement, agreement, contract or lease under section 365 of the Bankruptcy Code. The Debtors expressly reserve their rights to contest any claim or billing dispute. Likewise, if this Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any claim or a waiver of the Debtors' rights to subsequently dispute such claim.

## Notice

28. The Debtors have provided notice of this motion to: (a) the Office of the United States Trustee for the District of Delaware; (b) the entities listed on the Consolidated List of Creditors Holding the 20 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d); (c) counsel to the Debtors' prepetition secured lender and debtor in possession lender; (d) counsel for the Debtors' proposed stalking horse bidder; (e) the Delaware Secretary of State; (f) the Delaware Secretary of Treasury; (g) the Delaware State Attorney General; (h) the Office of the United States Attorney General for the State of Delaware; (i) the Internal Revenue Service; and (j) the Securities and Exchange Commission. In light of the nature of the relief requested in this motion, the Debtors respectfully submit that no further notice is necessary.

## No Prior Request

29.    No prior motion for the relief requested herein has been made to this or any other court.

WHEREFORE, for the reasons set for the reasons set forth herein and in the First Day Declaration, the Debtors respectfully request that the Court enter the Interim and Final Orders, substantially in the form attached hereto as **Exhibit A** and **Exhibit B**, respectively, (a) authorizing, but not directing, the Debtors to pay the Lien Claimants in an amount not to exceed $155,000 in the aggregate on an interim basis and $200,000 on a final basis, (b) authorizing financial institutions to receive, process, honor and pay all related checks and electronic payment requests for payment of Lien Claimants, (c) scheduling a Final Hearing to consider entry of the Final Order to the extent a Final Hearing is necessary and (d) granting such other and further relief as may be appropriate.

| | |
|---|---|
| Dated:  May 30, 2013<br>Wilmington, Delaware | */s/ Domenic E. Pacitti*<br>Domenic E. Pacitti (DE Bar No. 3989)<br>Michael W. Yurkewicz (DE Bar No. 4165)<br>**KLEHR HARRISON HARVEY BRANZBURG LLP**<br>919 N. Market Street, Suite 1000<br>Wilmington, Delaware 19801<br>Telephone:    (302) 426-1189<br>Facsimile:     (302) 426-9193<br><br>*Proposed Counsel to the Debtors*<br>*and Debtors in Possession* |