## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| LIFE UNIFORM HOLDING CORP., *et al.*,[1] | Case No. 13-11391 (  ) |
| Debtors. | Joint Administration Requested |

## DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS AUTHORIZING, BUT NOT DIRECTING, THE DEBTORS TO (A) CONTINUE PREPETITION INSURANCE COVERAGE AND (B) MAINTAIN FINANCING OF INSURANCE PREMIUMS

Life Uniform Holding Corp., Healthcare Uniform Company, Inc., and Uniform City National, Inc., the debtors and debtors-in-possession herein (collectively, the "***Debtors***"),[2] respectfully represent:

### Jurisdiction

1.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.    Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.    The bases for the relief requested herein are sections 105(a), 363, 364, 1107 and 1108 of the Bankruptcy Code, Rules 6003 and 6004(h) of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***") and Rule 9013-1(m) of the Local Rules of Bankruptcy

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer-identification number, are: Life Uniform Holding Corp. (1018), Healthcare Uniform Company, Inc. (0640), and Uniform City National, Inc. (0392).

[2]    A detailed description of the Debtors and their businesses, and the facts and circumstances supporting this motion and the Debtors' chapter 11 cases, are set forth in greater detail in the Declaration of Robert Frezza (the "***First Day Declaration***"), filed contemporaneously with the Debtors' voluntary petitions for relief filed under chapter 11 of title 11 of the United States Code (the "***Bankruptcy Code***"), which were filed on May 29, 2013 (the "***Petition Date***").

Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "*Local Rules*").

**Relief Requested**

4.       By this motion, the Debtors request entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B** (the "*Interim Order*" and the "*Final Order*,*"* respectively), (a) authorizing, but not directing, the Debtors to (i) continue the Debtors prepetition insurance policies (collectively, and as discussed herein, the "*Insurance Policies*") and (ii) maintain financing of insurance premiums under a prepetition financing agreement with AFCO Premium Acceptance, Inc. ("*AFCO*") attached hereto collectively as **Exhibit C** (as discussed herein, the "*Financing Agreement*") subject to the requirements imposed on the Debtors under any approved debtor-in-possession financing facility, or budget in connection therewith, or any order regarding the use of cash collateral approved by the Court in these cases; (b) authorizing financial institutions to receive, process, honor and pay all related checks and electronic payment requests for payment of the related Insurance Policies; and (c) scheduling a final hearing (the "*Final Hearing*") to consider entry of the Final Order to the extent a Final Hearing is necessary.

5.       The Debtors seek interim authority to pay an aggregate amount of approximately $12,994.40 in connection with the Insurance Policies that will become due and owing during the first 21 days of these chapter 11 cases.  Pursuant to the Interim Order, the Debtors request authority to (a) continue their prepetition Insurance Policies and (b) maintain financing of their insurance premiums under the Financing Agreement, including monthly installment payments due on June 1, 2013 in the total amount of approximately $12,994.40, which represents the only amount that will come due within the first 21 days of these chapter 11 cases.

2

6.     Pursuant to the Final Order, the Debtors seek authority to (a) continue the Insurance Policies, including renewal or modification of the Insurance Policies as necessary in the ordinary course of business, and (b) maintain financing of insurance premiums under the Financing Agreement in the ordinary course of business.

**Basis for Relief**

**A.     The Debtors' Insurance Policies and Related Payments**

7.     In the ordinary course of business, the Debtors maintain a number of Insurance Policies.    The Insurance Policies provide coverage for property, directors and officers, employment practices, fiduciary liability, crime, kidnap & ransom, automobile, cargo, general liability, umbrella liability, and workers compensation.  The Insurance Policies are essential to the preservation of the value of the Debtors' businesses, properties and assets.  In many cases, coverage provided by the Insurance Policies is required by the regulations, laws and contracts that govern the Debtors' commercial activities.

8.     The Debtors generally are current on amounts owed to maintain the Insurance Policies.  As of the Petition Date, the Debtors do not believe there are any amounts owed on the Insurance Policies, with the exception of the Financed Insurance Policies (as defined below).

**B.     Financed Insurance Policies**

9.     Certain of the Debtors' insurance policies require payment of the entire premium at inception.   Because it is not always economically advantageous for the Debtors to pay premiums in full up front, the Debtors have financed the premiums for these policies (collectively, the "***Financed Insurance Policies***") under the Financing Agreement with AFCO. The Financed Insurance Policies benefit the Debtors by spreading out the cost of the Insurance Policies over the applicable coverage period.  The Financed Insurance Policies include property

3

and boiler and machinery. As of the Petition Date, the Debtors owe a total of approximately $77.966.40 on account of the Financing Agreement. Approximately $12,994.40 will come due on account of the Financed Insured Policies within the first 21 days of these chapter 11 cases.

### Supporting Authority

A.    **Payment of the Obligations Related to the Insurance Policies is Required by the Bankruptcy Code and the U.S. Trustee**

10.    The Insurance Policies are essential to the preservation of the value of the Debtors' businesses, properties and assets. Not only are some of the Insurance Policies required by the various regulations, laws and contracts that govern the Debtors' commercial activities, but section 1112(b)(4)(C) of the Bankruptcy Code provides that "failure to maintain appropriate insurance that poses a risk to the estate or to the public," is "cause" for mandatory conversion or dismissal of a chapter 11 case. 11 U.S.C. § 1112(b)(4)(C). Moreover, the Guidelines of the Office of the United States Trustee for the District of Delaware also require debtors to maintain insurance coverage throughout their chapter 11 cases.

B.    **Payment of the Insurance Obligations is Warranted Under the Doctrine of Necessity**

11.    Courts generally acknowledge that, under appropriate circumstances, they may authorize a debtor to pay (or provide special treatment for) certain prepetition obligations. *See, e.g., In re Just for Feet, Inc.*, 242 B.R. 821, 824-45 (Bankr. D. Del. 1999) (noting that, in the Third Circuit, debtors may pay prepetition claims that are essential to the continued operation of the debtor's business); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (granting the debtor the authority to pay prepetition wages); *Armstrong World Indus., Inc. v. James A. Phillips, Inc., (In re James A. Phillips, Inc.)*, 29 B.R. 391, 398 (Bankr. S.D.N.Y. 1983) (granting the debtor the authority to pay prepetition claims of suppliers who were potential lien claimants). When authorizing payments of certain prepetition obligations, courts have relied

4

upon several legal theories rooted in sections 1107(a), 1108, 363(b) and 105(a) of the Bankruptcy Code.

12.    Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, debtors in possession are fiduciaries charged with "holding the bankruptcy estate[s] and operating the business[es] for the benefit of [their] creditors and (if the value justifies) equity owners." *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002). Inherent in a debtor in possession's fiduciary duties is the obligation to "protect and preserve the estate, including an operating business's going-concern value," which, in certain instances, can be fulfilled "only . . . by the preplan satisfaction of a prepetition claim." *Id.* Indeed, the *CoServ* court specifically noted that the preplan satisfaction of prepetition claims would be a valid exercise of the debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate . . . ." *Id.*

13.    Consistent with a debtor's fiduciary duties, where there is a sound business purpose for the payment of prepetition obligations, and where the debtor is able to "articulate some business justification, other than the mere appeasement of major creditors," courts have authorized debtors to make such payments under section 363(b) of the Bankruptcy Code. *See, e.g.*, *In re Ionosphere Clubs, Inc.*, 98 B.R. at 175 (finding that a sound business justification existed to pay prepetition wages); *In re James A. Phillips, Inc.*, 29 B.R. at 397 (relying upon section 363 as a basis to allow a contractor to pay the prepetition claims of suppliers who were potential lien claimants).[3]

---

[3]    Courts have also authorized payment of prepetition claims in appropriate circumstances pursuant to section 105(a) of the Bankruptcy Code. Section 105(a) of the Bankruptcy Code, which codifies the inherent equitable powers of the bankruptcy court, empowers the bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Under section 105(a),
(Continued...)

14.    In addition to the authority granted a debtor in possession under sections 1107(a),
1108, 363(b) and 105(a) of the Bankruptcy Code, courts have developed the "doctrine of
necessity" or the "necessity of payment" rule, which originated in the landmark case of
*Miltenberger v. Logansport, C. & S.W.R. Co.*, 106 U.S. 286 (1882). Since *Miltenberger*, courts
have expanded their application of the doctrine of necessity to cover instances of a debtor's
reorganization, *see Dudley v. Mealey*, 147 F.2d 268, 271 (2d Cir. 1945) (holding, in a hotel
reorganization matter, that the court was not "helpless" to apply the rule to supply creditors
where the alternative was the cessation of operations), including the United States Court of
Appeals for the Third Circuit, which recognized the doctrine in *In re Lehigh & New England Ry.
Co.*, 657 F.2d 570, 581 (3d Cir. 1981).

15.    In *Lehigh*, the Third Circuit held that a court could authorize the payment of
prepetition claims if such payment was essential to the continued operation of the debtor.  *Id.*
(stating that a court may authorize payment of prepetition claims when there "is the possibility
that the creditor will employ an immediate economic sanction, failing such payment"); *see also
In re Penn Cent. Transp. Co.*, 467 F.2d 100, 102 n.1 (3d Cir. 1972) (holding that the necessity of
payment doctrine permits "immediate payment of claims of creditors where those creditors will
not supply services or material essential to the conduct of the business until their pre-
reorganization claims have been paid"); *In re Just for Feet, Inc.*, 242 B.R. at 824-45 (noting that

---

courts may permit preplan payments of prepetition obligations when such payments are essential to the
continued operation of the debtor's business and, in particular, where nonpayment of a prepetition obligation
would trigger a withholding of goods or services essential to the debtors' business reorganization plan. *See In
re UNR Indus.*, 143 B.R. 506, 520 (Bankr. N.D. Ill. 1992) (permitting the debtor to pay prepetition claims of
suppliers or employees whose continued cooperation is essential to the debtors' successful reorganization);
*Ionosphere Clubs*, 98 B.R. at 177 (finding that section 105 empowers bankruptcy courts to authorize payment
of prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor).

6

debtors may pay prepetition claims that are essential to continued operation of the business); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191-92 (Bankr. D. Del. 1994) (same).

16.    Today, the rationale for the necessity of payment rule – the rehabilitation of a debtor in reorganization cases – is "the paramount policy and goal of Chapter 11." *In re Ionosphere Clubs, Inc.*, 98 B.R. at 176; *Just For Feet*, 242 B.R. at 826 (finding that payment of prepetition claims to certain trade vendors was "essential to the survival of the debtor during the chapter 11 reorganization."); *see also In re Quality Interiors, Inc.*, 127 B.R. 391, 396 (Bankr. N.D. Ohio 1991) ("[P]ayment by a debtor-in-possession of pre-petition claims outside of a confirmed plan of reorganization is generally prohibited by the Bankruptcy Code", but "[a] general practice has developed . . . where bankruptcy courts permit the payment of certain pre-petition claims, pursuant to 11 U.S.C. § 105, where the debtor will be unable to reorganize without such payment."); *In re Eagle-Picher Indus., Inc.*, 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991) (approving payment of prepetition unsecured claims of tool makers as "necessary to avert a serious threat to the Chapter 11 process"); *Burchinal v. Cent. Wash. Bank (In re Adams Apple, Inc.)*, 829 F.2d 1484, 1490 (9th Cir. 1987) (finding that it is appropriate to provide for the "unequal treatment of pre-petition debts when [such treatment is] necessary for rehabilitation . . ."); Collier on Bankruptcy ¶ 105.02[4][a] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. rev.) (discussing cases in which courts have relied upon the "doctrine of necessity" or the "necessity of payment" rule to pay prepetition claims immediately).

17.    Failure to pay amounts related to the Insurance Policies as and when due may harm the Debtors' estates in several ways. Specifically, there is the potential for an insurance company to terminate coverage, which would likely place additional strain on the Debtors' relationships with key employees who benefit from the Debtors' insurance coverage, and would

7

also eviscerate the Debtors' ability to prevent loss in value caused by casualty, natural disaster or another unforeseen event; the subsequent need to obtain replacement insurance at a likely higher price; and the severe, adverse effect any interruption of payment would have on the Debtors' ability to finance premiums on future policies, all of which suggest that continued payment of insurance premiums is necessary to a successful reorganization. In light of the importance of maintaining insurance coverage with respect to their business activities, the Debtors submit it is in the best interest of their estates to maintain the Insurance Policies and to pay related amounts as described herein under the Bankruptcy Code.

18.    Courts in this jurisdiction have approved relief similar to the relief requested in this motion. *See, e.g., In re OTC Holdings Corp.*, Case No. 10-12636 (Bankr. D. Del. Aug. 27, 2010); *In re NEC Holdings Corp.*, Case No. 10-11890 (Bankr. D. Del. June 11, 2010); *In re MiddleBrook Pharmaceuticals, Inc.*, Case No. 10-11485 (Bankr. D. Del. May 4, 2010); *In re Atrium Corp.*, Case No. 10-10150 (Bankr. D. Del. Feb. 23, 2010); *In re Int'l Aluminum Corp.*, Case No. 10-10003 (Bankr. D. Del. Jan. 6, 2010).[4]

## C.    Cause Exists to Authorize the Debtors' Financial Institutions to Honor Checks and Electronic Fund Transfers

19.    The Debtors represent that they have sufficient availability of funds to pay the amounts described herein in the ordinary course of business by virtue of cash reserves, expected cash flows from ongoing business operations and anticipated access to debtor in possession financing. Also, under the Debtors' existing cash management system, the Debtors represent that checks or wire transfer requests can be readily identified as relating to an authorized

---

[4]    Because of the voluminous nature of the orders cited herein, such orders are not attached to this motion. Copies of these orders are available upon request to the Debtors' counsel.

payment made with respect to the Insurance Policies. Accordingly, the Debtors believe that checks or wire transfer requests, other than those relating to authorized payments, will not be honored inadvertently and that all applicable financial institutions should be authorized, when requested by the Debtors, to receive, process, honor and pay any and all checks or wire transfer requests with respect to the Insurance Policies.

**The Requirements of Bankruptcy Rule 6003 are Satisfied**

20.   As described above, the Debtors are seeking authority pursuant to the Interim Order to pay $12,994.40 on account of amounts related to the Financed Insurance Policies that will become due and owing during the first 21 days of these chapter 11 cases. Under Bankruptcy Rule 6003, the Court may authorize the Debtors to satisfy the amounts related to the Financed Insurance Policies within the 21-day period after the Petition Date because such relief is necessary to avoid immediate and irreparable harm to the Debtors' estates. *See* Fed. R. Bankr. Proc. 6003(b).  Immediate and irreparable harm exists where the absence of relief would impair a debtor's ability to reorganize or threaten the debtor's future as a going concern. *See In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 36 n.2 (Bankr. S.D.N.Y. 1990) (discussing the elements of "immediate and irreparable harm" in relation to Bankruptcy Rule 4001).

21.   As discussed above, if the Debtors do not obtain the relief requested in the Interim Order, they would suffer immediate and irreparable harm because (a) the Debtors would not be able to continue their operations if an insurance company terminated coverage due to nonpayment of premiums, (b) the Debtors would be at severe risk of jeopardizing their assets if they did not have coverage for high-cost occurrences, such as catastrophic property damage, (c) the Debtors' assets would be harmed by the subsequent need to obtain replacement insurance at a likely higher price and (d) it would be difficult for the Debtors to maintain the Financing

9

Agreement. Accordingly, the Debtors respectfully submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 and seek authority to pay the amounts related to the Financed Insurance Policies pursuant to the Interim Order.

## Waiver of Bankruptcy Rules Regarding Notice and Stay of an Order

22.    To implement the foregoing successfully, the debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and any stay of an order granting the relief requested herein pursuant to Bankruptcy Rule 6004(h), 7062, 9014 or otherwise.

## The Debtors' Reservation of Rights

23.    Nothing contained herein is intended or should be construed as an admission as to the validity of any claim against the Debtors, a waiver of the Debtors' rights to dispute any claim or an approval or assumption of any agreement, agreement, contract or lease under section 365 of the Bankruptcy Code. The Debtors expressly reserve their rights to contest any claim or billing dispute. Likewise, if this Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any claim or a waiver of the Debtors' rights to subsequently dispute such claim.

## Notice

24.    The Debtors have provided notice of this motion to: (a) the Office of the United States Trustee for the District of Delaware; (b) the entities listed on the Consolidated List of Creditors Holding the 20 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d); (c) counsel to the Debtors' prepetition secured lender and debtor in possession lender; (d) counsel for the Debtors' proposed stalking horse bidder; (e) the Delaware Secretary of State; (f) the Delaware Secretary of Treasury; (g) the Delaware State Attorney General; (h) the Office of the United States Attorney General for the State of Delaware; (i) the Internal Revenue Service;

10

(j) the Securities and Exchange Commission; and (k) the counterparty to the Financing Agreement. In light of the nature of the relief requested in this motion, the Debtors respectfully submit that no further notice is necessary.

### No Prior Request

25.    No prior motion for the relief requested herein has been made to this or any other court.

*[Remainder of page intentionally left blank.]*

11

WHEREFORE, for the reasons set forth herein and in the First Day Declaration, the Debtors respectfully request that the Court enter the Interim and Final Orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B**, respectively, (a) authorizing the Debtors, in their discretion, to (i) continue the prepetition Insurance Policies, including renewal or modification of the Insurance Policies and (ii) maintain postpetition financing of insurance premiums under the Financing Agreement, (b) authorizing financial institutions to receive, process, honor and pay all related checks and electronic payment requests for payment of the related Insurance Policies, (c) scheduling the Final Hearing to consider entry of the Final Order to the extent a hearing is necessary and (d) granting such other and further relief as may be appropriate.

Dated:  May 30, 2013
      Wilmington, Delaware

/s/ Domenic E. Pacitti

Domenic E. Pacitti (DE Bar No. 3989)
Michael W. Yurkewicz (DE Bar No. 4165)
**KLEHR HARRISON HARVEY BRANZBURG LLP**
919 N. Market Street, Suite 1000
Wilmington, Delaware 19801
Telephone:    (302) 426-1189
Facsimile:    (302) 426-9193

*Proposed Counsel to the Debtors and Debtors in Possession*

12