## Exhibit A

**Proposed Interim Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| LIFE UNIFORM HOLDING CORP., *et al.*,[1] | Case No. 13-11391 (_____) |
| Debtors. | Joint Administration Requested |
| | Related to Docket No. |

### INTERIM ORDER PURSUANT TO 11 U.S.C. SECTIONS 105, 361, 362, 363 AND 364 AND RULES 2002, 4001 AND 9014 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE (1) AUTHORIZING INCURRENCE BY THE DEBTORS OF POST PETITION SECURED INDEBTEDNESS WITH PRIORITY OVER ALL SECURED INDEBTEDNESS AND WITH ADMINISTRATIVE SUPERPRIORITY, (2) GRANTING LIENS, (3) AUTHORIZING USE OF CASH COLLATERAL BY THE DEBTORS PURSUANT TO 11 U.S.C. SECTION 363 AND PROVIDING FOR ADEQUATE PROTECTION, (4) MODIFYING THE AUTOMATIC STAY AND (5) SCHEDULING A FINAL HEARING

THIS MATTER having come before this United States Bankruptcy Court for the District of Delaware (the "**Court**") upon the motion (the "**DIP Motion**") by Healthcare Uniform Company, Inc. ("**Healthcare Uniform**"), Uniform City National, Inc. ("**Uniform City**"), and Life Uniform Holding Corp. ("**Holding**" and together with Healthcare Uniform and Uniform City, each a "**Debtor**", and, collectively, the "**Debtors**"), as a debtors and debtors-in-possession in the above captioned chapter 11 cases (the "**Cases**") seeking, among other things, entry of an interim order (this "**Interim Order**") authorizing the Debtors, as applicable, to:

(i)     Obtain credit and incur debt, pursuant to sections 363, 364(c) and 364(d) of the Bankruptcy Code, on an interim basis for a period (the "**Interim Period**") from the commencement of these Cases through and including the date of the Final Hearing (as defined

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer-identification number, are: Life Uniform Holding Corp. (1018), Healthcare Uniform Company, Inc. (0640), and Uniform City National, Inc. (0392).

below) up to the aggregate committed amounts set forth in the Budget (as defined below) for such period (on terms and conditions more fully described herein), including the Partial Roll-Up (as defined below) of the outstanding balance of the Pre-Petition Revolving Loans (as defined below) during the Interim Period and the Full Roll-Up (as defined below) of the then outstanding balance of the Pre-Petition Facility (as defined below) after the Final Hearing, secured by first priority, valid, priming, perfected and enforceable Liens (as defined in section 101(37) of chapter 11 of title 11 of the United States Code, as amended (the "**Bankruptcy Code**")) on property of the Debtors' estate pursuant to sections 364(c)(2), 364(c)(3) and 364(d) of the Bankruptcy Code, subject only to Permitted Prior Liens (as defined below), and with priority, over all other administrative expenses, as provided in section 364(c)(1) of the Bankruptcy Code, subject to the terms and conditions contained herein;

(ii)    (a) Establish that financing arrangement, including a Partial Roll-Up of the outstanding balance of the Pre-Petition Revolving Loans and the Full Roll-Up of the then outstanding balance of the Pre-Petition Facility (the "**DIP Facility**") pursuant to (I) the terms of the Pre-Petition Financing Agreement, as amended by that certain Ratification and Amendment Agreement (the "**DIP Financing Agreement**")[2], substantially in the form of Exhibit B to the DIP Motion, by and among Healthcare Uniform and Uniform City, each as borrower, Holdings, as guarantor, CapitalSource Finance LLC, as administrative agent and collateral agent (the "**DIP Agent**"), and the Lenders party thereto (collectively, the "**DIP Lenders**," and, together with the DIP Agent, the "**DIP Secured Parties**"), and (II) all other agreements, documents, notes, certificates and instruments executed and/or delivered with, to, or in favor of the DIP Secured Parties, including, without limitation, security agreements, notes, guaranties, mortgages, and

---

[2]    Capitalized terms used in this Interim Order but not defined herein shall have the meanings ascribed to such terms in the DIP Financing Agreement.

Uniform Commercial Code ("**UCC**") financing statements and all other related agreements, documents, notes, certificates, and instruments executed and/or delivered in connection therewith or related thereto (collectively, as the same may be amended, modified or supplemented and in effect from time to time, the "**DIP Financing Agreements**"); and (b) incur the "**DIP Obligations**" under and as defined in the DIP Financing Agreement (collectively, the "**DIP Obligations**");

        (iii)    Authorize the use of the proceeds of the DIP Facility (net of any amounts used to pay fees, costs and expenses under the DIP Financing Agreements) in each case in a manner consistent with the terms and conditions of the DIP Financing Agreements, and in accordance with the Budget (as defined below) (subject to any variances thereto permitted under the terms and conditions of the DIP Financing Agreement) solely for (a) working capital and general corporate purposes, (b) payment of costs of administration of these Cases, to the extent set forth in the Budget and the DIP Financing Agreement, and (c) payment in full of the Pre-Petition Debt (as defined below) in accordance with the terms of this Interim Order and the DIP Financing Agreements, subject to the rights of any committee appointed pursuant to section 1102 of the Bankruptcy Code or any other party in interest other than the Debtors as set forth in Section 8 of this Interim Order.

        (iv)    Authorize the Pre-Petition Agent (for the benefit of the Pre-Petition Lenders) to apply all Collections received by the Debtors from and after the Petition Date and prior to the occurrence of the Commitment Termination Date (as defined herein): (a) first, to reduce the Pre-Petition Debt; and (b) second, to reduce the DIP Obligations pursuant to and subject to the provisions of this Interim Order;

3

(v)    Grant, pursuant to sections 364(c)(2), 364(c)(3) and 364(d) of the Bankruptcy Code, the DIP Agent (for the benefit of the DIP Secured Parties) first priority priming, valid, perfected and enforceable Liens, subject only to the Carve-Out (as defined below) and the Permitted Prior Liens (as defined below), upon all of the Debtors' real and personal property including, without limitation, for avoidance actions and the cash and non-cash proceeds thereof as provided in and as contemplated by this Interim Order, the DIP Facility and the DIP Financing Agreements;

(vi)    Grant, pursuant to section 364(c)(1) of the Bankruptcy Code, the DIP Agent (for the benefit of the DIP Secured Parties) superpriority administrative claim status in respect of all DIP Obligations, subject to the Carve-Out as provided herein;

(vii)    Authorize the use of "cash collateral" as such term is defined in section 363 of the Bankruptcy Code (the **"Cash Collateral"**) in which the Pre-Petition Secured Parties and Pre-Petition Second Lien Secured Parties (each as defined below) have an interest;

(viii)    (A) Grant the Pre-Petition Agent (for the benefit of the Pre-Petition Secured Parties) (as defined below) the Pre-Petition Replacement Liens and Pre-Petition Superpriority Claims (each as defined below) to the extent of any Pre-Petition Diminution in Value (as defined below) of the Pre-Petition Agent's interest in the Pre-Petition Collateral (as defined below) as adequate protection for the granting of the DIP Liens (as defined below) to the DIP Agent, the use of Cash Collateral, and for the imposition of the automatic stay; and (B) make Adequate Protection Payments;

(ix)    Grant to the Second Lien Lender (for the benefit of the Pre-Petition Second Lien Secured Parties (as defined below)) the Pre-Petition Second Lien Replacement Liens and the Second Lien Superpriority Claim (each as defined below), each with the priority

described below, to the extent of any Pre-Petition Second Lien Diminution in Value of the Pre-Petition Second Lien Lender's interest in the Pre-Petition Second Lien Collateral (as defined below) as adequate protection for the granting of the DIP Liens to the DIP Agent, the use of Cash Collateral, and for the imposition of the automatic stay;

(x)    Vacate and modify the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Financing Agreements and this Interim Order;

(xi)    Schedule a final hearing (the "**Final Hearing**") to consider entry of a final order (the "**Final Order**") granting the relief requested in the DIP Motion on a final basis and approve the form of notice with respect to the Final Hearing; and

(xii)    Waive the fourteen (14) day stay provisions of Rule 6004(h) of the Federal Rule of Bankruptcy Procedure (the Federal Rules of Bankruptcy Procedure are referred to herein as the "**Bankruptcy Rules**") and provide for immediate effectiveness of this Interim Order.

This Court having considered the DIP Motion, the First Day Declaration (as defined in the DIP Motion), the exhibits attached thereto, the DIP Facility and the DIP Financing Agreement, and the evidence submitted at the hearing on this Interim Order (the "**Interim Hearing**"); and in accordance with Bankruptcy Rules 2002, 4001(b), (c), and (d), and 9014 and Rule 4001-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), due and proper notice of the DIP Motion and the Interim Hearing having been given; an Interim Hearing having been held and concluded on _____ ____, 2013; and it appearing that approval of the interim relief requested in the DIP Motion is necessary to avoid immediate and irreparable harm to the Debtors and otherwise is fair and reasonable and in the best interests of the Debtors, their creditors, their

estate and their equity holders, and is essential for the continued operation of the Debtors' business; and after due deliberation and consideration, and for good and sufficient cause appearing therefor:

**BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING, THIS COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

A.    **Petition Date**. On May 29, 2013 (the "**Petition Date**"), each of the Debtors filed voluntary petitions under Chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware. The Debtors have continued in the management and operation of their business and property as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these Cases.

B.    **Jurisdiction and Venue**. This Court has jurisdiction over this proceeding, pursuant to 28 U.S.C. §§ 157(b) and 1334, and over the persons and property affected hereby. Consideration of the DIP Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2). Venue for these Cases and proceedings on the DIP Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

C.    **Committee Formation**. A statutory committee of unsecured creditors has not yet been appointed in these Cases.

D.    **Notice**. The Interim Hearing is being held pursuant to the authorization of Bankruptcy Rules 4001 and 6003 and Local Rule 4001-2. Notice of the Interim Hearing and the emergency relief requested in the DIP Motion has been provided by the Debtors, whether by telecopy, email, overnight courier or hand delivery on _____ ___, 2013, to certain parties in interest, including: (i) the Office of the United States Trustee, (ii) the Internal Revenue Service and all other governmental agencies who are required to receive notice under the local rules of this Court, (iii) the Debtors' consolidated thirty (30) largest unsecured creditors, (iv) counsel to

the Pre-Petition Agent (as defined below), (v) the Pre-Petition Agent (as defined below), (vi)

counsel to the proposed DIP Agent, (vii) the Second Lien Lender (as defined below), (viii)

counsel to the Second Lien Lender and the Second Lien Lenders, and (ix) all secured creditors of

record. Under the circumstances, such notice of the Interim Hearing and the relief requested in

the DIP Motion is due and sufficient notice and complies with sections 102(1), 363, 364(c) and

364(d) of the Bankruptcy Code, Bankruptcy Rules 2002, 4001(c), 4001(d) and Local Rule 4001-

2.

      E.     **Debtors' Acknowledgements and Agreements.**  Without prejudice to the rights

of other parties in interest as set forth in Section 8 below, the Debtors (on behalf of themselves

and their estates) admit, stipulate, acknowledge and agree that (collectively, subsections E (i)

through E (xii) hereof shall be referred to herein as the "**Debtors' Stipulations**"):

        (i)    **Pre-Petition Financing Agreements.**  Prior to the commencement of
these Cases, CapitalSource Finance LLC ("**CapitalSource**") made certain
revolving advances (the "**Pre-Petition Revolving Loans**") and term loans (the
"**Pre-Petition Term Loans**") to Healthcare Uniform and Uniform City
(collectively the Pre-Petition Revolving Loans and the Pre-Petition Term Loans,
the "**Pre-Petition Facility**") pursuant to (a) that certain Amended and Restated
Revolving Credit, Term Loan and Security Agreement dated as of October 3,
2006, as amended by that certain Waiver and First Amendment to Amended and
Restated Revolving Credit, Term Loan and Security Agreement dated as of
September 30, 2009 and that certain Second Amendment to Amended and
Restated Revolving Credit, Term Loan and Security Agreement dated as of
August 19, 2011, each by and among Healthcare Uniform and Uniform City (as
the "**Borrowers**"), Holding, as the guarantor (the "**Guarantor**"), the lenders party
thereto (the "**Pre-Petition Lenders**") and CapitalSource, as administrative agent
and collateral agent  (the "Pre-Petition Agent" collectively with the Pre-Petition
Lenders, the "**Pre-Petition Secured Parties**"), and (b) all other agreements,
documents, notes, certificates and instruments executed and/or delivered with, to,
or in favor of Pre-Petition Secured Parties, including, without limitation, all notes,
mortgages, UCC financing statements and all other related agreements,
documents, notes, certificates and instruments executed and/or delivered in
connection therewith or related thereto (collectively, and as the same may be
amended, modified or supplemented and in effect from time to time, the "**Pre-
Petition Financing Agreements**");

(ii)    **Pre-Petition Debt Amount.**  As of the Petition Date, the Borrowers and Guarantor were indebted under the Pre-Petition Financing Agreements (a) pursuant to the Pre-Petition Revolving Loans in the approximate principal amount of 10,241,750.67; and (b) pursuant to the Pre-Petition Term Loans in the approximate principal amount of $7,250,000.00; plus interest accrued and accruing, costs, expenses, fees (including attorneys' fees and legal expenses) other charges and other obligations, including, without limitation, on account of cash management, credit card, depository, investment, hedging and other banking or financial services (collectively the "**Pre-Petition Debt**").

(iii)    **Pre-Petition Collateral.**  To secure the Pre-Petition Debt, the Borrowers and Guarantor granted security interests and Liens (the "**Pre-Petition Liens**") to the Pre-Petition Secured Parties upon all or substantially all of the Borrowers' and Guarantor's assets and personal property (provided, however, that in respect to real property leaseholds, only accounts receivable, payment obligations and/or proceeds arising from a sale, assignment or other disposition thereof were included) (collectively, the "**Pre-Petition Collateral**"),[3] with priority over all other Liens except any Liens otherwise permitted by the Pre-Petition Financing Agreements and all other Liens that were in fact senior in priority to the Pre-Petition Liens as of the Petition Date, if any (which were valid, properly perfected, unavoidable, and senior to the Pre-Petition Liens, they are referred to herein as the "**Permitted Prior Liens**").   To avoid any doubt, the term "Permitted Prior Liens" does not include, and specifically excludes, the Liens securing the Pre-Petition Debt, which Pre-Petition Liens and claims are to be subordinated to, and junior to, the Liens and claims of the DIP Secured Parties.

(iv)    **Pre-Petition Liens.**  (a) As of the Petition Date (i) the Pre-Petition Liens were valid, binding, enforceable, perfected first-priority Liens and are not subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, and subject only to (x) any Permitted Prior Liens, and (y) the terms of that certain Subordination Agreement dated as of September 30, 2009 and as amended by that certain Amendment to and Reaffirmation of Subordination Agreement dated as of August 19, 2011, by and among the Pre-Petition Agent, Sun Uniforms Finance, LLC (the "**Second Lien Lender**"), the Borrowers and the Guarantor (as amended, supplemented and/or otherwise modified to date, hereby and from time to time, the "**Intercreditor Agreement**"), (ii) the Pre-Petition Debt constituted legal, valid and binding obligations of the Borrowers and Guarantor, enforceable in accordance with the terms of the Pre-Petition Financing Agreements (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code), no offsets, defenses or counterclaims to any of the Pre-Petition Debt exists, and no portion of

---

[3]  The acknowledgment and agreement by Debtor of the Pre-Petition Debt and the related Liens, rights, priorities and protections granted to or in favor of the Pre-Petition Secured Parties, as set forth herein and in the Pre-Petition Financing Agreement, shall constitute a proof of claim on behalf of the Pre-Petition Secured Parties in these Cases.

the Pre-Petition Debt is subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, and (iii) the Pre-Petition Debt constituted allowable secured claims, and (b) on the date that this Interim Order is entered, the Debtors have waived, discharged and released the Pre-Petition Secured Parties, together with their affiliates, agents, attorneys, officers, directors and employees, of any right the Debtors may have (x) to challenge or object to any of the Pre-Petition Debt, (y) to challenge or object to the security for the Pre-Petition Debt, and (z) to bring or pursue any and all claims, objections, challenges, causes of action and/or choses in action arising out of, based upon or related to the Pre-Petition Financing Agreements or otherwise.

The Debtors do not possess and will not assert any claim, counterclaim, setoff or defense of any kind, nature or description which would in any way affect the validity, enforceability and non-avoidability of any of the Pre-Petition Financing Agreements or the Pre-Petition Secured Parties' Liens, and/or security interests in the Pre-Petition Collateral, or any claim of the Pre-Petition Secured Parties pursuant to the Pre-Petition Financing Agreements.

(v) **Value of Pre-Petition Collateral.**  The Debtors believe after due investigation and evaluation that the aggregate value of the Pre-Petition Collateral granted to the Pre-Petition Secured Parties pursuant to the Pre-Petition Financing Agreements exceeded the amount of the Pre-Petition Debt as of the Petition Date and, accordingly, all of the Pre-Petition Debt constitutes an over-secured claim within the meaning of section 506(b) of the Bankruptcy Code.

(vi) **Priming of DIP Facility.**  In entering into the DIP Financing Agreements, and as consideration therefor, the Debtors hereby agree that until such time as all DIP Obligations are indefeasibly paid in full in cash and the DIP Financing Agreement is terminated in accordance with the terms thereof, the Debtors shall not in any way prime or seek to prime the security interests and DIP Liens provided to the DIP Secured Parties under this Interim Order by offering a subsequent lender or a party-in-interest a superior or *pari passu* Lien or claim pursuant to section 364(d) of the Bankruptcy Code or otherwise.

(vii) **Pre-Petition Second Lien Financing Arrangements.**  Prior to the commencement of these Cases, the Second Lien Lender made certain loans (the "**Second Lien Loans**") to Borrowers pursuant to (a) Second Amended and Restated Senior Subordinated Secured Promissory Note, originally issued on September 30, 2009, as amended and restated on June 2, 2011 and subsequently amended and restated August 19, 2011 (such Loan and Security Agreement, as amended and in effect, the "**Second Lien Note**"), by Borrowers in favor of Second Lien Lender (the "**Pre-Petition Second Lien Secured Parties**"), and (b) all other agreements, documents, notes, certificates and instruments executed and/or delivered with, to, or in favor of Pre-Petition Second Lien Secured Parties, including, without, limitation, all notes, mortgages, UCC financing statements, and all other related agreements, documents, notes, certificates and instruments executed and/or delivered in connection therewith or related thereto (collectively,

9

and as the same may be amended, modified or supplemented and in effect from time to time, the "**Pre-Petition Second Lien Financing Agreements**");

(viii)    **Pre-Petition Second Lien Debt Amount.** As of the Petition Date, the Debtors were indebted under the Pre-Petition Second Lien Financing Agreements pursuant to the Second Lien Loans in the approximate principal amount of $15,005,775.00; plus interest accrued and accruing, costs, expenses, fees (including attorneys' fees and legal expenses) other charges and other obligations (collectively, the "**Pre-Petition Second Lien Debt**").

(ix)    **Pre-Petition Second Lien Collateral.** To secure the Pre-Petition Second Lien Debt, the Borrowers and Guarantor pledged all or substantially all of their assets (collectively, the "**Pre-Petition Second Liens**") to the Pre-Petition Second Lien Secured Parties (the "**Pre-Petition Second Lien Collateral**")[4] with priority over all other Liens except (x) the Pre-Petition Liens granted in favor of the Pre-Petition Secured Parties, and (y) the Permitted Prior Liens.

(x)    **Pre-Petition Second Liens.** (a) As of the Petition Date, (i) the Pre-Petition Second Liens were valid, binding, enforceable, perfected second-priority Liens, not subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, and subject only to (x) the Pre-Petition Liens, (y) any other Permitted Prior Liens, and (z) terms of the Intercreditor Agreement, (ii) the Pre-Petition Second Lien Debt constituted legal, valid and binding obligations of the Debtors, enforceable in accordance with the terms of the Pre-Petition Second Lien Financing Agreements (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code), no offsets, defenses or counterclaims to any of the Pre-Petition Second Lien Debt exists, and not portion of the Pre-Petition Second Lien Debt is subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

(xi)    **Cash Collateral.** The Pre-Petition Secured Parties have a security interest and Lien in Cash Collateral, including on all amounts on deposit in Debtors' banking, checking, or other deposit accounts and all proceeds of Pre-Petition Collateral to secure the other deposit accounts and all proceeds of Pre-Petition Collateral to secure the Pre-Petition Debt, to the same extent and order of priority as that which was held by each such party pre-petition. The Pre-Petition Second Lien Secured Parties have a security interest in Cash Collateral, including all amounts on deposit in the Debtors' banking, checking, or other deposit accounts and all proceeds of Pre-Petition Second Lien Collateral to secure the Pre-Petition Second Lien Debt, to the same extent and order of priority as that which was held by each such party pre-petition.

---

[4]    The acknowledgement and agreement by Debtor of the Pre-Petition Second Lien Debt and the related liens, rights, priorities and protections granted to or in favor of the Pre-Petition Second Lien Secured Parties, as set forth herein and in the Pre-Petition Second Lien Financing Agreements, shall constitute a proof of claim on behalf of the Pre-Petition Second Lien Secured Parties in these Cases.

F.      **Findings Regarding the Post-Petition Financing.**

(i)      **Need for Post-Petition Financing**. An immediate need exists for Debtors to obtain funds from the DIP Facility in order to continue operations and to administer and preserve the value of its estate. The ability of Debtors to finance its operations, to preserve and maintain the value of the Debtors' assets and maximize a return for all creditors requires the availability of working capital from the DIP Facility, the absence of which would immediately and irreparably harm the Debtors, their estates, their creditors and their equity holders and the possibility for a successful reorganization or sale of the Debtors' assets as a going concern or otherwise.

(ii)      **No Credit Available on More Favorable Terms**. The Debtors are unable to obtain (A) unsecured credit allowable under Bankruptcy Code section 503(b)(1) as an administrative expense, (B) credit for money borrowed with priority over any or all administrative expenses of the kind specified in Bankruptcy Code section 503(b), (C) credit for money borrowed secured solely by a Lien on property of the estate that is not otherwise subject to a Lien, or (D) credit for money borrowed secured by a junior Lien on property of the estate which is subject to a Lien, in each case, on more favorable terms and conditions than those provided in the DIP Financing Agreement and this Interim Order. The Debtors are unable to obtain credit for borrowed money without (i) granting to the DIP Secured Parties the DIP Protections (as defined below), and (ii) allowing the Pre-Petition Lenders to consummate a Partial Roll-Up of the Debtors' Pre-Petition Revolving Loans and Full Roll-Up of the Pre-Petition Debt into the DIP Facility by applying all Collections received by the Debtors prior to the occurrence of the Commitment Termination Date (as defined below) in the following order: (x) first, to reduce the outstanding obligations pursuant to the Pre-Petition Revolving Loans (the

11

"**Partial Roll-Up**"), (y) second, to reduce the remaining outstanding obligations pursuant to the Pre-Petition Debt (the "**Full Roll-Up**"), and (z) third, to reduce the DIP Obligations, which arrangement shall be administered pursuant to the terms and conditions of this Interim Order and the DIP Financing Agreement.

(iii)   **Prior Liens**.  Nothing herein shall constitute a finding or ruling by this Court that any Permitted Prior Liens are valid, senior, perfected and unavoidable.  Moreover, nothing shall prejudice the rights of any party in interest including, but not limited to, the Debtors, the DIP Secured Parties, the Pre-Petition Secured Parties, the Pre-Petition Second Lien Secured Parties and any committee appointed pursuant to section 1102 of the Bankruptcy Code to challenge the validity, priority, perfection and extent of any such Permitted Prior Lien and or security interest, subject to the time periods set forth in Section 8 of this Interim Order.

G.   **Section 506(c) Waiver.**  The DIP Secured Parties, the Pre-Petition Secured Parties and the Pre-Petition Second Lien Secured Parties will request a waiver of the provisions of section 506(c) of the Bankruptcy Code as part of the DIP Facility and adequate protection, which request will be delayed until the Final Hearing on the DIP Facility.  This Court specifically does not approve such section 506(c) waiver at this time, but will consider the issue further at the Final Hearing.

H.   **Lien on Avoidance Actions.**  The DIP Secured Parties, the Pre-Petition Secured Parties and the Pre-Petition Second Lien Secured Parties will request a lien on avoidance actions under chapter 5 of the Bankruptcy Code as part of the DIP Facility and adequate protection, which request will be delayed until the Final Hearing on the DIP Facility.  This Court specifically does not approve such lien on avoidance actions under chapter 5 of the Bankruptcy Code (other than the proceeds of any avoidance action brought pursuant to section 549 of the

Bankruptcy Code to recover any post-Petition Date transfer of collateral) as part of the DIP Facility at this time, but will consider the issue at the Final Hearing.

      I.      **Use of Proceeds of the DIP Facility**. Proceeds of the DIP Facility (net of any amounts used to pay fees, costs and expenses under the DIP Financing Agreements) shall be used, in each case in a manner consistent with the terms and conditions of the DIP Financing Agreement, and in accordance with the Budget (as defined below) (subject to any variances thereto permitted under the terms and conditions of the DIP Financing Agreement), solely for (a) working capital and general corporate purposes, (b) payment of costs of administration of these Cases including payments to Case Professionals (defined below), to the extent set forth in the Budget, and (c) upon entry of the Final Order, payment in full of the Pre-Petition Debt.

      J.      **Payment of Pre-Petition Debt and Pre-Petition Second Lien Debt; Application of Proceeds of Collateral**. All Collections received by the Debtors business prior to the occurrence of the Commitment Termination Date (as defined below) shall be applied: (a) first, to reduce the outstanding obligations pursuant to the Pre-Petition Revolving Loans, (b) second, to reduce the remaining outstanding obligations pursuant to the Pre-Petition Debt, (c) third, to reduce the DIP Obligations in accordance with the terms of the DIP Financing Agreement and the Intercreditor Agreement, (d) fourth, to the Second Lien Lender for distribution to the Pre-Petition Second Lien Secured Parties in accordance with the terms of the Pre-Petition Second Lien Financing Agreements and the Intercreditor Agreement, and (e) fifth, to the Debtors for distribution to the other creditors of the Debtors and the Debtors' estate as may be ordered by this Court. Such payment will not prejudice the Debtors or their estate, because payment of such amounts is subject to the rights of an official committee or other parties-in-interest under Section 8 below.

K.   **Adequate Protection for Pre-Petition Secured Parties and Pre-Petition Second Lien Secured Parties**.

(i)   As a result of the grant of the DIP Liens (as defined below), and the use of Cash Collateral authorized herein, the Pre-Petition Secured Parties are entitled to receive adequate protection pursuant to sections 361, 362, 363, and 364 of the Bankruptcy Code for any Pre-Petition Diminution of Value (as defined below) resulting from the automatic stay or Debtors' use, sale or lease of the Pre-Petition Collateral (including Cash Collateral) during these Cases. As adequate protection, the Pre-Petition Agent (for the benefit of the Pre-Petition Secured Parties) will receive: (1) the Pre-Petition Replacement Liens, (2) the Pre-Petition Superpriority Claim, and (3) the Adequate Protection Payments.

(ii)   As a result of the grant of the DIP Liens, and the use of Cash Collateral authorized herein, the Pre-Petition Second Lien Secured Parties are entitled to receive adequate protection pursuant to sections 361, 362, 363 and 364 of the Bankruptcy Code for any Pre-Petition Second Lien Diminution of Value (as defined below) resulting from the automatic stay or Debtors' use, sale or lease of the Pre-Petition Second Lien Collateral (including Cash Collateral) during these Cases. As adequate protection, the Second Lien Lender (for the benefit of the Second Lien Secured Parties) will receive: (1) the Pre-Petition Second Lien Replacement Liens, and (2) the Pre-Petition Second Lien Superpriority Claim.

L.   **Extension of Financing**. The DIP Secured Parties have indicated a willingness to provide financing to Debtors in accordance with the DIP Financing Agreement and subject to (i) the entry of this Interim Order and a Final Order, and (ii) findings by this Court that such financing is essential to the Debtors' estate, that the DIP Lenders are good faith financiers, and that the DIP Lenders' claims, superpriority claims, security interests and Liens and other

protections granted pursuant to this Interim Order (and the Final Order) and the DIP Facility will not be affected by any subsequent reversal, modification, vacatur or amendment of this Interim Order or the Final Order or any other order, as provided in section 364(e) of the Bankruptcy Code.

M.    **Business Judgment and Good Faith Pursuant to Section 364(e)**.  The terms and conditions of the DIP Facility (including, without limitation, the Partial Roll-Up) and the DIP Financing Agreement, and the fees paid and to be paid thereunder are (i) fair, reasonable, and the best available under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and consideration; (ii) the DIP Facility (including, without limitation, the Partial Roll-Up) was negotiated in good faith and at arms' length between the Debtors, the DIP Secured Parties and the Pre-Petition Secured Parties, and (iii) use of the proceeds to be extended under the DIP Facility (including, without limitation, the Partial Roll-Up) will be so extended in good faith, and for valid business purposes and uses, the consequence of which is that the DIP Secured Parties are entitled to the protection and benefits of section 364(e) of the Bankruptcy Code.  The Partial Roll-Up and any compensation or payment that may be received by the Pre-Petition Secured Parties incremental to what would have been received had such Partial Roll-Up not occurred, constitute compensation for, in consideration for, and solely on account of, the agreement of such Pre-Petition Secured Parties to make DIP Loans and not as payments under, adequate protection for, or otherwise on account of, the Pre-Petition Debt.

N.    **Relief Essential; Best Interest; Good Cause.**  The relief requested in the DIP Motion (and as provided in this Interim Order) is necessary, essential, and appropriate for the continued operation of the Debtors' business and the management and preservation of the

Debtors' assets and personal property. It is in the best interest of the Debtors' estate to be allowed to establish the DIP Facility (including, without limitation, the Partial Roll-Up) contemplated by the DIP Financing Agreement. Good cause has been shown for the relief requested in the DIP Motion (and as provided in this Interim Order).

O.      **Entry of Interim Order**.    For the reasons stated above, the Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(c)(2).

**NOW, THEREFORE**, on the DIP Motion of the Debtors and the record before this Court with respect to the DIP Motion, and with the consent of the Debtors, the Pre-Petition Secured Parties, the DIP Secured Parties and the Pre-Petition Secured Second Lien Parties to the form and entry of this Interim Order, and good and sufficient cause appearing therefor,

**IT IS ORDERED** that:

1.      **Motion Granted**.    The DIP Motion is granted on an interim basis in accordance with the terms and conditions set forth in this Interim Order and the DIP Financing Agreement.

2.      **DIP Financing Agreements**.

(a)      **Approval of Entry Into DIP Financing Agreements.**    Debtors are expressly and immediately authorized, empowered and directed to execute and deliver the DIP Financing Agreements and to incur and to perform the DIP Obligations in accordance with, and subject to, the terms of this Interim Order and the DIP Financing Agreements, and to execute and deliver all instruments, certificates, agreements and documents which may be required or necessary for the performance by the Debtors under the DIP Facility (including, without limitation, the Partial Roll-Up) and the creation and perfection of the DIP Liens described in and provided for by this Interim Order and the DIP Financing Agreements. Each Debtor is hereby authorized and directed to do and perform all acts, pay the principal, interest, fees, expenses and

other amounts described in the DIP Financing Agreement and all other DIP Financing Agreements as such become due, including, without limitation, closing fees, administrative fees, commitment fees, and reasonable attorneys', financial advisors' and accountants' fees and disbursements as provided for in the DIP Financing Agreement which amounts shall not otherwise be subject to approval of this Court; provided, however, that unresolved disputes as to the reasonableness of any professional fees and expenses may be determined by this Court. Upon execution and delivery, the DIP Financing Agreements shall represent valid and binding obligations of each Debtor enforceable against each Debtor in accordance with their terms.

(b)   **Authorization to Borrow**.

(i)   In order to enable the Debtors to continue to operate its business during the Interim Period and subject to the terms and conditions of this Interim Order, the DIP Financing Agreement, the other DIP Financing Agreements, and the Budget (as defined below) (subject to any variances thereto permitted under the terms and conditions of the DIP Financing Agreement), Healthcare Uniform and Uniform City are hereby authorized under the DIP Facility to consummate the Partial Roll-Up and to borrow up to a total committed amount of $15,000,000, plus the amounts contemplated to be funded on the Commitment Termination Date (as a senior secured revolving credit facility) in accordance with the terms and conditions of the DIP Financing Agreement.

(ii)   Upon execution and delivery of the DIP Financing Agreements, such DIP Financing Agreements shall constitute valid, binding and non-avoidable obligations of each Debtor enforceable against each Debtor in accordance with their respective terms and the terms of this Interim Order for all purposes during these Cases, any subsequently converted cases of any Debtor under chapter 7 of the Bankruptcy Code or after the dismissal of these Cases. Except

17

as provided in the proviso appearing at the end of this subsection (ii), no obligation, payment, roll up or repayment thereof or recovery on or in respect thereof, transfer or grant of security under the DIP Financing Agreements, or this Interim Order shall be stayed, restrained, revocable, voidable, avoidable or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under sections 502(d), 548 or 549 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law), or subject to any defense, reduction, setoff, recoupment or counterclaim; provided, however, that subject to the terms of this Interim Order, this Court reserves the right to unwind, after notice and hearing, the Partial Roll-Up, or a portion thereof (which might include the disgorgement or re-allocation of interest, fees, principal or other incremental consideration paid in respect thereto and not paid on account of the Pre-Petition Debt), for good cause shown upon a successful challenge, thereto by the Official Creditors Committee or any other party in interest (other than the Debtors or the Second Lien Secured Parties), prior to entry of the Final Order. Without limiting the generality of the foregoing, upon entry of this Interim Order, the Debtors shall be authorized to effect a Partial Roll-Up of the Pre-Petition Debt by applying all Collections which they receive from and after the Petition Date and prior to the occurrence of the Commitment Termination Date: (x) first, to the Pre-Petition Debt, and (y) second, to the DIP Obligations.

(c)    **Application of DIP Proceeds**. The proceeds of the DIP Facility (net of any amounts used to pay fees, costs and expenses under the DIP Financing Agreement) shall be used, in each case in a manner consistent with the terms and conditions of the DIP Financing Agreement, and in accordance with the Budget (as defined below) (subject to any variances thereto permitted under the terms and conditions of the DIP Financing Agreement) solely for (a)

18

working capital and general corporate purposes, (b) payment of costs of administration of these Cases including payments to Case Professionals, to the extent set forth in the Budget, this Interim Order or the DIP Financing Agreement and, (c) payment in full of the Pre-Petition Debt shall be deemed to have occurred pursuant to the DIP Financing Agreement.

(d)    **Conditions Precedent**. The DIP Secured Parties shall have no obligation to make any loan or advance under the DIP Financing Agreement during the Interim Period unless the conditions precedent to make such loan under the DIP Financing Agreement have been satisfied in full or waived by the DIP Secured Parties in their sole discretion.

(e)    **Post-Petition Liens.** Effective immediately upon the entry of this Interim Order, the DIP Secured Parties are hereby granted pursuant to sections 361, 362, 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, priming first priority, continuing, valid, binding, enforceable, non-avoidable, and automatically perfected post-petition security interests and Liens (collectively, the "**DIP Liens**"), senior and superior in priority to all other secured and unsecured creditors of the Debtors' estate except the Permitted Prior Liens and as otherwise provided in this Interim Order, upon and to all presently owned and hereafter acquired assets and real and personal property of the Debtors, including, without limitation, all avoidance actions of the Debtors, and all products, Proceeds (cash and non-cash), any deposit or similar payment (whether or not held by a third party escrow agent) made pursuant to the terms of an asset purchase agreement or otherwise related to a Transaction, substitutions, and accessions of or to any of the foregoing(collectively, the "**DIP Collateral**" and, together with the Pre-Petition Collateral and the Pre-Petition Second Lien Collateral, the "**Collateral**"); provided, however, that the DIP Collateral shall not include any avoidance action under chapter 5 of the Bankruptcy Code or the proceeds thereof (other than the proceeds of any avoidance action brought pursuant

to section 549 of the Bankruptcy Code to recover any post-Petition Date transfer of collateral) until the entry of a Final Order.

(f)    **DIP Lien Priority**.  The DIP Liens to be created and granted to the DIP Secured Parties, as provided herein, (a) are created pursuant to sections 364(c)(2), 364(c)(3) and 364(d) of the Bankruptcy Code, (b) are first, valid, prior, perfected, unavoidable, and superior to any security, mortgage, or collateral interest or Lien or claim to any of the DIP Collateral, and are subject only to: (x) the Carve-Out and, (y) the Permitted Prior Liens.  The DIP Liens shall secure all DIP Obligations.  The DIP Liens shall not be made subject to or *pari passu* with any Lien or security interest by any court order heretofore or hereafter entered in these Cases except for the Permitted Prior Liens; and shall be valid and enforceable against any trustee appointed in these Cases, upon the conversion of any of these Cases to cases under chapter 7 of the Bankruptcy Code or in any other proceedings related to any of the foregoing (any "**Successor Cases**"), and/or upon the dismissal of these Cases.  If approved in the Final Order, the DIP Liens shall not be subject to sections 510, 549, 550, 551 or 506(c) of the Bankruptcy Code.

(g)    **Enforceable Obligations**.  The DIP Financing Agreements shall constitute and evidence the valid and binding obligations of the Debtors, which obligations shall be enforceable against each Debtor, its estate and any successors thereto and its creditors, in accordance with their terms.

(h)    **Budget**.  From and after the Petition Date, Debtors shall use the proceeds of the extensions of credit under the DIP Facility only for the purposes specifically set forth in the DIP Financing Agreement and this Interim Order and in accordance with the Budget (subject

to any variances thereto permitted under the terms and conditions of the DIP Financing Agreement).

       (i)     **Superpriority Administrative Claim Status**.  Subject to the Carve-Out all DIP Obligations shall be an allowed superpriority administrative expense claim (the "**DIP Superpriority Claim**" and, together with the DIP Liens, the "**DIP Protections**") with priority (except as otherwise provided in Section 8 below) in any Cases under sections 364(c)(1), 503(b) and 507(b) of the Bankruptcy Code and otherwise over all administrative expense claims and unsecured claims against the Debtors and their estate, now existing or hereafter arising, of any kind or nature whatsoever including, without limitation, administrative expenses of the kinds specified in, arising, or ordered pursuant to sections 105, 326, 328, 330 of the Bankruptcy Code (except as otherwise provided in Section 8  below), 331, 503(a), 503(b), 507(a), 507(b), 546(c), 546(d), 726(b), 1113 and 1114 of the Bankruptcy Code, and, if approved in the Final Order, section 506(c) of the Bankruptcy Code), whether or not such expenses or claims may become secured by a judgment Lien or other non-consensual Lien, levy or attachment.  Other than the Carve-Out, no costs or expenses of administration, including, without limitation, professional fees allowed and payable under Bankruptcy Code sections 328, 330, and 331, or otherwise, that have been or may be incurred in this proceeding, or in any Successor Cases, and no priority claims are, or will be, senior to, prior to (subject to the Pre-Petition Superpriority Claim as set forth in this Interim Order), or on a parity with the DIP Protections or the DIP Obligations, or with any other claims of the DIP Secured Parties arising hereunder.

       3.     **Authorization to Use Cash Collateral and Proceeds of DIP Financing Agreement**.

(a)     Pursuant to the terms and conditions of this Interim Order, the DIP Facility and

the DIP Financing Agreement, and in accordance with the budget (as the same may be modified,

supplemented or updated from time to time consistent with the terms of the DIP Financing

Agreement and this Interim Order, the "**Budget**"), attached hereto as <u>Exhibit 1</u>, Debtors are

authorized to use Cash Collateral and to use the advances under the DIP Financing Agreement

(during the period commencing immediately after the entry of the Interim Order and terminating

upon the Commitment Termination Date (as defined below)).  The Budget may be updated (with

the consent and/or at the request of the DIP Agent) from time to time, provided that such updated

Budget shall be in form and substance acceptable to the DIP Agent, in its sole and absolute

discretion, and Borrowers and the other Debtor shall be required always to comply with the

Budget and the DIP Financing Agreement pursuant to the terms of the DIP Facility.  Nothing in

this Interim Order shall authorize the disposition of any assets of the Debtors or their estate

outside the ordinary course of business or other proceeds resulting therefrom, except as permitted

in the DIP Facility, the DIP Financing Agreement and this Interim Order and in accordance with

the Budget (subject to any variances thereto permitted under the terms and conditions of the DIP

Financing Agreement and this Interim Order).

(b)     Except as set forth in Section 8 below, no Cash Collateral or advances under the

DIP Financing Agreement may be used by the Debtors, any Committee, or any other person or

entity to object to or contest in any manner, or raise any defenses to the validity, extent,

perfection, priority, or enforceability of the Pre-Petition Debt or Pre-Petition Second Lien Debt,

or any Liens or security interests with respect thereto or any other rights or interests of the Pre-

Petition Secured Parties or the Pre-Petition Second Lien Secured Parties, or to assert any claims

or causes of action, including, without limitation, any actions under chapter 5 of the Bankruptcy Code, against the Pre-Petition Secured Parties or the Pre-Petition Second Lien Secured Parties.

4.    **Adequate Protection for Pre-Petition Secured Parties**.  As adequate protection for the interest of the Pre-Petition Secured Parties in the Pre-Petition Collateral (including Cash Collateral) on account of the granting of the DIP Liens, the Debtors' use of Cash Collateral and other decline in value arising out of the automatic stay or the Debtors' use, sale, depreciation, or disposition of the Pre-Petition Collateral ("**Pre-Petition Diminution in Value**"), the Pre-Petition Secured Parties shall receive adequate protection as follows:

(a)    **Pre-Petition Replacement Liens**.  Solely to the extent of the Pre-Petition Diminution in Value of the interests of the Pre-Petition Secured Parties in the Pre-Petition Collateral, the Pre-Petition Secured Parties shall have, subject to the terms and conditions set forth below, pursuant to sections 361, 363(e) and 364(d) of the Bankruptcy Code additional and replacement security interests and Liens in the DIP Collateral (the "**Pre-Petition Replacement Liens**"), which shall be junior only to the DIP Liens, Permitted Prior Liens and the Carve-Out as provided herein and shall be subject to the terms of the Intercreditor Agreement.

(b)    **Pre-Petition Superpriority Claim**.  Solely to the extent of the Pre-Petition Diminution in Value of the interest of the Pre-Petition Secured Parties in the Pre-Petition Collateral, the Pre-Petition Secured Parties shall have an allowed superpriority administrative expense claim pursuant to Bankruptcy Code section 507(b) (the "**Pre-Petition Superpriority Claim**") which shall have priority (except with respect to the DIP Liens, the DIP Superpriority Claim, and the Carve-Out) over any other claims under sections 364(c)(1), 503(b) and 507(b) of the Bankruptcy Code and otherwise over all administrative expense claims and unsecured claims against the Debtors and their estate, now existing or hereafter arising, of any kind or nature

23

whatsoever including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 507(a), 507(b), 546(c), 546(d), 726(b), 1113, and 1114 of the Bankruptcy Code and, if approved in the Final Order, section 506(c) of the Bankruptcy Code, whether or not such expenses of claims may become secured by a judgment or other non-consensual Lien, levy or attachment.

(c)     **Adequate Protection Payments**.  The Pre-Petition Secured Parties shall receive adequate protection in the form of deemed repayment of a portion of the outstanding amount of the Pre-Petition Debt in accordance with this Interim Order in coordination with the actual application of Collections (the "**Adequate Protection Payments**").  Subject to Section 2(b)(ii) of this Interim Order, all Collections received from and after the Petition Date shall be applied against the Pre-Petition Debt in the Pre-Petition Agent's sole and absolute discretion.

(d)     **Adequate Protection Upon Sale of Collateral.**  Upon the sale of any Collateral pursuant to section 363 of the Bankruptcy Code, any such Collateral shall be sold free and clear of any Permitted Prior Liens, the Pre-Petition Liens, the Pre-Petition Replacement Liens, the Pre-Petition Second Liens, and the Pre-Petition Second Lien Replacement Liens, provided however, that such Liens shall attach to the proceeds of any such sale in the order and priority as established by final order of this Court.

5.     **Adequate Protection for Pre-Petition Second Lien Secured Parties**.  As adequate protection for the interest of the Pre-Petition Second Lien Secured Parties in the Pre-Petition Second Lien Collateral (including Cash Collateral) on account of the granting of the DIP Liens, Debtors' use of Cash Collateral and other decline in value arising out of the automatic stay or the Debtors' use, sale, depreciation, or disposition of the Pre-Petition Second

24

Lien Collateral (the "**Pre-Petition Term Loan Diminution in Value**"), the Pre-Petition Second

Lien Secured Parties shall receive adequate protection as follows:

> (a)    **Pre-Petition Second Lien Replacement Liens.**  Solely to the extent of
the Pre-Petition Second Lien Diminution in Value of the interests of the Pre-Petition Second
Lien Secured Parties in the Second Lien Collateral, the Pre-Petition Second Lien Secured Parties
shall have, subject to the terms and conditions set forth below, pursuant to sections 361, 363(e)
and 364(d) of the Bankruptcy Code additional and replacement security interests and Liens in the
DIP Collateral (the "**Pre-Petition Second Lien Replacement Liens**"), which shall be junior to
the DIP Liens, the Pre-Petition Liens, the Permitted Prior Liens, the Carve-Out and the Pre-
Petition Replacement Liens as provided herein, and subject in all respects to the terms and
provisions of the Intercreditor Agreement.

> (b)    **Pre-Petition Second Lien Superpriority Claim.**  Solely to the extent of
the Pre-Petition Second Lien Diminution in Value of the interest of the Pre-Petition Second Lien
Secured Parties in the Pre-Petition Second Lien Collateral, the Pre-Petition Second Lien Secured
Parties shall have an allowed superpriority administrative expense claim pursuant to Bankruptcy
Code section 507(b) (the "**Pre-Petition Second Lien Superpriority Claim**" and together with
the DIP Superpriority Claim and the Pre-Petition Superpriority Claim, the "**Superpriority
Claims**") which shall have priority (except with respect to the DIP Liens, the Pre-Petition Liens,
the DIP Superpriority Claim, the Pre-Petition Superpriority Claim and the Carve-Out) in any
Cases over any other claim under sections 364(c)(1), 503(b) and 507(b) of the Bankruptcy Code
and otherwise over all administrative expense claims and unsecured claims against the Debtors
and their estate, now existing or hereafter arising, of any kind or nature whatsoever including,
without limitation, administrative expenses of the kinds specified in or ordered pursuant to

sections 105, 326, 328, 330, 331, 503(a), 503(b), 507(a), 507(b), 546(c), 546(d), 726(b), 1113, 1114 of the Bankruptcy Code and, if approved in the Final Order, section 506(c) of the Bankruptcy Code, whether or not such expenses of claims may become secured by a judgment or other non-consensual Lien, levy or attachment.

      6.     **Section 507(b) Reservation.**  Nothing herein shall impair or modify the Pre-Petition Secured Parties' or Pre-Petition Second Lien Secured Parties' rights to seek additional adequate protection, subject to the Intercreditor Agreement, in the event that the adequate protection provided to the Pre-Petition Secured Parties or the Pre-Petition Second Lien Secured Parties hereunder is insufficient to compensate for the Pre-Petition Diminution in Value or Pre-Petition Second Lien Diminution of Value, as applicable, of the interest of the Pre-Petition Secured Parties or the Pre-Petition Second Lien Secured Parties, as applicable, in the Pre-Petition Collateral or the Pre-Petition Second Lien Collateral during these Cases or any Successor Cases.

      7.     **Post-Petition Lien Perfection**.  This Interim Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the DIP Liens, the Pre-Petition Replacement Liens and the Pre-Petition Second Lien Replacement Liens, including, without limitation perfection of the DIP Agent's interest in any deposit that Debtors have a right, title or interest in with respect to a Transaction, without the necessity of filing or recording any financing statement, deed of trust, mortgage, or other instrument or document which may otherwise be required under the law of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement or securities account control agreements) to validate or perfect the DIP Liens, the Pre-Petition Replacement Liens and the Pre-Petition Second Lien Replacement Liens or to entitle the DIP Liens, the Pre-Petition Liens and the Pre-Petition Second Liens to the priorities granted herein.

Notwithstanding the foregoing, the DIP Agent, the Pre-Petition Agent and the Second Lien Lender may, each in its sole discretion, file such financing statements, mortgages, security agreements, notices of Liens and other similar documents, and are hereby granted relief from the automatic stay of section 362 of the Bankruptcy Code in order to do so, and all such financing statements, mortgages, security agreements, notices and other documents shall be deemed to have been filed or recorded at the time and on the date of the commencement of these Cases. The Debtors shall execute and deliver to the DIP Agent, the Pre-Petition Agent and the Second Lien Lender all such financing statements, mortgages, notices and other documents as the DIP Agent, the Pre-Petition Agent and the Second Lien Lender may reasonably request to evidence, confirm, validate or perfect, or to insure the contemplated priority of, the DIP Liens, the Pre-Petition Replacement Lien and the Pre-Petition Second Lien Replacement Liens granted pursuant hereto. Each of the DIP Agent, the Pre-Petition Agent and the Second Lien Lender, in its discretion, may file a photocopy of this Interim Order as a financing statement with any recording officer designated to file financing statements or with any registry of deeds or similar office in any jurisdiction in which the Debtors have real or personal property, and in such event, the subject filing or recording officer shall be authorized to file or record such copy of this Interim Order. The DIP Agent shall, in addition to the rights granted to it under the DIP Financing Agreements, be deemed to be the successor in interest to the Pre-Petition Secured Parties with respect to all third party notifications in connection with the Pre-Petition Financing Agreements, all Pre-Petition Collateral access agreements, all bailments for perfection purposes and all other agreements with third parties (including any agreement with a customs broker, freight forwarder or credit card processor) relating to, or waiving claims against, any Pre-Petition Collateral, including, without limitation, each collateral access agreement duly executed and

27

delivered by any landlord of the Debtors and including, for the avoidance of doubt, all deposit account control agreements, securities account control agreements and credit card agreements, provided, that the Pre-Petition Agent shall continue to have all rights pursuant to each of the foregoing, and to the extent that the DIP Agent succeeds to the rights therein of the Pre-Petition Agent, the DIP Agent shall continue to hold any Collateral delivered to it as a 'contractual representative' for perfection purposes for the benefit of the Pre-Petition Secured Parties and the Pre-Petition Second Lien Secured Parties pursuant to the terms of Section 7 of the Intercreditor Agreement.

8.     **Reservation of Certain Third Party Rights and Bar of Challenges and Claims.**

(a)     Nothing in this Interim Order or the DIP Financing Agreement, including, without limitation, the Debtors' Stipulations, shall prejudice whatever rights any official committee(s) or any other party in interest with requisite standing (other than the Debtors) may have (a) to file a contested matter or an adversary proceeding or otherwise to object to or challenge the findings herein, including, but not limited to, those in relation to (i) the validity, extent, perfection, enforceability or priority of the mortgage, security interests and Liens of the Pre-Petition Secured Parties in and to the Pre-Petition Collateral, or (ii) the validity, allowability, priority, status or amount of the Pre-Petition Debt, or (b) to bring suit or otherwise assert any claims or causes of action against any of the Pre-Petition Secured Parties in connection with or related to the Pre-Petition Financing Agreements, or the actions or inactions of any of the Pre-Petition Secured Parties arising out of or related to the Pre-Petition Financing Agreements; provided, however, that, unless any official committee(s) or any other party in interest with requisite standing commences a contested matter or adversary proceeding raising such objection

or challenge, including, without limitation, any claim against the Pre-Petition Secured Parties in the nature of a setoff, counterclaim or defense to the Pre-Petition Debt (including but not limited to, those under sections 506, 544, 547, 548, 549, 550 and/or 552 of the Bankruptcy Code or by way of suit against any of the Pre-Petition Secured Parties), within the earlier of (a) 45 days after the formation of a statutory committee of unsecured creditors, or (b) if no statutory committee of unsecured creditors is formed 60 days following entry of the Interim Order or (c) the deadline for submitting any bids for the assets of the Debtors in the Cases (including, without limitation, the Bid Deadline (as defined in any order regarding "Sales Procedures" entered by the Court in these Cases)) (collectively, (a), (b) and (c) shall be referred to as the "**Pre-Petition Secured Parties Challenge Period**," and the date that is the next calendar day after the termination of the Pre-Petition Secured Parties Challenge Period, in the event that no contested matter, adversary proceeding or other objection or challenge is raised during the Pre-Petition Secured Parties Challenge Period shall be referred to as the "**Pre-Petition Secured Parties Challenge Period Termination Date**"), upon the Pre-Petition Secured Parties Challenge Period Termination Date, (i) any and all such contested matters, adversary proceedings and other objections and challenges by any party (including, without limitation, all creditors, official creditors' committee(s), any chapter 11 or chapter 7 trustee appointed herein or in any Successor Cases, receivers, administrators, examiners with expanded powers, responsible officers, other estate representatives appointed in these Cases or any Successor Cases or in any jurisdiction, and all other parties in interest) shall be deemed to be forever waived and barred, (ii) the Pre-Petition Debt shall be deemed to be allowed in full and shall be deemed to be allowed as fully secured claims within the meaning of section 506 of the Bankruptcy Code for all purposes in connection with these Cases and any Successor Cases, (iii) the Liens in favor of the Pre-Petition Secured

Parties shall be deemed to have been, as of the Petition Date, legal, valid, binding, perfected security interests and Liens, not subject to recharacterization, subordination or otherwise avoidable, (iv) the Debtors' Stipulations shall be binding on all parties (including, without limitation, all creditors, official creditors' committee(s), any chapter 11 or chapter 7 trustee appointed herein or in any Successor Cases, receivers, administrators, examiners with expanded powers, responsible officers, other estate representatives appointed in these Cases or in any Successor Cases or in any jurisdiction, and all other parties in interest).  To the extent any such contested matter, adversary proceeding or other objection or challenge is filed, the Pre-Petition Secured Parties shall be entitled to include such costs and expenses, including but not limited to reasonable attorneys' fees, incurred in defending the objection or complaint as part of the Pre-Petition Debt, in each case, to the extent allowable under section 506(b) of the Bankruptcy Code.

(b)    Nothing in this Interim Order or the DIP Financing Agreement, including, without limitation, the Debtors' Stipulations, shall prejudice whatever rights any official committee(s) or any other party in interest with requisite standing (other than the Debtors) may have (a) to file a contested matter or an adversary proceeding or otherwise to object to or challenge the findings herein, including, but not limited to, those in relation to (i) the validity, extent, perfection, enforceability or priority of the mortgage, security interests and Liens of the Pre-Petition Second Lien Secured Parties in and to the Pre-Petition Second Lien Collateral, or (ii) the validity, allowability, priority, status or amount of the Pre-Petition Second Lien Debt, or (b) to bring suit or otherwise assert any claims or causes of action against any of the Pre-Petition Second Lien Secured Parties in connection with or related to the Pre-Petition Second Lien Financing Agreements, or the actions or inactions of any of the Pre-Petition Second Lien Secured Parties arising out of or related to the Pre-Petition Second Lien Financing Agreements;

provided, however, that, unless any official committee(s) or any other party in interest with requisite standing commences a contested matter or adversary proceeding raising such objection or challenge, including, without limitation, any claim against the Pre-Petition Second Lien Secured Parties in the nature of a setoff, counterclaim or defense to the Pre-Petition Second Lien Debt, as applicable (including but not limited to, those under sections 506, 544, 547, 548, 549, 550 and/or 552 of the Bankruptcy Code or by way of suit against any of the Pre-Petition Second Lien Secured Parties), within the earlier of (a) 60 days after the formation of a statutory committee of unsecured creditors, or (b) if no statutory committee of unsecured creditors is formed 75 days following entry of the Interim Order, or (c) the deadline for submitting any bids for the assets of the Debtors in the Cases (including, without limitation, the Bid Deadline (as defined in any order regarding "Sales Procedures" entered by the Court in these Cases)) (collectively, (a), (b) and (c) shall be referred to as the "**Pre-Petition Second Lien Secured Parties Challenge Period**," and the date that is the next calendar day after the termination of the Pre-Petition Second Lien Secured Parties Challenge Period, in the event that no contested matter, adversary proceeding or other objection or challenge is raised during the Pre-Petition Second Lien Secured Parties Challenge Period shall be referred to as the "**Pre-Petition Second Lien Secured Parties Challenge Period Termination Date**"), upon the Pre-Petition Second Lien Secured Parties Challenge Period Termination Date, (i) any and all such contested matters, adversary proceedings and other objections and challenges by any party (including, without limitation, all creditors, official creditors' committee(s), any chapter 11 or chapter 7 trustee appointed herein or in any Successor Cases, receivers, administrators, examiners with expanded powers, responsible officers, other estate representatives appointed in these Cases or any Successor Cases or in any jurisdiction, and all other parties in interest) shall be deemed to be

31

forever waived and barred, (ii) the Pre-Petition Second Lien Debt shall be deemed to be allowed in full and shall be deemed to be allowed as fully secured claims within the meaning of section 506 of the Bankruptcy Code for all purposes in connection with these Cases and any Successor Cases, (iii) the Liens in favor of the Pre-Petition Second Lien Secured Parties shall be deemed to have been, as of the Petition Date, legal, valid, binding, perfected security interests and Liens, not subject to recharacterization, subordination or otherwise avoidable, (iv) the Debtors' Stipulations shall be binding on all parties (including, without limitation, all creditors, official creditors' committee(s), any chapter 11 or chapter 7 trustee appointed herein or in any Successor Cases, receivers, administrators, examiners with expanded powers, responsible officers, other estate representatives appointed in these Cases or in any Successor Cases or in any jurisdiction, and all other parties in interest). To the extent any such contested matter, adversary proceeding or other objection or challenge is filed, the Pre-Petition Second Lien Secured Parties shall be entitled to include such costs and expenses, including but not limited to reasonable attorneys' fees, incurred in defending the objection or complaint as part of the Pre-Petition Second Lien Debt, as applicable, in each case, to the extent allowable under section 506(b) of the Bankruptcy Code.

9. **Fee Account.** Debtors counsel shall maintain a separate segregated escrow account (the "**Fee Account**"). Subject to the Budget, prior to the occurrence of the Commitment Termination Date, the Fee Account shall be funded on Monday of each of the weeks of the Budget with the specific line item amount set forth for the fees and expenses of Case Professionals (defined below) of the Debtors in the Budget for that actual week (excluding any pre-funding for subsequent periods that may be set forth therein, if any). Amounts in the Fee Account shall be maintained in escrow solely for the payment of Professional Fees of the Case

Professionals of the Debtors and paid only to the extent that such Professional Fees are authorized to be paid pursuant to the procedures approved by this Court; provided, however, that to the extent such funds are not utilized in compliance with the Budget and this Interim Order and/or such payments are not authorized to be paid pursuant to the procedures approved by this Court, then they shall be refunded to the DIP Secured Parties for application to the DIP Obligations as soon as practicable following the Commitment Termination Date.

10.     **Carve-Out; Morgan Joseph; Wind-Down Amount**.  During the Interim Period and subject to the terms and conditions contained in this Section 10, the DIP Liens, DIP Superpriority Claims, Pre-Petition Liens, Pre-Petition Replacement Liens, Pre-Petition Superpriority Claim, Pre-Petition Second Liens, Pre-Petition Second Lien Replacement Liens and Pre-Petition Second Lien Superpriority Claim are subordinate only to the following items (a), (b) and (c) (items (a), (b) and (c), collectively, the "**Carve-Out**"): (a) all fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee under 28 U.S.C. § 1930(a) plus interest pursuant to 31 U.S.C. § 3717 to the extent such interest is awarded by final order of the Court; and (b) to the extent allowed at any time, whether by interim order, procedural order or otherwise, all unpaid fees, disbursements, costs and expenses (collectively, the "**Professional Fees**") incurred by professionals or professional firms (collectively, the "**Case Professionals**") retained by any committee appointed in these Chapter 11 Cases pursuant to Bankruptcy Code 1102 (a "**Committee**"), but only up to an aggregate amount not to exceed $100,000.00 for items (a) and (b), collectively (which $100,000.00 amount shall be in addition to any fees and expenses of Case Professionals of the Debtors which have actually been incurred but are unpaid as of the occurrence of the Commitment Termination Date); and (c) Morgan Joseph TriArtisan LLC's ("**Morgan Joseph**") Fees (as defined in and pursuant to the terms of

33

the Consent and Acknowledgement dated on or about February 1, 2013 between the Pre-Petition Agent and Morgan Joseph (the "**Morgan Joseph Fee Agreement**")), but solely as and to the extent that such Fees (as defined in and pursuant to the terms of the Morgan Joseph Fee Agreement) are actually due and payable under and in accordance with the terms and conditions of the Morgan Joseph Fee Agreement; provided, however, that, in each case (a), (b) and (c), such fees and expenses are approved by this Court, or such lesser amount as so approved. The DIP Lenders shall deposit the Carve-Out and the Wind-Down Amount into the Fee Account (or, with respect to solely the portion of the Carve-Out constituting amounts under the Morgan Joseph Agreement, with Morgan Joseph) upon the Commitment Termination Date (as defined below); provided, however, that prior to subsequent disbursement from the Fee Account (or, with respect to solely the portion of the Carve-Out constituting amounts under the Morgan Joseph Agreement, prior to payment to Morgan Joseph) such fees and expenses incurred by professionals or professional firms are authorized to be paid by this Court pursuant to procedures approved by this Court; and, provided, however, further that unutilized amounts, if any, will be refunded to the DIP Secured Parties for application to the DIP Obligations as soon as is practicable.  Upon the occurrence of the Commitment Termination Date and the full and final funding of the Carve-Out and the Wind-Down Amount, there shall be no further obligations on the part of the DIP Secured Parties or the Pre-Petition Secured Parties regarding the Carve-Out, any Professional Fees, any U.S. Trustee Fees or any other fees and expenses of the Debtors' estate in these Cases or in any successor cases or proceedings.  The DIP Secured Parties' obligation to fund or otherwise pay the Carve-Out and Wind-Down Amount, shall be added to and made a part of the DIP Obligations, secured by the DIP Collateral, and the DIP Secured Parties shall be entitled to all of the rights, claims, Liens, priorities, and protections under this Interim Order, the DIP

Financing Agreement, the Bankruptcy Code and/or applicable law in connection therewith. Subject to the subsequent provisions of this Section 10, the Carve-Out and the Wind-Down Amount shall exclude any fees and expenses (x) incurred in connection with the assertion or joinder in any claim, counterclaim, action, proceeding, application, motion, objection, defenses or other contested matter, the purpose of which is to seek any order, judgment, determination or similar relief (A) invalidating, setting aside, avoiding, or subordinating, in whole or in part, (i) the DIP Obligations, (ii) the Pre-Petition Debt, (iii) the Pre-Petition Liens in the Pre-Petition Collateral, (iv) the Pre-Petition Second Lien Debt, , (v) the Pre-Petition Second Liens in the Pre-Petition Second Lien Collateral, or (vi) the DIP Secured Parties', the Pre-Petition Secured Parties' and the Pre-Petition Second Lien Secured Parties' Liens in the Collateral, or (B) preventing, hindering or delaying, whether directly or indirectly, the DIP Secured Parties', the Pre-Petition Secured Parties', or the Pre-Petition Second Lien Secured Parties' assertions or enforcement of their Liens, security interests or realization upon any DIP Collateral, provided, however, that with respect to solely the Pre-Petition Second Lien Debt and the Pre-Petition Second Liens in the Pre-Petition Second Lien Collateral, such exclusion does not encompass any investigative work, at an aggregate expense not to exceed $10,000, conducted by the Case Professionals prior to bringing any action relating to the foregoing, (y) incurred in using cash collateral of the DIP Secured Parties, the Pre-Petition Secured Parties and the Pre-Petition Second Lien Secured Parties, selling or otherwise disposing of any other Collateral, or incurring any indebtedness not permitted under the DIP Financing Agreement, without the DIP Agent's express written consent or (z) arising after the conversion of the chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code.  The DIP Agent may implement Reserves in accordance with the terms and conditions of the DIP Credit Agreement.  Except for a Lien Obligation to fund the

35

Carve-Out and an obligation to fund the Wind-Down Amount as set forth in this Interim Order and the DIP Financing Agreement, nothing herein shall be construed to obligate the Pre-Petition Secured Parties, the DIP Secured Parties or the Pre-Petition Second Lien Secured Parties, in any way, to pay the Professional Fees or U.S. Trustee Fees, or to assure that the Debtors have sufficient funds on hand to pay any Professional Fees, U.S. Trustee Fees or other liabilities or obligations of the Debtors.

11.    **Payment of Compensation.**  Nothing herein shall be construed as consent to the allowance of any professional fees or expenses of any of the Debtors, any official committee or of any person or shall affect the right of the DIP Secured Parties, the Pre-Petition Secured Parties or the Pre-Petition Second Lien Secured Parties to object to the allowance and payment of such fees and expenses or to permit the Debtors to pay any such amounts not set forth in the Budget.

12.    **Section 506(c) Claims.**  Nothing contained in this Interim Order shall be deemed a consent by the Pre-Petition Secured Parties, the DIP Secured Parties or the Pre-Petition Second Lien Secured Parties to any charge, lien, assessment or claim against the Collateral under section 506(c) of the Bankruptcy Code or otherwise; provided, however, that during the interim period there shall be no waiver of section 506(c) of the Bankruptcy Code.

13.    **Collateral Rights**.  Unless (x) the DIP Agent has provided its prior written consent or all DIP Obligations and Pre-Petition Debt have been indefeasibly paid in full in cash (or will be paid in full in cash upon entry of an order approving indebtedness described in subparagraph (a) below), all commitments to lend have terminated, all indemnity obligations under the DIP Financing Agreement have been cash collateralized, and (y) solely to the extent required by the Bankruptcy Code, the Second Lien Lender has provided its prior written consent or the Pre-Petition Second Lien Debt has been indefeasibly paid in full in cash, all indemnity

36

obligations under the Second Lien Note have been cash collateralized, there shall not be entered in this proceeding, or in any Successor Cases, any order which authorizes any of the following:

(a) the obtaining of credit or the incurring of indebtedness that is secured by a security, mortgage, or collateral interest or other Lien on all or any portion of the DIP Collateral and/or entitled to priority administrative status which is equal or senior to those granted to the DIP Secured Parties or the Pre-Petition Secured Parties; or

(b) the use of Cash Collateral for any purpose other than to pay in full in cash the DIP Obligations or as otherwise permitted in this Interim Order and the DIP Financing Agreement; or

(c) relief from stay by any person other than of the DIP Secured Parties on all or any portion of the Collateral; or

(d) the Debtors' return of goods constituting Collateral pursuant to section 546(h) of the Bankruptcy Code, except as permitted in the DIP Financing Agreement.

14. **Proceeds of Subsequent Financing.** Without limiting the provisions and protections of Section 13 above, if at any time prior to the repayment in full of all DIP Obligations and the termination of the DIP Secured Parties' obligations to make loans and advances under the DIP Facility, including subsequent to the confirmation of any chapter 11 plan or plans (the "**Plan**") with respect to the Debtors, and the repayment in full of the Pre-Petition Debt and the Pre-Petition Second Lien Debt, the Debtors' estate, any trustee, any examiner with enlarged powers or any responsible officer subsequently appointed, shall obtain credit or incur debt pursuant to Bankruptcy Code sections 364(b), 364(c) or 364(d) in violation of the DIP Financing Agreement, then all of the cash proceeds derived from such credit or debt and all Cash Collateral shall immediately be turned over (a) first, to the Pre-Petition Agent for application to

the Pre-Petition Debt outstanding pursuant to the Pre-Petition Financing Agreement, (b) second,

to the DIP Agent for application to the DIP Obligations outstanding pursuant to the terms of the

DIP Financing Agreement, and (c) third, to the Second Lien Lender for application to the Pre-

Petition Second Lien Debt pursuant to the Second Lien Note, in each case, in accordance with

the terms of this Interim Order and the Intercreditor Agreement.

15.    **Commitment Termination Date.**  All (i) DIP Obligations of the Debtors to the

DIP Secured Parties shall be immediately due and payable, and (ii) authority to use the proceeds

of the DIP Financing Agreements and to use Cash Collateral (other than amounts in the Fee

Account, which shall still be available for use in accordance with the terms of this Interim Order)

shall cease, both on the date that is the earliest to occur of: (i) September 1, 2013; (ii) the

occurrence of any Event of Default or the Termination Date under the DIP Financing

Agreement; or (iii) the date upon which a Transaction is closed as contemplated by the DIP

Financing Agreement (the "**Commitment Termination Date**").

16.    **Payment from Proceeds of Collateral.**  Subject to the rights, if any, of the

holders of any Permitted Prior Liens, all products and proceeds of the DIP Collateral (including,

for the avoidance of doubt, proceeds from receivables and sales in the ordinary course of

business, insurance proceeds, and proceeds of all dispositions of Collateral, whether or not in the

ordinary course) regardless of whether such Collateral came into existence prior to the Petition

Date, shall be remitted directly (a) first, to the Pre-Petition Agent for application to the Pre-

Petition Debt outstanding pursuant to the Pre-Petition Financing Agreement, (b) second, to the

DIP Agent for application to the DIP Obligations outstanding pursuant to the DIP Financing

Agreement and (c) third, to the Second Lien Lender for application to the Pre-Petition Second

Lien Debt outstanding pursuant to the Pre-Petition Second Lien Financing Agreements, in each case, in accordance with the terms of this Interim Order and the Intercreditor Agreement.

17. **Disposition of Collateral**. The Debtors shall not (a) sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP Collateral; without the prior written consent of the DIP Secured Parties and to the extent required, by the Bankruptcy Code, and not otherwise waived under the Intercreditor Agreement, the Second Lien Lender (and no such consent shall be implied, from any other action, inaction or acquiescence by the DIP Secured Parties or an order of this Court), except for sales of the Debtors' inventory in the ordinary course of business or except as otherwise provided for in the DIP Financing Agreement and this Interim Order and as approved by this Court, or (b) assume, reject or assign any leasehold interest without the prior consultation with the DIP Agent, except as otherwise provided for in the DIP Financing Agreement.

(a) **Transaction Proceeds; Survival of Protections**. Any and all proceeds of a Transaction shall be remitted to the DIP Agent within one (1) business day of Debtors' receipt thereof for application to the unpaid Pre-Petition Debt, the DIP Obligations and the Second Lien Debt (in that order) in accordance with the terms of the DIP Financing Agreement and this Interim Order and subject to the terms of the Intercreditor Agreement. Unless and until the Pre-Petition Debt, the DIP Obligations and the allowed secured claims of the Pre-Petition Second Lien Secured Parties is irrevocably repaid in full or have been cash secured to the reasonable satisfaction of the DIP Agent, Pre-Petition Agent or the Second Lien Lender, as applicable, all commitments under the DIP Financing Agreements to lend have irrevocably terminated, the protections afforded to Pre-Petition Secured Parties, the DIP Secured Parties and the Pre-Petition Second Lien Secured Parties pursuant to this Interim Order, the DIP Financing Agreement or the

Second Lien Note, as applicable, and any actions taken pursuant thereto, shall survive the entry

of any order confirming a Plan or converting these Cases into Successor Cases, and the DIP

Liens, the DIP Superpriority Claim, the Pre-Petition Superpriority Claim and the Pre-Petition

Second Lien Superpriority Claim shall continue in these proceedings and in any Successor

Cases, and such Liens, DIP Superpriority Claim, the Pre-Petition Superpriority Claim and the

Pre-Petition Second Lien Superpriority Claim shall maintain their priority as provided by this

Interim Order.

18.    **Rights and Remedies Upon Commitment Termination Date.**

(a)    Any automatic stay otherwise applicable to the Pre-Petition Secured

Parties, the DIP Secured Parties and the Pre-Petition Second Lien Secured Parties is hereby

modified so that after the occurrence of the Commitment Termination Date and at any time

thereafter upon two (2) business days prior notice ("**Notice Period**") of such occurrence, in each

case given to each of the Debtors, counsel for the Creditors' Committee, if any, and the U.S.

Trustee, the Pre-Petition Secured Parties, the DIP Secured Parties and the Pre-Petition Second

Lien Secured Parties, shall be entitled to exercise their rights and remedies in accordance with

the Pre-Petition Financing Agreements, the DIP Financing Agreements and the Pre-Petition

Second Lien Financing Agreements, subject to the terms of the Intercreditor Agreement.

Immediately following the giving of notice by the DIP Agent of the occurrence of the

Commitment Termination Date: (i) the Debtors shall continue to deliver and cause the delivery

of the proceeds of Collateral (x) first, to the Pre-Petition Agent for application to the Pre-Petition

Debt pursuant to the Pre-Petition Financing Agreement, (y) second, to the DIP Agent for

application to the DIP Obligations pursuant to the DIP Financing Agreements, and (z) third, to

the Second Lien Lender, for application to the Pre-Petition Second Lien Debt pursuant to the

40

Second Lien Note, in each case, in accordance with this Interim Order and subject to the terms of the Intercreditor Agreement; (ii) subject to the terms of the Intercreditor Agreement, the DIP Agent and the Second Lien Lender, as applicable, shall continue to apply such proceeds in accordance with the provisions of this Interim Order, the DIP Financing Agreements or the Second Lien Note, as applicable; (iii) the Debtors shall have no right to use any of such proceeds, nor any other Cash Collateral other than towards the satisfaction of the Pre-Petition Debt, the DIP Obligations, the Pre-Petition Second Lien Debt and the Carve-Out; and (iv) any obligation otherwise imposed on the DIP Secured Parties to provide any loan or advance to Borrowers pursuant to the DIP Facility shall be suspended. Following the giving of notice by the DIP Agent of the occurrence of the Commitment Termination Date, Borrowers and the other Debtor shall be entitled to an emergency hearing before this Court solely for the purpose of contesting whether the Commitment Termination Date has occurred. If the Debtors do not contest the right of the Pre-Petition Secured Parties, the DIP Secured Parties and the Pre-Petition Second Lien Secured Parties, to exercise their remedies based upon whether the Commitment Termination Date has occurred within such time period, or if the Debtors do timely contest the occurrence of the Commitment Termination Date and this Court after notice and hearing declines to stay the enforcement thereof, the automatic stay, as to the Pre-Petition Secured Parties, the DIP Secured Parties and the Pre-Petition Second Lien Secured Parties, shall automatically terminate at the end of such Notice Period.

(b)     If the Pre-Petition Secured Parties, the DIP Secured Parties or the Pre-Petition Second Lien Secured Parties exercise any of their rights and remedies upon the occurrence of the Commitment Termination Date, the DIP Agent may retain one or more agents to sell, lease, or otherwise dispose of the Collateral in accordance with the terms of the

Intercreditor Agreement. In any exercise of their rights and remedies upon the Commitment Termination Date, the DIP Secured Parties are authorized to proceed under or pursuant to the DIP Financing Agreement, subject to the terms of the Intercreditor Agreement. Without limiting the foregoing, subject to the terms of the DIP Financing Agreement, in the exercise of the DIP Agent's rights and remedies upon the Commitment Termination Date, the DIP Agent may by written notice to the Debtors require the Debtors to file a motion seeking to retain one or more agents to sell, lease, or otherwise dispose of the Collateral on terms acceptable to the DIP Agent (the cost of which shall be funded by the DIP Facility or use of Cash Collateral in accordance with the Budget). The Debtors shall file such motion within ten (10) days of the DIP Agent's request and shall diligently prosecute such motion. If the Debtors fail to so file the motion, the DIP Agent may, file and prosecute such a motion in the name of the Debtors. Upon indefeasible payment in full in cash of the Pre-Petition Debt and the DIP Obligations or as otherwise expressly permitted by the terms of the Intercreditor Agreement, the Second Lien Lender shall have all of the rights and remedies set forth in this Section 18(b).

(c)    Subject to the rights, if any, of the holders of any Permitted Prior Liens, all proceeds realized from any of the foregoing shall be turned over (i) first, to the Pre-Petition Agent for application to the Pre-Petition Debt pursuant to the Pre-Petition Financing Agreement, (ii) second, to the DIP Agent for application to the Carve-Out and the DIP Obligations pursuant to the DIP Financing Agreements and (iii) third, the Second Lien Lender for application to the Pre-Petition Second Lien Debt pursuant to the Second Lien Note, in each case, in accordance with the terms of this Interim Order and the Intercreditor Agreement.

(d)    Modification of Automatic Stay. The automatic stay imposed under Bankruptcy Code section 362(a) is hereby modified pursuant to the terms of the DIP Financing

Agreement as necessary to (1) permit the Debtors to grant the Pre-Petition Replacement Liens, the DIP Liens and the Pre-Petition Second Lien Replacement Liens and to incur all liabilities and obligations to the Pre-Petition Secured Parties, the DIP Secured Parties and the Pre-Petition Second Lien Secured Parties under the DIP Financing Agreements, the DIP Facility, the Second Lien Note and this Interim Order, as applicable, and (2) authorize the DIP Secured Parties, the Pre-Petition Secured Parties and the Pre-Petition Second Lien Secured Parties to retain and apply payments hereunder.

(e)  Subject to the Intercreditor Agreement, nothing included herein shall prejudice, impair, or otherwise affect Pre-Petition Secured Parties', the Pre-Petition Second Lien Secured Parties', any holder of a Permitted Prior Lien or DIP Secured Parties' rights to seek any other or supplemental relief in respect of the Debtors or the DIP Secured Parties' rights, as provided in the DIP Financing Agreement, to suspend or terminate the making of loans under the DIP Financing Agreement.

19.  **Proofs of Claim.** The Pre-Petition Secured Parties, the DIP Secured Parties and the Pre-Petition Second Lien Secured Parties will not be required to file proofs of claim in these Cases or Successor Cases. This Interim Order shall constitute a proof of claim on behalf of the Pre-Petition Secured Parties, the DIP Secured Parties and the Pre-Petition Second Lien Secured Parties in these Cases. The Pre-Petition Secured Parties and the Pre-Petition Second Lien Secured Parties are hereby authorized and entitled, in their sole discretion, but not required, to file (and amend and/or supplement, as they see fit) aggregate proofs of claim in these Cases or any Successor Cases. Any proof of claim so filed shall be deemed to be in addition and not in lieu of any other proof of claim that may be filed by any of the Pre-Petition Secured Parties or any of the Pre-Petition Second Lien Secured Parties.

20.     **Intercreditor Agreement.**   Pre-Petition Secured Parties, DIP Agent, DIP Lenders, Debtors, the Second Lien Lender and the Second Lien Lender shall remain bound by the terms and conditions set forth in the Intercreditor Agreement and the Intercreditor Agreement shall apply and govern respective rights, obligations and priorities of each of DIP Agent, DIP Lenders, the Debtors, the Second Lien Lender and the Second Lien Lender in these Cases. All loans made by the DIP Lenders which constitute part of the DIP Facility and all other Obligations arising thereunder shall be included in the definition of First Lien Obligations (as such term is defined in the Intercreditor Agreement).

21.     **Other Rights and Obligations**.

(a)     **Good Faith Under Section 364(e) of the Bankruptcy Code.   No Modification or Stay of this Interim Order**.   Based on the findings set forth in this Interim Order and in accordance with section 364(e) of the Bankruptcy Code, which is applicable to the DIP Facility (including, without limitation, the Partial Roll-Up) contemplated by this Interim Order, in the event any or all of the provisions of this Interim Order are hereafter modified, amended or vacated by a subsequent order of this or any other Court, the DIP Secured Parties are entitled to the protections provided in section 364(e) of the Bankruptcy Code and no such modification, amendment or vacation shall affect the validity and enforceability of any advances made hereunder or Lien or priority authorized or created hereby.

(b)     **Expenses**.   As provided in the Pre-Petition Financing Agreements and DIP Financing Agreements all costs and expenses of the DIP Secured Parties and the Pre-Petition Secured Parties in connection with the DIP Financing Agreements and Pre-Petition Financing Agreements, as applicable, whether incurred prior to or after the commencement of these Cases, including, without limitation, reasonable, documented legal, accounting, collateral

44

examination, monitoring and appraisal fees, financial advisory fees, fees and expenses of other consultants, indemnification and reimbursement of fees and expenses, and other out of pocket expenses will be paid by the Debtors, whether or not the transactions contemplated hereby are consummated; provided, however, that such costs and expenses shall be paid only after each relevant professional has provided copies of its fee and expense statements to the U.S. Trustee and counsel to any committee appointed pursuant to section 1102 of the Bankruptcy Code reasonably contemporaneously with the delivery of such fee and expense statements to the Debtors. Such statements shall contain reasonable detail as to the number of hours worked and applicable hourly rates, but may be redacted to the extent necessary to delete any information subject to attorney-client privilege, any information constituting attorney work product or any other confidential information and the provision of such invoices shall not constitute any waiver of the attorney-client privilege or any benefits of the attorney work product doctrine. The U.S. Trustee, the any committee appointed pursuant to section 1102 of the Bankruptcy Code or any other party in interest may object to the reasonableness of the fees, costs and expenses included in any professional fee invoice submitted hereunder, provided that, any such objection shall be forever waived and barred unless (i) it is filed with this Court and served on counsel to the parties seeking reimbursement no later than 10 days after the objecting parties receiving such applicable professional fee invoice, and (ii) it describes with particularity the items and categories of fees, costs and expenses that are subject to the objection and it provides for a specific basis for the objection to each such item of category of fees, costs and expenses; provided, however, further that the Debtors shall promptly pay all amounts that are not subject of any objection. Any hearing on an objection to any payment of any fees, costs and expenses of such professionals shall be limited to the reasonableness of the particular items or categories of

45

fees, costs, and expenses which are the subject to such objection. Except as provided in this subjection (b), the Debtors shall not make any payment in respect to attorneys' or other professional fees incurred by any Pre-Petition Secured Parties. Under no circumstances shall professionals for the DIP Secured Parties or Pre-Petition Secured Parties be required to comply with the U.S. Trustee fee guidelines.

(c)     **Binding Effect.** The provisions of this Interim Order shall be binding upon and inure to the benefit of the DIP Secured Parties, the Pre-Petition Secured Parties, the Pre-Petition Second Lien Secured Parties and the Debtors and their respective successors and assigns (including any trustee or other fiduciary hereinafter appointed as a legal representative of the Debtors or with respect to the property of the estate of the Debtors) whether in these Cases, in any Successor Cases, or upon dismissal of any such chapter 11 or chapter 7 Cases.

(d)     **No Waiver.** The failure of the Pre-Petition Secured Parties, the DIP Secured Parties and the Pre-Petition Second Lien Secured Parties to seek relief or otherwise exercise their rights and remedies under the DIP Financing Agreements, the DIP Facility, the Pre-Petition Financing Agreements, the Pre-Petition Second Lien Financing Agreements or this Interim Order, as applicable, shall not constitute a waiver of any of the Pre-Petition Secured Parties', the DIP Secured Parties' and the Pre-Petition Second Lien Secured Parties' rights hereunder, thereunder, or otherwise, subject to the terms of the Intercreditor Agreement. Notwithstanding anything herein, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair the Pre-Petition Secured Parties, the DIP Secured Parties or the Pre-Petition Second Lien Secured Parties under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the rights of the Pre-Petition Secured Parties,  the DIP Secured Parties, and, subject to the terms of the

46

Intercreditor Agreement, also the Pre-Petition Second Lien Secured Parties to (i) request conversion of these Cases to cases under chapter 7, dismissal of these Cases, or the appointment of a trustee in these Cases (but only in the event the Commitment Termination Date has occurred and is continuing), or (ii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a Plan or (iii) any of the rights, claims or privileges (whether legal, equitable or otherwise) of the DIP Secured Parties, the Pre-Petition Secured Parties, or, subject to the terms of the Intercreditor Agreement, of the Pre-Petition Second Lien Secured Parties.

(e)     **No Third Party Rights**.  Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

(f)     **No Marshaling**.   None of the DIP Secured Parties, the Pre-Petition Secured Parties nor the Pre-Petition Second Lien Secured Parties shall be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Collateral,

(g)     **Section 552(b)**.  The DIP Secured Parties, the Pre-Petition Secured Parties and the Pre-Petition Second Lien Secured Parties shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the DIP Secured Parties, the Pre-Petition Secured Parties or the Pre-Petition Secured Second Lien Parties with respect to proceeds, product, offspring or profits of any of the Pre-Petition Collateral, the Collateral or the Pre-Petition Second Lien Collateral.

(h)     **Amendment**.   The Debtors and the DIP Agent may amend, modify, supplement or waive any provision of the DIP Financing Agreements, provided that (x) such amendment, modification, supplement or waiver, in the judgment of the Debtors and the DIP

47

Agent, is either nonprejudicial to the rights of third parties or is not material (other than with respect to the Second Lien Lender and Second Lien Lenders, which parties' sole rights regarding any amendments, supplements, modifications or waivers shall be as set forth in the Intercreditor Agreement), and (y) the Second Lien Lender consents to the terms of such amendment, modification, supplement or waiver, but only if and to the extent required by the terms of the Intercreditor Agreement. Except as otherwise provided herein, no waiver, modification, or amendment of any of the provisions hereof shall be effective unless (a) set forth in writing, signed by or on behalf of all the Debtors, the DIP Agent (after having obtained the approval of the DIP Secured Parties as provided in the DIP Financing Agreements), and to the extent required by the Intercreditor Agreement, the Second Lien Lender (after having obtained the approval of the Second Lien Secured Parties as provided in the Pre-Petition Second Lien Financing Agreements), and (b) approved by this Court. For the avoidance of doubt, nothing contained in this subsection (h) shall be deemed to limit, restrict, or constitute a waiver of any of the respective rights and remedies of the DIP Agent or the Second Lien Lender under the Intercreditor Agreement.

    (i)  **Survival of Interim Order.** The provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order which may be entered (i) confirming any Plan in these Cases, (ii) converting these Cases to cases under chapter 7 of the Bankruptcy Code, or (iii) dismissing these Cases, (iv) withdrawing of the reference of these Cases from this Court, or (v) providing for abstention from handling or retaining of jurisdiction of these Cases in this Court, and the terms and provisions of this Interim Order as well as the DIP Protections granted pursuant to this Interim Order and the DIP Financing Agreements, shall continue in full force and effect notwithstanding the entry of such order, and such DIP

Protections shall maintain their priority as provided by this Interim Order until all the obligations of the Debtors to the DIP Secured Parties pursuant to the DIP Financing Agreements, and all obligations of the Debtors to the Pre-Petition Secured Parties under the Pre-Petition Financing Agreements are indefeasibly paid in full and discharged (such payment being without prejudice to any terms or provisions contained in the DIP Facility which survive such discharge by their terms). The DIP Obligations shall not be discharged by the entry of an order confirming a Plan, the Debtors having waived such discharge pursuant to section 1141(d)(4) of the Bankruptcy Code. The Debtors shall not propose or support any Plan that is not conditioned upon the payment in full in cash of all of the DIP Obligations and the Pre-Petition Debt, on or prior to the earlier to occur of (i) the effective date of such Plan and (ii) the Commitment Termination Date.

(j)    **Inconsistency**. In the event of any inconsistency between the terms and conditions of the DIP Financing Agreements and of this Interim Order, the provisions of this Interim Order shall govern and control.

(k)    **Enforceability**. This Interim Order shall constitute findings of fact and conclusions of law pursuant to the Bankruptcy Rule 7052 and shall take effect and be fully enforceable *nun pro tunc* to the Petition Date immediately upon execution hereof.

(l)    **Objections Overruled**. All objections to the DIP Motion to the extent not withdrawn or resolved, are hereby overruled.

(m)    **No Waivers or Modification of Interim Order**. The Debtors irrevocably waive any right to seek any modification or extension of this Interim Order without the prior written consent of the DIP Agent, the Pre-Petition Agent, and, to the extent required under the Intercreditor Agreement, also the Second Lien Lender, and no such consent shall be

implied by any other action, inaction or acquiescence of the DIP Agent, the Pre-Petition Agent or the Second Lien Lender.

        (n)     **Waiver of the Fourteen (14) Day Stay Under Bankruptcy Rule 6004(h)**. The fourteen (14) day stay provisions of Bankruptcy Rule 6004(h) are waived and shall not apply to this Interim Order.

        (o)     **Preservation of Rights Granted Under the Order**. No claim or lien having a priority senior to or *pari passu* with those granted by this Interim Order to the DIP Agent shall be granted or allowed while any portion of the DIP Obligations remain outstanding, and the DIP Liens shall not be subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estate under section 551 of the Bankruptcy Code or, except as set forth in this Interim Order, subordinated to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise.

        (1)     Unless all DIP Obligations shall have been indefeasibly paid in full in cash in accordance with the terms of the DIP Financing Agreement (or, as appropriate, cash secured to the reasonable satisfaction of the DIP Agent), in the case of clause (i) below, the Debtors shall not seek, and in the case of clauses (i) and (ii) below, it shall constitute an Event of Default under the DIP Financing Agreement if the Debtors seek, or if there is entered, (i) any modification of this Interim Order without the prior written consent of the DIP Agent, as applicable, and no such consent shall be implied by any other action, inaction or acquiescence by the DIP Agent, or (ii) an order converting or dismissing any of this Case.

        (2)     If any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated or stayed, such reversal, stay, modification or vacatur shall, to the extent provided in section 364(e) of the Bankruptcy Code, not affect (i) the validity, priority or

enforceability of any DIP Obligations incurred prior to the effective date of such reversal, stay, modification or vacatur or (ii) the validity, priority or enforceability of the DIP Liens. Notwithstanding any such reversal, stay, modification or vacatur, any DIP Obligations incurred by the Debtor to the DIP Agent and the DIP Lenders prior to the effective date of such reversal, stay, modification or vacatur shall, to the extent provided in section 364(e) of the Bankruptcy Code, be governed in all respects by the original provisions of this Interim Order, and the DIP Agent and the DIP Lenders shall be entitled to all of the rights, remedies, privileges and benefits granted in section 364(e) of the Bankruptcy Code, this Interim Order and the DIP Financing Agreements (with respect to all DIP Obligations).

(3)     Except as expressly provided in this Interim Order or in the DIP Financing Agreements, the DIP Liens, the Superpriority Claims and all other rights and remedies of the DIP Agent and the DIP Lenders granted by this Interim Order and the DIP Financing Agreements shall survive, and shall not be modified, impaired or discharged by (i) the entry of an order converting any of this Case to a case under chapter 7 of the Bankruptcy Code, dismissing this Case, or (ii) the entry of an order confirming a plan of reorganization in this Case and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors have waived any discharge as to any remaining DIP Obligations. The terms and provisions of this Interim Order and the DIP Financing Agreements shall continue in this Case or in any superseding chapter 7 case or other case under the Bankruptcy Code and/or following dismissal of this or any subsequent case, and the DIP Liens, the DIP Obligations, and the Superpriority Claims, and all other rights and remedies of the DIP Agent and the DIP Lenders granted by this Interim Order and the DIP Financing Agreements shall continue in full force and effect until all DIP Obligations are indefeasibly paid in full in cash.

(p)    **Payments Free and Clear**. Any and all payments or proceeds remitted to the DIP Agent on behalf of the DIP Lenders pursuant to the provisions of this Interim Order or any subsequent order of this Court shall be received free and clear of any claim, charge, assessment or other liability.

(q)    **Information.** The Debtors shall promptly provide to the DIP Agent, the Second Lien Lender and counsel to the any statutory committee of unsecured creditors written financial information or periodic reporting as required by the DIP Financing Agreement.

(r)    **Limitation of Liability**. In determining to make any loan under the DIP Agreement, or in exercising any rights or remedies as and when permitted pursuant to this Interim Order or the DIP Financing Agreements, the DIP Agent and the DIP Lenders shall, subject to and effective upon entry of the Final Order, not be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 et seq. as amended, or any similar federal or state statute). Furthermore, nothing in this Interim Order or in the DIP Financing Agreements shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Agent or the DIP Lenders of any liability for any claims arising from the pre-petition or post-petition activities of the Debtors.

22.    **Final Hearing**.

(a)    The Final Hearing to consider entry of the Final Order and final approval of the DIP Facility is scheduled for _____, 2013  at the United States Bankruptcy Court for the District of Delaware.  If no objections to the relief sought in the Final Hearing are filed and

served in accordance with this Interim Order, no Final Hearing may be held, and a separate Final Order may be presented by the Debtors and entered by this Court.

(b)      On or before _____, 2013, the Debtors shall serve, by United States mail, first-class postage prepaid, notice of the entry of this Interim Order and of the Final Hearing (the "**Final Hearing Notice**"), together with copies of this Interim Order, the proposed Final Order and the DIP Motion, on: (i) the parties having been given notice of the Interim Hearing; and (ii) any party that has filed prior to such date a request for notices with this Court. The Final Hearing Notice shall state that any party in interest objecting to the entry of the proposed Final Order shall file written objections with the Clerk of this Court no later than _____, 2013 which objections shall be served so that the same are received on or before such date by: (i) the parties having been given notice of the Interim Hearing; and (ii) any party that has filed prior to such date a request for notices with this Court, and shall be filed with the Clerk of this Court, in each case to allow actual receipt of the foregoing no later than _____, 2013, at 4:00 p.m. prevailing Eastern time.  Notwithstanding the terms of this Interim Order, this Court is not precluded from entering a Final Order containing provisions that are inconsistent with, or contrary to any of the terms in this Interim Order, subject to the protections under section 364(e) and the rights of the DIP Secured Parties to terminate the DIP Financing Agreement if such Final Order is not acceptable to them.  In the event this Court modifies any of the provisions of this Interim Order or the DIP Financing Agreements following such further hearing, such modifications shall not affect the rights and priorities of DIP Secured Parties pursuant to this Interim Order with respect to the Collateral, and any portion of the DIP Obligations which arises or is incurred, advanced or paid prior to such modifications (or

53

otherwise arising prior to such modifications), and this Interim Order shall remain in full force and effect except as specifically amended or modified at such Final Hearing.

(c)     This Court has and will retain jurisdiction to enforce this Interim Order according to its terms.

SO ORDERED by this Court this _____ day of _____, 2013.

_____

54

**Exhibit 1 to Exhibit B**

**DIP Budget**

## Life Uniform Holding Company
### Summary Cash Forecast ($000s)

| Week Ending | 1 Fcst 05/18/13 | 2 Fcst 05/25/13 | Pre-Petition Fcst 06/01/13 | Post-Petition Fcst 06/01/13 | 4 Fcst 06/08/13 | 5 Fcst 06/15/13 | 6 Fcst 06/22/13 | 7 Fcst 06/29/13 | 8 Fcst 07/06/13 | 9 Fcst 07/13/13 | 10 Fcst 07/20/13 | 11 Fcst 07/27/13 | 12 Fcst 08/03/13 | Total Wks 3-12 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **RECEIPTS** | | | | | | | | | | | | | | |
| Trade Customers | 1,686 | 1,518 | 700 | 683 | 1,628 | 1,730 | 1,736 | 1,644 | 1,489 | 1,517 | 1,906 | 1,967 | 2,066 | 16,644 |
| Assumed Closed Stores | (23) | (120) | (36) | (34) | (322) | (199) | (206) | (389) | (469) | (209) | (219) | (205) | (640) | (3,905) |
| Assumed 10% reduction remaining stores | (82) | (606) | (67) | (65) | (160) | (153) | (154) | (145) | (130) | (181) | (169) | (170) | (183) | (1,464) |
| Other Cash Receipts | 117 | 108 | | 153 | 112 | 68 | 68 | 35 | 49 | 116 | 120 | 123 | 174 | 1,017 |
| **Total Cash Receipts** ᵃ | **1,802** | **1,627** | **599** | **737** | **1,466** | **1,445** | **1,451** | **1,344** | **1,219** | **1,563** | **1,639** | **1,690** | **1,819** | **14,372** |
| | | | | | | | | | | | | | | |
| **OPERATING DISBURSEMENTS** | | | | | | | | | | | | | | |
| Merchandise | (1,029) | (120) | (29) | | (29) | (29) | (29) | (29) | (33) | (29) | (29) | (29) | (34) | (288) |
| Freight | (23) | (606) | (92) | | (68) | (62) | (628) | (67) | (633) | (57) | (763) | (67) | (640) | (3,798) |
| Compensation & Benefits | (82) | | | | | | 386 | | 129 | | 128 | | 123 | 591 |
| Store Closing Reduction | | | | (100) | (76) | (76) | (76) | (66) | (66) | (66) | (66) | (66) | (89) | (644) |
| Advertising | (82) | (8) | | (7) | (330) | (630) | (30) | (70) | (30) | (1,030) | (30) | (30) | (1,027) | (3,307) |
| Occupancy | (630) | (18) | (8) | | 60 | 60 | | | 192 | | | | 1,077 | 3,359 |
| Store Closing Reduction | | | (15) | | (15) | (20) | (167) | (15) | (113) | (112) | (20) | (20) | (20) | (157) |
| BankCredit Card Charges | (15) | (160) | | | (15) | (250) | 10 | | (15) | (189) | (126) | (15) | (15) | (807) |
| Sales Tax & Licenses | (364) | | | | | | | | | | 66 | | | 76 |
| Store Closing Reduction | (133) | (133) | (177) | | (123) | (123) | (123) | (124) | (124) | (124) | (124) | (124) | (139) | (1,127) |
| Other - operational | 606 | | | | | | | | | | | | | |
| Vendor Stretch - Held / (Released) | | | | | | | | | | | | | | |
| **Total Operating Disbursements** ᵇ | **(1,752)** | **(1,046)** | **(321)** | **(107)** | **(1,167)** | **(1,129)** | **(1,077)** | **(280)** | **(884)** | **(1,414)** | **(993)** | **(340)** | **(812)** | **(9,203)** |
| | | | | | | | | | | | | | | |
| **Total Operating Cash Flow** (c = a+b) | **50** | **582** | **278** | **630** | **299** | **316** | **374** | **1,064** | **335** | **149** | **645** | **1,350** | **1,007** | **6,170** |
| | | | | | | | | | | | | | | |
| **NON-OPERATING** | | | | | | | | | | | | | | |
| Extraordinary Disbursements | (23) | (19) | (21) | | (18) | (18) | (18) | (14) | (14) | (14) | (14) | (14) | (17) | (143) |
| Capital Expenditures | | | | | | | | | | | | | | - |
| Tax Payments - Income | | | | | | | | | | | | | | - |
| Management Fees | | | | | | | | | | | | | | - |
| Other Non-Operating Disbursements | (77) | (95) | (282) | | (9) | (9) | (9) | (40) | (9) | (8) | (8) | (8) | (37) | (138) |
| **FINANCING** | | | | | | | | | | | | | | |
| Change in Float | 336 | (988) | (366) | | | | | | | | | | | - |
| Principal Payments | | | | | | | | | | | | | | - |
| Interest Expenses | | | | | | | | | | | | | | - |
| Revolver Payments | (287) | 569 | 987 | 230 | 1,277 | 535 | 503 | (142) | 807 | 813 | 245 | (661) | (488) | 2,919 |
| **Disbursements - Non-Operations** ᵈ | **(51)** | **(543)** | **318** | **230** | **1,249** | **507** | **475** | **(186)** | **785** | **591** | **223** | **(683)** | **(542)** | **2,638** |

## Life Uniform Holding Company
### Summary Cash Forecast ($000s)

| Week Ending | 1 Fcst 05/18/13 | 2 Fcst 05/25/13 | Pre-Petition Fcst 06/01/13 | Post-Petition Fcst 06/01/13 | 4 Fcst 06/08/13 | 5 Fcst 06/15/13 | 6 Fcst 06/22/13 | 7 Fcst 06/29/13 | 8 Fcst 07/06/13 | 9 Fcst 07/13/13 | 10 Fcst 07/20/13 | 11 Fcst 07/27/13 | 12 Fcst 08/03/13 | Total Wks 3-12 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Bankruptcy Related Costs** | | | | | | | | | | | | | | |
| Inventory COD/CIA | | | | | (1,266) | (950) | (950) | (1,036) | (1,036) | (850) | (827) | (800) | (500) | (8,216) |
| Assumed reduction due to transfers | | | | | 70 | 70 | 70 | 70 | 70 | 70 | 70 | 70 | 70 | 630 |
| Assumed reduction due to sales reduction | | | | | 144 | 187 | 187 | 177 | 158 | 196 | 206 | 212 | 223 | 1,690 |
| **Debtor Professional Fees** | | | | | | | | | | | | | | |
|   Counsel | | | | | | | | | | | | | | - |
|   Financial Advisor | | | | | | | | | | | | | | - |
| **UCC Professional Fees** | | | | | | | | | | | | | | |
|   Counsel | | | | | | | | | | | | | | - |
|   Financial Advisor | | | | | | | | | | | (12) | | | (12) |
| **Secured Lender Fees** | | | | | | | | | | | | | | |
|   Counsel | | | (125) | | | | | | | | (4) | | | (4) |
|   Financial Advisor | | | (100) | | | | | | | | | | | - |
| Deferred Warehouseman payments | | | (120) | | | | | | | | (120) | | | (120) |
| Debtors' Professional Fees Funded to Escrow - Counsel | | (135) | | (120) | (50) | (50) | (40) | (40) | (40) | (40) | (40) | (50) | (40) | (40) |
| Debtors' Professional Fees Funded to Escrow - FA | | | | (40) | (50) | (50) | (40) | (40) | (40) | (40) | (40) | (50) | (40) | (120) |
| Funding Annex and Fed Ex Pre-filing | | | (250) | (40) | | | | | | | | | | (430) |
| Claims Agent/Notice | | | | | (75) | | | | | (75) | | | | (430) |
| DIP Fees | | | | | (100) | | | | | | | | | (150) |
| Dip Adequate Protection/Interest Payments | | | | | (119) | | | | (132) | | | | (179) | (100) |
| Deposits Required (Utilities) | | | | | | | | | (100) | | | | | (427) |
| Deposits Required (Credit Card and Fed | | | | (600) | | | | | | | | | | (100) |
| Severance/Stay Incentive Closing Stores | | | | | | | (76) | | | | | | | (600) |
| Store Closing Costs | | | | | (76) | (30) | | | | | | | | (151) |
| **Total Bankruptcy Costs** | (135) | (595) | (660) | (1,548) | (824) | (648) | (859) | (1,120) | (739) | (868) | (666) | (466) | (228) | (8,807) |
| Net Change in Cash (e = c+d) | (0) | (96) | 0 | (660) | (1,548) | (824) | (648) | (859) | (1,120) | (739) | (868) | (666) | (466) | (8,807) |
| **Cash Balance** | | | | | | | | | | | | | | |
| Beginning Net Debt Balance | (9,235) | (987) | (10,222) | (10,452) | (11,729) | (12,264) | (12,767) | (12,625) | (13,432) | (14,045) | (14,290) | (13,829) | 481 | (10,222) |
| Net (Borrowings)/Paybacks | (553) | (987) | (230) | (1,277) | (535) | (503) | 142 | (807) | (913) | (245) | (245) | 651 | 488 | (2,919) |
| Ending Net Debt Balance (h = e+f+g) | (9,235) | (10,222) | (10,452) | (11,729) | (12,264) | (12,767) | (12,625) | (13,432) | (14,045) | (14,290) | (13,829) | (13,145) | (13,141) | (13,141) |
| Total Available Borrowing Base | 9,088 | 9,985 | 9,985 | 10,069 | 10,134 | 10,218 | 10,170 | 10,338 | 10,525 | 10,448 | 10,324 | 10,123 | 10,123 | 10,123 |
| Ending Liquidity/(Over advance) (Bank Avail. plu | 1,258 | 733 | (237) | (467) | (1,680) | (2,130) | (2,548) | (2,456) | (3,095) | (3,520) | (3,842) | (3,308) | (3,018) | (3,018) |
| Less Check Float | (1,354) | (366) | | | | | | | | | | | | |
| End Liquidity/(Over advance) | (97) | 366 | (237) | (467) | (1,680) | (2,130) | (2,548) | (2,456) | (3,095) | (3,520) | (3,842) | (3,308) | (3,018) | (3,018) |