# Exhibit C

## Hadfield Declaration

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| LIFE UNIFORM HOLDING CORP., *et al.*,[1] | ) Case No. 13-11391 (   ) |
| | ) |
| Debtors. | ) Joint Administration Requested |

**DECLARATION OF JAMES HADFIELD IN SUPPORT OF
THE DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS
PURSUANT TO 11 U.S.C. SECTIONS 105, 361, 362, 363 AND 364
AND RULES 2002, 4001 AND 9014 OF THE FEDERAL RULES OF
BANKRUPTCY PROCEDURE (1) AUTHORIZING INCURRENCE BY THE
DEBTORS OF POST PETITION SECURED INDEBTEDNESS WITH
PRIORITY OVER ALL SECURED INDEBTEDNESS AND WITH
ADMINISTRATIVE SUPERPRIORITY, (2) GRANTING LIENS,
(3) AUTHORIZING USE OF CASH COLLATERAL BY THE DEBTORS
PURSUANT TO 11 U.S.C. SECTION 363 AND PROVIDING FOR
ADEQUATE PROTECTION, (4) MODIFYING THE AUTOMATIC STAY AND
(5) SCHEDULING A FINAL HEARING**

Pursuant to 28 U.S.C. § 1746, I, James Hadfield, hereby declare as follows under the penalty of perjury:

1. I submit this declaration (this "***Declaration***")[2] in support of the *Debtors' Motion For Entry Of Interim And Final Orders Pursuant To 11 U.S.C. Sections 105, 361, 362, 363 And 364 And Rules 2002, 4001 And 9014 Of The Federal Rules Of Bankruptcy Procedure (1) Authorizing Incurrence By The Debtors Of Post Petition Secured*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer-identification number, are: Life Uniform Holding Corp. (1018), Healthcare Uniform Company, Inc. (0640), and Uniform City National, Inc. (0392).

[2] Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the DIP Motion.

*Indebtedness With Priority Over All Secured Indebtedness And With Administrative Superpriority, (2) Granting Liens, (3) Authorizing Use Of Cash Collateral By The Debtors Pursuant To 11 U.S.C. Section 363 And Providing For Adequate Protection, (4) Modifying The Automatic Stay And (5) Scheduling A Final Hearing* (the "**DIP Motion**"), filed by the above-captioned debtors and debtors-in-possession (the "**Debtors**") on May 29, 2013 (the "**Petition Date**"). Except as otherwise noted herein, all facts set forth in this declaration are based on my personal knowledge, upon information supplied to me by other employees at Morgan Joseph TriArtisan LLC (collectively, "**Morgan Joseph**"), upon information learned from my review of relevant documents or upon my opinion based on my experience and knowledge of the Debtors' operations and financial condition. If I were called upon to testify, I could and would testify competently to the facts set forth herein.

2.   Since January 2013, the Debtors and their advisors have been engaged in negotiations with the Debtors' prepetition senior secured lender, Capitalsource Finance LLC (the "**Secured Lender**") regarding the Debtors' business operations and liquidity needs. An integral part of the Debtors' efforts to close a sale of substantially all of its assets through the chapter 11 cases is a $15 million ($4 to $5 million in "new money') debtor in possession financing facility (the "**DIP Financing**") to be provided by the Secured Lender, which DIP Financing is the product of arm's length negotiations. I believe the DIP Financing is the best financing available under the circumstances, providing the Debtors with access to liquidity that will help effectuate a swift restructuring.

**Professional Background**

3. I am a Director of Morgan Joseph. I have over ten (10) years of restructuring and financial advisory experience. During my career, I have been involved in numerous out-of-court and chapter 11 restructurings involving public and private companies. I have been involved in all aspects of restructurings and have acted, among other roles, as investment banker and financial advisor for companies, debtors, creditors and equity committees. My experience includes a combination of sell-side, capital placement, restructuring, and creditor advisory roles. Some of my notable in-court engagements include *In re GPX Int'l Tire Corp*, Case No. 09-20170 (JNF) (Bankr. D. Mass.), *In re Consol Resorts, Inc.*, Case No. 09-22035 (LBR) (Bankr. D. Nev.), *In re Dixie Pellets, LLC*, Case No. 09-05411 (TOM) (Bankr. N.D. Ala.), *In re Emivest Aerospace Corp.*, Case No. 10-13391 (BLS) (Bankr. D. Del.), and *In re Dairy Prod. Sys – Ga. LLC*, Case No. 10-11752 (JDW) (Bankr. M.D. Ga.). In February 2013, the Debtors engaged Morgan Joseph to act as their investment bankers. Since then, I have worked closely with Debtors' management and advisors and have become well-acquainted with the Debtors' capital structure and business operations.

**Development of the DIP Budget and the Debtors' Liquidity Needs**

4. The Debtors have faced a number of financial challenges that are straining their liquidity, all of which have contributed to the filing of these chapter 11 cases. These challenges include, among others, the Debtors' substantial debt burden and a significant reduction in the Debtors' sales, which together have directly affected the Debtors' ability to satisfy their obligations on their prepetition secured debt.

5. The Debtors' management team and its advisors analyzed the Debtors' cash needs to determine whether additional liquidity was necessary to support a process

to sell substantially all of their assets. The Debtors and their advisors created a nine-week cash flow forecast to coincide with the anticipated sale process.[3] In taking into account cash receipts and disbursements, the forecast considers the impact of the chapter 11 filing on operations, including fees and interest expense associated with debtor-in-possession financing, professional fees and required vendor payments. Also considered were the savings derived from the filings of these cases, including potential lease rejections and the Debtors' ability to maintain customary payment terms with key suppliers.

6.  The Debtors' management team and advisors contemplated the use of cash on hand without additional financing to fund operations during these chapter 11 cases, and concluded that cash on hand alone would be insufficient to fund operations and the Debtors' business plan throughout the sale process contemplated in these chapter 11 cases. Thus, to provide the Debtors with appropriate and necessary financing, obtaining debtor-in-possession financing became critical.

### The Debtors' Efforts to Obtain Postpetition Financing

7.  The Debtors through Morgan Joseph sought to procure an approximately $4 to $5 million debtor in possession loan to finance the Debtors through these chapter 11 cases. And because of increased customer and vendor pressures, Morgan Joseph sought to ensure that postpetition financing could be provided quickly and consensually.

8.  Morgan Joseph contacted a combination of parties in addition to the Secured Lender, including traditional banks as well as funds that specialize in debtor in

---

[3] A 9-week budget with respect to the DIP Financing is attached as **Exhibit 1** to **Exhibit B** to the DIP Motion filed contemporaneously herewith.

possession financing. In response to questions and to be candid from the outset, the Debtors made clear to all parties based on representations by the Secured Lender that it was unwilling to be primed consensually. As a result, the possibility of a contested priming fight, the compressed timeline in which the Debtors were seeking commitments, the level of Debtors' assets available as collateral, and the interest rate and terms required to better the Secured Lender's proposal none of the parties approached by Morgan Joseph expressed an interest in providing postpetition financing.

9. Thus, the Debtors only real source of postpetition financing was the Secured Lender. After substantial negotiations, the Secured Lender agreed to provide a postpetition facility on an expedited basis. I believe the terms of the DIP Financing are fair and reasonable. More specifically, the DIP Financing provides for a $15 million senior-secured revolver, with access to $4 to $5 million of additional funds than were available pre-petition. The DIP Financing requires that interest be paid monthly accruing at the "Prime Rate" as defined in the DIP Financing agreement, plus 500 basis points, which based on the current underlying Prime Rate today is 8.25 percent. The DIP Financing includes other terms that suggest the reasonableness and appropriateness of the DIP Financing, including:

- a moderate commitment fee;
- reasonable pricing consistent with the pre-petition loan; and
- an appropriate level of cushion with respect to financial covenants.

### Conclusion

10. In sum, I believe the proposed DIP Financing represents the best and most favorable financing option available to the Debtors under the circumstances. The proposed DIP Financing will provide the Debtors with the liquidity needed for the sale process contemplated in these chapter 11 cases and to continue running its business.

PHIL1 2828279v.3

Further, the DIP Financing does this on terms that are appropriate under the circumstances. For these reasons, I believe the proposed DIP Financing is in the best interests of the Debtors' estates and all stakeholders in these chapter 11 cases and should be approved on the terms and conditions described in the DIP Motion.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed on: May 29, 2013.

By: /s/ *James Hadfield*
James Hadfield Director
Morgan Joseph TriArtisan LLC

PHIL1 2828279v.3