**EXHIBIT H**

<u>**Domain Name Assignment**</u>

## DOMAIN NAME ASSIGNMENT

THIS DOMAIN NAME ASSIGNMENT (this "Assignment") dated as of [●], 2013, is made and entered into by and among **HEALTHCARE UNIFORM COMPANY, INC.** a Delaware corporation ("Healthcare Uniform"), **UNIFORM CITY NATIONAL, INC.**, a Delaware corporation ("Uniform City"; and together with Healthcare Uniform, collectively, the "Assignor"), and **SCRUBS & BEYOND, LLC**, a Delaware limited liability company (the "Assignee") (each a "Party", and collectively, the "Parties"). Unless otherwise defined herein, capitalized terms used in this Assignment shall have the meanings given to them in the Asset Purchase Agreement (as defined below).

### Background:

The Assignor and the Assignee are parties to that certain Asset Purchase Agreement, dated as of May 28, 2013 (the "Asset Purchase Agreement"), pursuant to which the Assignor has agreed to sell the Purchased Assets to the Assignee.

As a condition to the Closing, the Parties agreed to enter into this Assignment pursuant to which the Assignor will assign to the Assignee all of the Assignor's right, title and interest in, to and under all of the Assignor's domain name registrations identified on the attached Exhibit A (the "Domain Names"), which are presently registered with Network Solutions, LLC (the "Registrar").

**NOW, THEREFORE**, in consideration of the premises and mutual agreements set forth in the Asset Purchase Agreement, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby agree as follows:

1.      Assignment and Transfer.   The Assignor hereby, effective as of the Closing, assigns, sells, conveys and transfers to the Assignee, its legal representatives, successors and assigns, all of the Assignor's right, title and interest of every kind or nature owned, leased, licensed or otherwise held by the Assignor in and to the Domain Names, including any associated goodwill, based on or related to the Domain Names.

2.      Further Actions.   As of the Closing, the Assignor shall, without additional consideration, promptly: (i) complete any and all forms required by the Registrar to effect transfer of the Domain Names registrations to the Assignee, and (ii) file such form(s) with the Registrar immediately.   The Assignor further agrees to provide a copy of such filings and correspondence to the Assignee. The Assignor agrees to cooperate with the Assignee and the Registrar to facilitate the filing and processing of all forms and other formalities (including changing passwords, user names and IP addresses) necessary to complete the transfer of the registrations for the Domain Names. In the event the Assignee does not complete and file such forms for any reason whatsoever, the Assignor hereby irrevocably designates and appoints the Assignee and its duly authorized agents as the Assignor's agent and attorney-in-fact, to act for and in the Assignor's behalf to complete, execute and file any and all such documents and forms

- 1 -

and to do all other lawfully permitted acts to accomplish the complete and exclusive transfer of the Domain Names.

3.    <u>Governing Law</u>.  This Assignment shall be governed by, enforced under and construed in accordance with the laws of the State of Delaware, regardless of the laws that might otherwise govern under applicable principles of conflicts of laws of such State.

4.    <u>Amendment; Waiver</u>.  None of the provisions of this Assignment may be waived, changed or altered except in a signed writing by the Party against whom enforcement of the same is sought.

5.    <u>Conflict with Asset Purchase Agreement or Sale Order</u>.  In the event of a conflict between the terms and conditions of this Assignment and the terms and conditions of the Asset Purchase Agreement or the Sale Order (as defined in the Asset Purchase Agreement), the terms and conditions of the Asset Purchase Agreement or the Sale Order, as the case may be, shall govern, supersede and prevail.  Notwithstanding anything to the contrary, nothing herein is intended to, nor shall it, extend, amplify or otherwise alter the respective agreements, terms, conditions, limitations, representations, warranties, covenants and obligations contained in the Asset Purchase Agreement and the Sale Order or the survival thereof.

6.    <u>Counterparts</u>.  This Assignment may be executed in any number of counterparts with the same effect as if the signatures thereto were upon one instrument.

**[SIGNATURE PAGE FOLLOWS]**

IN WITNESS WHEREOF, the Parties have executed this Domain Name Assignment as of the date first written above.

ASSIGNOR:

**HEALTHCARE UNIFORM COMPANY, INC.**

By: _____
Name:_____
Title:_____

**UNIFORM CITY NATIONAL, INC.**

By: _____
Name:_____
Title:_____

ASSIGNEE:

**SCRUBS & BEYOND, LLC**

By: _____
Name:_____
Title:_____

[Signature Page to Domain Name Assignment]

## EXHIBIT A

### Domain Names

| Domain Name | Registrar | Registrant |
|---|---|---|
| beyondscrubs.com | Network Solutions, LLC | Healthcare Uniform Company, Inc. |
| beyondscrubs.net | Network Solutions, LLC | Healthcare Uniform Company, Inc. |
| email-lifeuniform.com | Network Solutions, LLC | Healthcare Uniform Company, Inc. |
| life-uniform.com | Network Solutions, LLC | Healthcare Uniform Company, Inc. |
| lifescrubs.com | Network Solutions, LLC | Healthcare Uniform Company, Inc. |
| lifeuniform.com | Network Solutions, LLC | Healthcare Uniform Company, Inc. |
| lifeuniformcustomerservice.com | Network Solutions, LLC | Healthcare Uniform Company, Inc. |
| lifeuniformoutlet.biz | Network Solutions, LLC | Healthcare Uniform Company, Inc. |
| lifeuniformoutlet.com | Network Solutions, LLC | Healthcare Uniform Company, Inc. |
| lifeuniformrewards.com | Network Solutions, LLC | Healthcare Uniform Company, Inc. |
| lifeuniforms.com | Network Solutions, LLC | Healthcare Uniform Company, Inc. |
| lifeuniformstores.com | Network Solutions, LLC | Healthcare Uniform Company, Inc. |
| scrubpants.biz | Network Solutions, LLC | Healthcare Uniform Company, Inc. |

| | | |
|---|---|---|
| scrubpants.com | Network Solutions, LLC | Healthcare Uniform Company, Inc. |
| sharethecarewithlife.com | Network Solutions, LLC | Healthcare Uniform Company, Inc. |
| uniformcityscrubs.com | Network Solutions, LLC | Healthcare Uniform Company, Inc. |
| uniformdepot.com | Network Solutions, LLC | Healthcare Uniform Company, Inc. |
| uniformplaceonline.com | Network Solutions, LLC | Healthcare Uniform Company, Inc. |
| uniformsforuonline.com | Network Solutions, LLC | Healthcare Uniform Company, Inc. |
| uniquelyuniforms.com | Network Solutions, LLC | Healthcare Uniform Company, Inc. |
| beyondscrubs.biz | Network Solutions, LLC | Healthcare Uniform Company, Inc. |
| uniformcity.com | Network Solutions, LLC | Uniform City National, Inc. |
| email-uniformcity.com | Network Solutions, LLC | Uniform City National, Inc. |
| lifeuniformmedical.com | Network Solutions, LLC | Uniform City National, Inc. |
| lifeuniformnursing.com | Network Solutions, LLC | Uniform City National, Inc. |
| lifeuniformscrubs.com | Network Solutions, LLC | Uniform City National, Inc. |
| linnuniforms.com | Network Solutions, LLC | Uniform City National, Inc. |
| scrubelements.biz | Network Solutions, LLC | Uniform City National, Inc. |

| scrubelements.com | Network Solutions, LLC | Uniform City National, Inc. |
|---|---|---|
| scrubelements.net | Network Solutions, LLC | Uniform City National, Inc. |
| scrubelements.org | Network Solutions, LLC | Uniform City National, Inc. |
| scrubelements.us.com | Network Solutions, LLC | Uniform City National, Inc. |
| sierrascrubs.com | Network Solutions, LLC | Uniform City National, Inc. |
| uniformcity.com | Network Solutions, LLC | Uniform City National, Inc. |
| uniformcity.net | Network Solutions, LLC | Uniform City National, Inc. |
| uniformcity.org | Network Solutions, LLC | Uniform City National, Inc. |
| uniformcitycatalog.com | Network Solutions, LLC | Uniform City National, Inc. |
| uniformcitychef.com | Network Solutions, LLC | Uniform City National, Inc. |
| uniformcitycustomerservice.com | Network Solutions, LLC | Uniform City National, Inc. |
| uniformcitymedical.com | Network Solutions, LLC | Uniform City National, Inc. |
| uniformcitynursing.com | Network Solutions, LLC | Uniform City National, Inc. |
| uniformcityonline.com | Network Solutions, LLC | Uniform City National, Inc. |
| uniformcityrewards.com | Network Solutions, LLC | Uniform City National, Inc. |
| uniformcitystethoscopes.com | Network Solutions, LLC | Uniform City National, |

| | | Inc. |
|---|---|---|
| hollyparkuniforms.com | Melbourne IT LTD D/B/A Internet Names Worldwide through YahooDomains | Uniform City National, Inc. |
| lynforduniformsinc.net | Melbourne IT LTD D/B/A Internet Names Worldwide through YahooDomains | Uniform City National, Inc. |
| northeastuniforms.com | Godday.com | Uniform City National, Inc. |

**Exhibit I**

## Assignment and Assumption of Leases and Related Agreements

DMEAST #16827137

## ASSIGNMENT AND ASSUMPTION OF LEASES AND RELATED CONTRACTS

THIS ASSIGNMENT AND ASSUMPTION OF LEASES AND RELATED CONTRACTS (this "Assignment"), dated as of [●], 2013, is entered into by and among **HEALTHCARE UNIFORM COMPANY, INC.**, a Delaware corporation ("Healthcare Uniform"), **UNIFORM CITY NATIONAL, INC.**, a Delaware corporation ("Uniform City"; together with Healthcare Uniform, collectively, "Assignors" and each individually, a "Assignor"), and **SCRUBS & BEYOND, LLC**, a Delaware limited liability company ("Assignee").

### Background:

Assignors are lessees to those certain leases set forth on Schedule 1 hereto (as the same may be amended, modified, extended or renewed from time to time, collectively, the **"Leases"**).

Assignors filed a voluntary petition commencing a Chapter 11 Bankruptcy case pursuant to Title 11 of the United States Code, 11 U.S.C. Section 101 *et seq.* on May [●], 2013 in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") (Case No. [●]) (the "Bankruptcy Case"), and the Bankruptcy Court issued a Sales Order.

Pursuant to that certain Asset Purchase Agreement dated as of May [●], 2013 by and among Assignors and Assignee (the "Asset Purchase Agreement") and the Sale Order (as defined in the Asset Purchase Agreement), Assignors hereby assign and convey all of their right, title and interest in the Real Property Leases (as defined in the Asset Purchase Agreement) listed on Schedule 1.1(a) hereto (collectively, the "Assigned Real Property Leases") and the Other Contracts (as defined in the Asset Purchase Agreement) listed on Schedule 1.1(b) hereto (collectively, the "Assigned Other Contracts") to Assignee. Unless otherwise defined herein, capitalized terms used in this Assignment shall have the meanings given to them in the Asset Purchase Agreement.

### Agreement:

**NOW, THEREFORE,** in consideration of the foregoing and the mutual covenants and agreements herein contained, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1.    Assignment and Assumption of Real Property Leases and Other Contracts. Effective as of the Closing, Assignors hereby transfer, assign and convey unto Assignee all of Assignor's right, title and interest in the Assigned Real Property Leases and the Assigned Other Contracts, to have and to hold the same unto Assignee, its successors and assigns. Assignee hereby accepts the foregoing assignment and agrees to be bound by all of the covenants, agreements and obligations of Assignors under the Assigned Real Property Leases and the Assigned Other Contracts arising from and after the Closing, but, such acceptance does not and shall not constitute Assignee's assumption of any of Assignors' representations, warranties or

covenants made prior to the date of this Assignment or other obligations or liabilities of Assignors accruing prior to the date of this Assignment.

2.    <u>Conflict with Asset Purchase Agreement or Sale Order</u>.  In the event of a conflict between the terms and conditions of this Assignment and the terms and conditions of the Asset Purchase Agreement or the Sale Order, the terms and conditions of the Asset Purchase Agreement or the Sale Order, as the case may be, shall govern, supersede and prevail. Notwithstanding anything to the contrary, nothing herein is intended to, nor shall it, extend, amplify or otherwise alter the respective agreements, terms, conditions, limitations, representations, warranties, covenants and obligations contained in the Asset Purchase Agreement and the Sale Order or the survival thereof.

3.    <u>Governing Law</u>.  This Assignment shall be governed by and construed, interpreted and determined in accordance with the internal laws of the State of Delaware (without regard to any conflict of laws provision that would require the application of the Law of any other jurisdiction).

4.    <u>Execution</u>.  This Assignment may be executed by facsimile or other electronic signature and in counterparts, each of which is deemed an original and all of which taken together constitute one and the same instrument.

5.    <u>Successors and Assigns</u>.  This Assignment is binding upon and inures to the benefit of Purchaser and Sellers and their respective successors and permitted assigns. Nothing in this Assignment, express or implied, is intended to confer on any person, other than Purchaser and Sellers and their respective successors and assigns, any rights, remedies, obligations or liabilities under or by reason of this instrument.

**[SIGNATURE PAGE FOLLOWS]**

**IN WITNESS WHEREOF**, the parties have caused this Assignment and Assumption of Leases and Related Contracts to be executed and delivered by their respective duly authorized officers as of the date first written above.

ASSIGNORS:

**HEALTHCARE UNIFORM COMPANY, INC.**

By: _____
Name:_____
Title:_____

**UNIFORM CITY NATIONAL, INC.**

By: _____
Name:_____
Title:_____

ASSIGNEE:

**SCRUBS & BEYOND, LLC**

By: _____
Name:_____
Title:_____

## SCHEDULE 1.1(A)

<u>Assigned Real Property Leases</u>

[*To be completed.*]

## SCHEDULE 1.1(B)

<u>Assigned Other Contracts</u>

[*To be completed.*]

**Exhibit J**

**Bill of Sale**

## BILL OF SALE

THIS BILL OF SALE (this "Bill of Sale"), dated as of [●], 2013 is made by **HEALTHCARE UNIFORM COMPANY, INC.**, a Delaware corporation ("Healthcare Uniform"), and **UNIFORM CITY NATIONAL, INC.**, a Delaware corporation ("Uniform City"; and together with Healthcare Uniform, collectively, "Sellers" and each individually, a "Seller"), in favor of **SCRUBS & BEYOND, LLC**, a Delaware limited liability company ("Purchaser"), and is being executed and delivered pursuant to (i) the Asset Purchase Agreement dated as of May 28, 2013, by and among Purchaser and Sellers (the "Asset Purchase Agreement"), and (ii) the Sale Order (as defined in the Asset Purchase Agreement). Unless otherwise defined herein, capitalized terms used in this Bill of Sale shall have the meanings given to them in the Asset Purchase Agreement.

In consideration of the representations, warranties, covenants and agreements contained in the Asset Purchase Agreement and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Sellers, intending to be legally bound, hereby agree as follows:

1.    Transfer and Assignment of the Purchased Assets.  Subject to the terms of the Asset Purchase Agreement and the Sale Order, Sellers hereby sell, transfer, assign, convey and deliver to Purchaser, free and clear of all Liens and Claims and interests of any kind or nature whatsoever (in each case, other than Permitted Liens), all right, title and interest in and to any and all of the assets, properties, rights and claims of any kind or nature, whether tangible or intangible, which are used or useful in or held for use in connection with the operation of the Business, excluding only the Excluded Assets expressly identified in Section 2.2 of the Asset Purchase Agreement (such assets, properties, rights and claims to be acquired hereunder, collectively, the "Purchased Assets"). The Purchased Assets shall include the following:

a)  all Accounts Receivable and other rights to payment arising from the conduct of the Business;

b)  all security and other deposits related to Assumed Contracts (as may be amended from time to time as set forth in Section 2.5 of the Asset Purchase Agreement);

c)  other than as provided in paragraph (q) below, all tangible personal property owned by Sellers related to, useful in or held for use in the conduct of the Business that, other than as provided in paragraph (q) below, are related to, located at or useful in connection with the Real Property Leases that are Assumed Contracts, including merchandise, supplies, samples, equipment, televisions, monitors, video players, computers, hardware, electronics, file servers, scanners, printers, networks, copiers, cash registers, furniture, furnishings, fixtures, telephone lines, telecopy machines, telecommunication equipment, storeroom contents, spare parts, shipping materials, packaging materials and consumables relating to or available for sale or use in connection with the Business;

d)  all right, title and interest of Sellers under each Real Property Lease on Schedule 1.1(a) of the Asset Purchase Agreement, as such Schedule may be amended from time to time

pursuant to Section 2.5(b) of the Asset Purchase Agreement, together with all of Sellers' right title and interest in and to all improvements, fixtures and other appurtenances thereto and rights in respect thereof;

e) all right, title and interest of Sellers under each other Contract on <u>Schedule 1.1(b)</u> of the Asset Purchase Agreement, as such Schedule may be amended from time to time pursuant to Section 2.5(b) of the Asset Purchase Agreement;

f) all right, title and interest of Sellers in and to any property subject to a personal property lease that is related to, useful in or held for use in the conduct of the Business, to the extent any such personal property lease is an Assumed Contract;

g) the Purchased Intellectual Property;

h) all of the rights and benefits accruing from and after the Closing under any of the Assumed Contracts, including each Real Property Lease, personal property lease and Intellectual Property License that is an Assumed Contract;

i) all Documents that are used in, held for use in or intended to be used in, or that arise primarily out of, the Business, including Documents relating to marketing, advertising, promotional materials, Purchased Intellectual Property, and all files, customer files and documents (including credit information), supplier lists, vendor files, financial and other records, literature and correspondence, whether or not physically located on any of the premises referred to in clause (f) above, <u>but excluding</u> (i) personnel files for Employees who are not hired by Purchaser, (ii) such files as may not be transferred under Applicable Law regarding privacy, (iii) Documents that Sellers are not permitted to transfer pursuant to any contractual confidentiality obligation owed to any third party, and (iv) Documents relating to an Excluded Asset or Excluded Liability;

j) all of the rights and benefits accruing under any Permits held, used or made by any Seller in the Business to the extent assignable, except any such Permit that is an Excluded Contract;

k) all warranties and guarantees related to the Purchased Assets, to the extent assignable, including warranties and guarantees made by suppliers, manufacturers and contractors under the Purchased Assets, and claims against suppliers and other third parties in connection with the Assumed Contracts;

l) any rights, demands, claims, causes of action, rights of recovery, credits, allowances, rebates, or rights of setoff or subrogation arising out of or relating to any of the Purchased Assets;

m) all rights of Sellers under non-disclosure or confidentiality, non-compete, or non-solicitation agreements with employees and agents of Sellers or with third parties to the extent relating to the Business or the Purchased Assets (or any portion thereof);

n) all goodwill and other intangible assets associated with the Business, including customer and supplier lists and the goodwill associated with the Purchased Intellectual Property;

2

o) all prepaid expenses of Sellers;

p) all other assets, properties, rights and claims of Sellers of any kind or nature that relate to the Business, that are used or useful in or held for use in the Business, or that relate to the Purchased Assets (in each case, other than the Excluded Assets) not otherwise described in this Section or in <u>Section 2.1</u> of the Asset Purchase Agreement, including, but not limited to, all of Sellers' assets related to, located at, or used or useful in connection with the Real Property Leases that are Assumed Contracts; and

q) all inventory of any kind and nature, including raw materials, supplies, work-in-process, packaging materials and other materials in the inventory of the Business.

2.    <u>Further Assurances</u>. From time to time following the Closing, Sellers and Purchaser shall execute, acknowledge and deliver all such further conveyances, notices, assumptions, releases and acquittances and such other instruments, and shall take such further actions, as may be reasonably necessary or appropriate to assure fully to Purchaser and its successors or assigns, all of the properties, rights, titles, interests, estates, remedies, powers and privileges intended to be conveyed to Purchaser under this Bill of Sale and to otherwise make effective the transactions contemplated hereby.

3.    <u>Order of Precedence</u>. This Bill of Sale is made subject to, and has the benefits of, the respective agreements, covenants, terms, conditions, limitations and other provisions of the Asset Purchase Agreement and the Sale Order. In the event of a conflict between this Bill of Sale and the Asset Purchase Agreement or the Sale Order, the Asset Purchase Agreement or the Sale Order, as the case may be, shall take precedence and control.

4.    <u>Governing Law</u>. This Bill of Sale shall be governed by and construed, interpreted and determined in accordance with the internal Laws of the State of Delaware (without regard to any conflict of laws provision that would require the application of the Law of any other jurisdiction).

5.    <u>As Is Sale</u>. EXCEPT AS EXPLICITLY SET FORTH IN ARTICLE 5 OF THE ASSET PURCHASE AGREEMENT, PURCHASER HEREBY ACKNOWLEDGES AND AGREES THAT, SELLERS MAKE NO REPRESENTATIONS OR WARRANTIES WHATSOEVER, EXPRESS OR IMPLIED, WITH RESPECT TO ANY MATTER RELATING TO THE PURCHASED ASSETS INCLUDING, WITHOUT LIMITATION, INCOME TO BE DERIVED OR EXPENSES TO BE INCURRED IN CONNECTION WITH THE PURCHASED ASSETS, THE PHYSICAL CONDITION OF ANY PERSONAL PROPERTY OR INVENTORY COMPRISING A PART OF THE PURCHASED ASSETS OR WHICH IS THE SUBJECT OF ANY OTHER LEASE OR CONTRACT TO BE ASSUMED BY PURCHASER AT THE CLOSING, THE ENVIRONMENTAL CONDITION OR OTHER MATTER RELATING TO THE PHYSICAL CONDITION OF ANY REAL PROPERTY OR IMPROVEMENTS WHICH ARE THE SUBJECT OF ANY REAL PROPERTY LEASE TO BE ASSUMED BY PURCHASER AT THE CLOSING, THE ZONING OF ANY SUCH REAL PROPERTY OR IMPROVEMENTS, THE VALUE OF THE PURCHASED ASSETS (OR ANY PORTION THEREOF), THE TRANSFERABILITY OF THE PURCHASED ASSETS, THE TERMS, AMOUNT, VALIDITY OR ENFORCEABILITY OF ANY ASSUMED

LIABILITIES, THE TITLE OF THE PURCHASED ASSETS (OR ANY PORTION THEREOF) THE MERCHANTABILITY OR FITNESS OF THE PERSONAL PROPERTY, THE INVENTORY OR ANY OTHER PORTION OF THE PURCHASED ASSETS FOR ANY PARTICULAR PURPOSE, OR ANY OTHER MATTER OR THING RELATING TO THE PURCHASED ASSETS OR ANY PORTION THEREOF.   WITHOUT IN ANY WAY LIMITING THE FOREGOING, SELLERS HEREBY DISCLAIM ANY WARRANTY, EXPRESS OR IMPLIED, OF MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE AS TO ANY PORTION OF THE PURCHASED ASSETS.   PURCHASER FURTHER ACKNOWLEDGES THAT PURCHASER HAS CONDUCTED AN INDEPENDENT INSPECTION AND INVESTIGATION OF THE PHYSICAL CONDITION OF THE PURCHASED ASSETS AND ALL SUCH OTHER MATTERS RELATING TO OR AFFECTING THE PURCHASED ASSETS AS PURCHASER DEEMED NECESSARY OR APPROPRIATE AND THAT IN PROCEEDING WITH ITS ACQUISITION OF THE PURCHASED ASSETS, EXCEPT FOR ANY REPRESENTATIONS AND WARRANTIES EXPRESSLY SET FORTH IN ARTICLE 5 OF THE ASSET PURCHASE AGREEMENT, PURCHASER IS DOING SO BASED SOLELY UPON SUCH INDEPENDENT INSPECTIONS AND INVESTIGATIONS.  ACCORDINGLY, PURCHASER WILL ACCEPT THE PURCHASED ASSETS AT THE CLOSING "AS IS," "WHERE IS," AND "WITH ALL FAULTS."

6.    Execution.  This Bill of Sale may be executed by facsimile or other electronic signature and in counterparts, each of which is deemed an original and all of which taken together constitute one and the same instrument.

**[SIGNATURE PAGE FOLLOWS]**

4

IN WITNESS WHEREOF, Sellers have caused the execution and delivery of this Bill of Sale by their respective duly authorized officers as of the date first above written.

SELLERS:

**HEALTHCARE UNIFORM COMPANY, INC.**

By: _____
Name:_____
Title:_____

**UNIFORM CITY NATIONAL, INC.**

By: _____
Name:_____
Title:_____

# EXHIBIT K

## <u>Sale Order</u>

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| LIFE UNIFORM HOLDING CORP., *et al.*, [1] | Case No. 13-_____ (___) |
| Debtors. | Jointly Administered |

**ORDER PURSUANT TO 11 U.S.C. §§ 105(a), 363 AND 365 AND FEDERAL RULES OF
BANKRUPTCY PROCEDURE 2002, 6004 AND 6006 APPROVING SALE OF
SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS (INCLUDING
ASSUMPTION AND ASSIGNMENT OF CONTRACTS) FREE AND
CLEAR OF ALL LIENS, ENCUMBRANCES, CLAIMS, AND INTERESTS**

Upon the motion, dated as of _____ ___, 2013 [ECF No. ___] (the "*Sale Motion*"),[2] of

Healthcare Uniform Company, Inc. and Uniform City National, Inc., debtors and debtors-in-

possession (the "*Debtors*"), filed in the above-captioned jointly administered chapter 11

bankruptcy case, for entry of an order pursuant to sections 105(a), 363(b), and 365 of title 11 of

the United States Code, 11 U.S.C. §§ 101–1532 (as amended, the "*Bankruptcy Code*"), Rules

2002, 6004, 6006, 9006, and 9014 of the Federal Rules of Bankruptcy Procedure (the

"*Bankruptcy Rules*"), and Rules 2002–1 and 6004–1 of the Local Rules of the United States

Bankruptcy Court for the District of Delaware (the "*Local Rules*"), requesting approval of the

sale (the "*Sale*") pursuant to the terms of that certain Asset Purchase Agreement, dated as of

_____ ___, 2013 (as may be subsequently modified, amended, or clarified in accordance

herewith, the "Purchase Agreement," a copy of which is attached as **Exhibit 1** to the Sale

Motion), by and between the Debtors and **[*Insert Name of Buyer*]** (the "*Buyer*"), of the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer-identification number, are:  Life Uniform Holding Corp. (1018), Healthcare Uniform Company, Inc. (0640), and Uniform City National, Inc. (0392).

[2] Unless specified otherwise, all capitalized terms used herein shall have the meanings ascribed to them in the Sale Motion or the Purchase Agreement (as defined herein).  As used herein, "Debtors" and "Buyer" shall deemed to include their respective successors and assigns.

Purchased Assets, free and clear of all Liens and Claims, other than Assumed Liabilities, and the Court having entered a Procedures Order on _____ ____, 2013 [ECF No. ___] approving the Bid Procedures, and, if necessary, an Auction having been held on _____ ____, 2013, in accordance with the Bid Procedures and the Procedures Order; and based upon the arguments of counsel and the evidence presented at the hearing to approve the Sale Motion (the "*Sale Hearing*"); and the Court having determined that the relief sought in the Sale Motion is in the best interests of the Debtors, their respective estates, and their respective creditors, and all parties-in-interest, and that the legal and factual bases set forth in the Sale Motion and presented at the Sale Hearing establish just cause for the relief granted herein; and all objections to the Sale Motion, if any, having been withdrawn or overruled on the merits; and after due deliberation and sufficient good cause appearing therefor,

### THE COURT HEREBY FINDS THAT:[3]

A.     This Court has jurisdiction over the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334.  This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

B.     The statutory predicates for the relief requested in the Sale Motion are sections 105(a), 363, 365, 503 and 507 of the Bankruptcy Code, (ii) Rules 2002, 6004, 6006, 9007 and 9014 of the Bankruptcy Rules, and (iii) Rule 6004-1 of the Local Rules.

C.     Notice of (i) the Sale Motion and (ii) the assumption and assignment of the Assumed Contracts and of the proposed Cure Amounts with respect thereto having been

---

[3] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

provided to the parties specified in the Procedures Order is sufficient in light of the circumstances and nature of the relief requested in the Sale Motion, and no other or further notice no other or further notice of the Sale Motion or the relief requested therein shall be required. A reasonable opportunity to object or be heard regarding the relief provided herein has been afforded to parties-in-interest.

D.    All parties holding Liens and Claims who did not object to the Sale Motion and the relief requested therein, or who withdrew their objections to the Sale Motion, are deemed to have consented to such relief pursuant to section 363(f)(2) of the Bankruptcy Code.

E.    The marketing and bidding procedures implemented by the Debtors, as set forth or described in the Sale Motion, the Procedures Order and the Bid Procedures, and the record of the hearings relating to the Sale, were fair, proper, and reasonably calculated to result in the best value received for the Purchased Assets. Further, the Auction process set forth in the Bid Procedures afforded a full, fair and reasonable opportunity for any Qualified Bidders to submit Qualified Bids and participate in the Auction. The Auction was conducted properly and in good faith, without collusion and in accordance with the Bid Procedures and the Procedures Order. The Buyer was a Qualified Bidder pursuant to the Bid Procedures and the Procedures Order.

F.    After the conclusion of the Auction, the Debtors determined that the highest and/or otherwise best offer for the Purchased Assets was that of the Buyer, as set forth in the Purchase Agreement. The Debtors further determined that the next highest and/or otherwise best offer for the Purchased Assets was that of [*Insert the Name of the Back-Up Bidder, if any*] (the "*Back-Up Bidder*").

G.    The Purchase Agreement and other documents and instruments related to and connected with the Sale of the Purchased Assets and the consummation thereof (collectively with

3

the Purchase Agreement, as each may have been amended through the date hereof, the

"*Transaction Documents*") were negotiated, proposed and entered into by the Debtors and the

Buyer without collusion, in good faith and from arm's-length bargaining positions. Neither the

Buyer nor any of its affiliates or its representatives is an "insider" of either of the Debtors, as that

term is defined in section 101(31) of the Bankruptcy Code. None of the Debtors, the Buyer, or

their respective representatives has engaged in any conduct that would cause or permit the

Purchase Agreement or the other Transaction Documents to be avoided under section 363(n) of

the Bankruptcy Code, or has acted in any improper or collusive manner with any person. The

terms and conditions of the Purchase Agreement and the other Transaction Documents,

including, without limitation, the consideration provided therein, are fair and reasonable, and the

Sale of the Purchased Assets is not avoidable and shall not be avoided under section 363(n) of

the Bankruptcy Code.

H.      The Buyer has proceeded in good faith and without collusion in all respects in

connection with this proceeding, in that: (i) the Buyer, in acquiring the Purchased Assets,

recognized that the Debtors were free to deal with other interested parties; (ii) the Buyer agreed

to provisions in the Purchase Agreement that would enable the Debtors to accept a higher or

better offer; (iii) the Buyer complied with all the provisions in the Bid Procedures and the

Procedures Order applicable to the Buyer, unless otherwise permitted by an order of this Court;

(iv) all payments to be made by the Buyer and other agreements entered into or to be entered into

between the Buyer and the Debtors in connection with the Sale have been disclosed; (v) the

negotiation and execution of the Purchase Agreement and related agreements were conducted in

good faith and constituted an arm's length transaction; and (vi) the disclosure requirements

required by the applicable Bankruptcy Rules and Local Rules have been satisfied. The Buyer is,

therefore, entitled to all of the benefits and protections provided to a good faith purchaser under section 363(m) of the Bankruptcy Code.  Accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale of the Purchased Assets shall not affect the validity of such Sale.  No stay pending appeal of this Order (the "*Sale Order*") has been requested, and the stay contained in Bankruptcy Rule 6004(h) has been and hereby is waived as set forth in paragraph 19 below.

I.    Subject to the entry of this Sale Order, the Debtors have (i) full corporate power and authority to enter into and perform all of their obligations under the Transaction Documents, and the Debtors' prior execution and delivery of, and performance of obligations under, the Transaction Documents is hereby ratified; (ii) all of the corporate power and authority necessary to consummate the Sale of the Purchased Assets; and (iii) taken all corporate action necessary to authorize and approve the Transaction Documents.  Further, no consents or approvals are required for the Debtors to consummate the Sale of the Purchased Assets other than the consent and approval of this Court.  Neither the execution of the Transaction Documents nor the Sale of the Purchased Assets in accordance with the terms of the Transaction Documents will constitute a violation of any provision of the organization documents of the Debtors or any other instrument, law, regulation, or ordinance by which the Debtors are bound.

J.    Good and sufficient reasons for approval of the Purchase Agreement and the other Transaction Documents and the Sale of the Purchased Assets have been articulated to the Court in the Sale Motion and at the Sale Hearing, and the relief requested in the Sale Motion and set forth in this Sale Order is in the best interests of the Debtors, and their respective estates, creditors and other parties-in-interest in the Bankruptcy Cases.

K.     The Purchased Assets constitute property of the Debtors' respective estates and title thereto is vested in the Debtors' respective estates within the meaning of section 541(a) of the Bankruptcy Code.  Accordingly, the Debtors have or will have as of the date of Closing all right, title and interest to and in the Purchased Assets that may be required to transfer and convey the Purchased Assets to the Buyer in the manner contemplated by the Transaction Documents.

L.     The consideration to be paid by the Buyer to the Debtors for the Purchased Assets is fair and reasonable, is the highest and/or otherwise best offer for the Purchased Assets, and constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code, the Uniform Fraudulent Conveyance Act, the Uniform Fraudulent Transfer Act, and the laws of the United States, any state, territory, or possession thereof, the District of Columbia, or any other applicable law.  The Debtors' determination that the Purchase Agreement constitutes the highest and/or otherwise best offer for the Purchased Assets constitutes a valid and sound exercise of the Debtors' business judgment.

M.     Each of the Debtors has demonstrated both (i) good, sufficient and sound business purpose and justification, and (ii) compelling circumstances for the Sale of the Purchased Assets pursuant to Bankruptcy Code section 363.     Such business judgment and compelling circumstances include, but are not limited to, the fact that (a) the Purchase Agreement constitutes the highest and/or best offer for the Purchased Assets; and (b) consummation of the Transaction Documents and the transactions contemplated thereby presents the best opportunity to realize the highest value for the Purchased Assets and avoid potential decline and devaluation thereof. After consideration of the circumstances described in the Sale Motion and at the Sale Hearing, including, but not limited to (i) the extensive efforts undertaken by the Debtors to market the Purchased Assets for Sale both before and during the pendency of the Bankruptcy Cases; and (ii)

the consent by the Debtors' major secured creditors to the consummation of the Sale of the Purchased Assets under the terms and conditions set forth in the Purchase Agreement, the Court has determined that the Sale of the Purchased Assets outlined in the Sale Motion and in the Purchase Agreement will provide a greater recovery for the Debtors' respective creditors and other parties-in-interest than would be provided by any other practical alternative method.

N.    The consummation of the Sale pursuant to the Transaction Documents will be a legal, valid, and effective Sale of the Purchased Assets to the Buyer and will vest the Buyer with all of the Debtors' right, title, and interest in and to the Purchased Assets, free and clear of all Liens and Claims of any kind or nature whatsoever other than Assumed Liabilities because one or more of the standards set forth in sections 363(f)(1)–(5) of the Bankruptcy Code has been satisfied.  All holders of Liens and Claims in the Purchased Assets will be adequately protected as hereinafter provided by having their Liens and Claims attach to the net proceeds ultimately attributable to the Purchased Assets against or in which such Liens and Claims are asserted, subject to the terms of such Liens and Claims, with the same validity, force and effect, and in the same order of priority, that such Liens and Claims had against the Purchased Assets or their proceeds as of the filing of these Bankruptcy Cases, subject to any rights, claims and defenses the Debtors or their respective estates, as applicable, may possess with respect thereto.

O.    The Buyer would not have entered into the Purchase Agreement and would not consummate the transactions contemplated thereby if the Sale of the Purchased Assets to the Buyer were not free and clear of all Liens and Claims of any kind or nature whatsoever (except for Assumed Liabilities), or if the Buyer would, or in the future could, be liable for any of such Liens and Claims.  Failure to sell the Purchased Assets free and clear of all Liens and Claims would be substantially less beneficial to the Debtors' estates.

P.    The Purchase Agreement was not entered into, and the Sale of the Purchased Assets and related transactions are not consummated, for the purpose of hindering, delaying, or defrauding creditors of the Debtors under the Bankruptcy Code, or under the laws of the United States, any state, territory, or possession thereof, the District of Columbia or any other applicable law.    Neither the Debtors nor the Buyer have entered into the Purchase Agreement or are consummating the Sale of the Purchased Assets and related transactions with any fraudulent or otherwise improper purpose.

**NOW THEREFORE, IT IS HEREBY ORDERED THAT:**

1.    The Sale Motion and the relief requested therein is GRANTED and APPROVED in all respects to the extent provided herein.

2.    All objections with regard to the relief sought in the Sale Motion that have not been withdrawn, waived, settled, or otherwise dealt with as expressly provided herein and in the Procedures Order, and all reservation of rights included in such objections, are overruled on the merits with prejudice.

3.    Pursuant to sections 105(a), 363(b), 363(f), and 365 of the Bankruptcy Code, the Sale of the Purchased Assets and the Purchase Agreement are approved, and the Debtors are authorized to enter into and consummate the Purchase Agreement and the other Transaction Documents, and execute all documents and take all actions necessary and appropriate to effectuate and consummate the Sale of the Purchased Assets in consideration of the Purchase Price specified therein upon the terms set forth in the Purchase Agreement, including, without limitation, selling, assigning, and transferring to the Buyer all of the Debtors' right, title, and interest in and to the Purchased Assets, and assuming and assigning to Buyer the Assumed Contracts, and including the taking of any other actions required of the Debtors to effectuate the Sale.    Further, any objections thereto having been resolved or overruled on the merits, the Cure

Amounts listed on the Assumption, Assignment, and Cure Notice, are deemed the necessary amounts to "cure" all "defaults" with respect to the Assumed Contracts under section 365(b) of the Bankruptcy Code.

4.     As of the Closing, (i) the transactions set forth in the Purchase Agreement shall effect a legal, valid, enforceable and effective Sale and transfer of the Purchased Assets to the Buyer with title to such Purchased Assets free and clear of all Liens and Claims of any kind whatsoever as set forth in paragraph 7 hereof and in the Purchase Agreement (excepting Assumed Liabilities); and (ii) the Purchase Agreement, along with the other Transaction Documents, any transactions related thereto and the consummation thereof, and the Sale of the Purchased Assets, shall be enforceable against and binding upon, and not subject to rejection or avoidance by, the Debtors, any successor trustee appointed with respect thereto in their respective Bankruptcy Cases, and each other person and entity.

5.     Subject to the fulfillment of the terms and conditions of the Purchase Agreement, as of the Closing, this Sale Order shall be considered and constitute for all purposes a full and complete general assignment, conveyance, and transfer of the Purchased Assets and/or a bill of Sale transferring the Debtors' title and interest in the Purchased Assets to the Buyer.  Consistent with, but not in limitation of the foregoing, each and every federal, state, and local governmental agency or department is hereby directed to accept all documents and instruments necessary and appropriate to consummate the Sale.

6.     Any person or entity that is currently, or on the Closing Date may be, in possession of some or all of the Purchased Assets are hereby directed to surrender possession of such Purchased Assets either to (a) the Debtors before the Closing Date or (b) to Buyer on the

Closing Date, unless possession of certain of the Purchased Assets shall remain with a third party pursuant to the terms of an Assumed Contract.

7.    The transfer of the Purchased Assets pursuant to the Transaction Documents is a legal, valid, and effective transfer and shall, in accordance with sections 105(a) and 363(f) of the Bankruptcy Code, and upon payment of the Purchase Price to the Debtors, vest the Buyer with all right, title, and interest of the Debtors in the Purchased Assets, free and clear of all Liens and Claims (other than Assumed Liabilities), including, but not limited to, all encumbrances, obligations, liabilities, demands, guarantees, options, rights, restrictions, contractual commitments, rights of first refusal, rights of setoff, or interests of any kind or nature that have been, are or could be asserted against the Debtors whether known or unknown, legal or equitable, matured or unmatured, contingent or noncontingent, liquidated or unliquidated, asserted or unasserted, whether arising prior to or subsequent to the commencement of these Bankruptcy Cases, whether imposed by agreement, understanding, law, equity or otherwise, and all rights and claims under any bulk transfer statutes and related laws, whether arising by agreement, statute, or otherwise and whether arising before or after the commencement of these Bankruptcy Cases, whether known or unknown, including Liens and Claims of any of the creditors, vendors, employers, suppliers, or lessors of the Debtors or any other third party.  Following the Closing, no holder of any Liens and Claims against the Debtors shall interfere with the Buyer's title to or use and enjoyment of the Purchased Assets.

8.    All valid and perfected Liens and Claims in the Purchased Assets shall attach to any proceeds of such Purchased Assets immediately upon receipt of such proceeds by the Debtors, as applicable, in the order of priority, and with the same validity, force and effect that they had against such Purchased Assets as of the filing of the Bankruptcy Cases, subject to any

rights, claims and defenses the Debtors, their respective estates or any trustee for the Debtors, as applicable, may possess with respect thereto, in addition to any limitations on the use of such proceeds pursuant to any provision of the Purchase Agreement or this Sale Order.

9.    The Buyer shall not be deemed, as a result of any action taken in connection with, or as a result of the purchase of the Purchased Assets, to: (i) be a successor (or other such similarly situated party) to the Debtors (other than with respect to the Assumed Liabilities); or (ii) have, *de facto* or otherwise, merged with or into the Debtors.  Except as expressly set forth in the Purchase Agreement with respect to the Assumed Liabilities, the Buyer is not acquiring or assuming any Liens and Claims, including, without limitation, any liability arising from any of the following: (i) any employment or labor agreements, consulting agreements, severance agreements, change in control agreements or other similar agreements to which the Debtors are or were a party; (ii) any pension, welfare, compensation or other employee benefit plans, agreements, practices, and programs, including without limitation, any pension plan of the Debtors; (iii) the cessation of the Debtors' operations, dismissal of employees, or termination of employment or labor agreements or pension, welfare, compensation or other employee benefit plans, agreements, practices and programs; (iv) the Employee Retirement Income Security Act of 1974 ("ERISA"), the Fair Labor Standard Act, Title VII of the Civil Rights Act of 1964, the Age Discrimination and Employment Act of 1967, the Federal Rehabilitation Act of 1973, the National Labor Relations Act, the Consolidated Omnibus Budget Reconciliation Act of 1985 or the Worker Adjustment and Retraining Notification Act (the "*WARN Act*") and any similar state laws or local ordinances, including without limitation, anti-discrimination laws, wage and hour laws, laws governing or providing for disability or other leaves of absence, "whistle-blower" protection laws, and laws concerning alleged wrongful discharge from employment;

(v) workmen's compensation, occupational disease or unemployment or temporary disability insurance claims; (vi) environment liabilities, debts, claims or obligations that may be asserted on any basis, including, without limitation, under the Comprehensive Environmental Response, Compensation and Liability Act or any other environmental, health and safety requirements; (vii) any bulk sales or similar law, (viii) any litigation by or against the Debtors; and (ix) the laws of the United States, any state, territory or possession thereof, or the District of Columbia, based, in whole or in part, directly or indirectly, in any theory of law or equity, including without limitation, any theory of antitrust or successor or transferee liability. Neither the Buyer nor any of its employees, members, directors, advisors, lenders, affiliates, owners, successors and assigns shall have any successor or vicarious liabilities under or with respect to the Purchased Assets or any Liens and Claims (other than, with respect to the Buyer, the Assumed Liabilities) of any kind or character.

10. Except for the holders of Assumed Liabilities (and then only as and to the extent expressly permitted by the Purchase Agreement) all persons and/or entities asserting Liens and Claims against the Debtors, or their respective interests in the Purchased Assets, are hereby forever estopped, permanently enjoined, and precluded from (i) pursuing such Liens and Claims against the Purchased Assets, excluding Sale proceeds reserved herein; (ii) asserting, commencing or continuing in any manner any action against the Buyer or against any of its assets or properties (including, without limitation, the Purchased Assets) on account of such Liens and Claims; (iii) the enforcement, attachment, collection or recovery, by any manner or means, of any judgment, award or decree of order against the Buyer or any of its assets or properties (including, without limitation, the Purchased Assets) on account of such Liens and Claims; (iv) creating, perfecting or enforcing any encumbrance of any kind against the Buyer or

any of its properties or assets (including, without limitation, the Purchased Assets) on account of such Liens and Claims; (v) asserting any set off, right of subrogation or recoupment or other affirmative defense of any kind against any obligations due to the Buyer on account of such Liens and Claims; (vi) any action, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of this Sale Order or the Purchase Agreement; and (vii) asserting that with respect to the Debtors that the Buyer is a successor, successor-in-interest, or otherwise liable for the Liens and Claims pursuant to any other statutory or legal or equitable theory, including, without limitation, worker's compensation, occupational disease, pension and employee benefits, labor and employment, bulk sales or tax laws or obligations.

11.    This Sale Order (i) shall be effective as a determination that, on Closing, and except with respect to Assumed Liabilities, all Liens and Claims of any kind or nature whatsoever existing as to the Purchased Assets before the Closing, have been unconditionally released, discharged and terminated, and that the conveyances described herein have been effected, and (ii) shall be binding upon and shall govern the acts of all persons and entities. On Closing, and excepting Assumed Liabilities, the Debtors, and persons holding any Liens and Claims in the Purchased Assets as of the Closing, are authorized and directed to execute such documents and take all other actions as may be reasonably necessary to release their Liens and Claims in the Purchased Assets, if any, as such Liens and Claims may have been recorded or may otherwise exist. If any person or entity that has filed financing statements or other documents or agreements evidencing any Liens and Claims in the Purchased Assets shall not have delivered to the Debtors before the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all Liens and Claims that the person or entity has with respect to the Purchased Assets, then the Buyer, and the

Debtors are hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to such Purchased Assets.

12.    The Sale proceeds shall be distributed as follows:

**[*Insert Distribution of the Sale Proceeds*]**

13.    Upon the Closing, the Debtors are authorized and empowered to assume, assign and/or transfer each of the Assumed Contracts to the Buyer. The payment of the applicable Cure Amounts (if any), to the counterparty to any Assumed Contract shall (i) effect a cure of all defaults existing thereunder as of the commencement of the Bankruptcy Cases, and (ii) compensate such counterparty for any actual pecuniary loss resulting from any such default. The Buyer shall then have assumed the Assumed Contracts and, pursuant to section 365(f) of the Bankruptcy Code, the assignment by the Debtors of such Assumed Contracts shall not be a default thereunder. After the payment of the relevant Cure Amounts, neither the Debtors nor the Buyer shall have any further liabilities to the counterparties to the Assumed Contracts other than the Buyer's obligations under the Assumed Contracts that first accrue and become due and payable on or after the Closing Date. Any party having the right to consent to the assumption or assignment of the Assumed Contracts that has failed to object to such assumption or assignment is deemed to have consented to such assumption and assignment, as required by section 365(c) of the Bankruptcy Code.  In addition, adequate assurance of future performance has been demonstrated by or on behalf of the Buyer with respect to the Assumed Contracts.

14.    There shall be no rent accelerations, assignment fees, increases, or any other charges charged to the Buyer or the Debtors as a result of the Debtors' assumption and assignment to the Buyer of the Assumed Contracts, and the validity of such assumption or assignment shall not be affected by any dispute between the Debtors or their respective affiliates

and any counterparty to the Assumed Contracts, and the Assumed Contracts, upon assignment to the Buyer, shall be deemed valid and binding and in full force and effect in accordance with their terms. No counterparty to any of the Assumed Contracts shall be permitted to declare a default under such Assumed Contract or otherwise take action against the Buyer, as a result of the Debtors' financial condition, bankruptcy, or failure to perform any of its obligations under such Assumed Contract prior to Closing. The failure of the Debtors or the Buyer to enforce at any time one or more terms or conditions of any Assumed Contract shall not be a waiver of such terms or conditions, or of the Debtors' and Buyer's rights to enforce every term and condition of the Assumed Contracts.

15.    This Sale Order shall be binding upon and shall govern the acts of all entities, including without limitation all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Purchased Assets. The terms and provisions of the Purchase Agreement and all other Transaction Documents, the Sale of the Purchased Assets itself, and this Sale Order shall be binding in all respects upon the Debtors, their respective estates, all creditors (whether known or unknown) of and holders of equity interests in the Debtors, the Buyer and their respective affiliates, successors and assigns, and all third parties, notwithstanding the subsequent appointment of any trustee of the Debtors under any chapter of the Bankruptcy Code, as to which trustee(s) such terms and provisions likewise shall be binding. The provisions of this Sale Order and any actions taken

pursuant hereto shall survive any conversion or dismissal of the Bankruptcy Cases and the entry of any other order that may be entered in the Bankruptcy Cases, including any order (i) confirming any plan of reorganization; (ii) converting the Bankruptcy Cases from chapter 11 to chapter 7; (iii) appointing a trustee or examiner in the Bankruptcy Cases; or dismissing the Bankruptcy Cases. The terms and provisions of this Sale Order, as well as the rights granted under the Transaction Documents, shall continue in full force and effect and are binding upon any successor, reorganized debtor, or chapter 7 or chapter 11 trustee applicable to the Debtors, notwithstanding any such conversion, dismissal or order entry.

16.    The failure specifically to include any particular provision of the Purchase Agreement or the other Transaction Documents in this Sale Order shall not diminish or impair the effectiveness of such provisions, it being the intent of the Court that the Purchase Agreement and the other Transaction Documents be authorized and approved in their entirety. Likewise, all of the provisions of this Sale Order are non-severable and mutually dependent.

17.    Notwithstanding Bankruptcy Rule 6004, 6006(d), 7062 or 9014, if applicable, or any other Local Rule or otherwise, this Sale Order shall not be stayed for 14-days after the entry hereof, but shall be effective and enforceable immediately upon entry pursuant to Bankruptcy Rule 6004(h). Time is of the essence in approving the Sale of the Purchased Assets and the transactions related thereto, and the Debtors and the Buyer intend to close the Sale of the Purchased Assets and related transactions as soon as practicable.

18.    Nothing in this Sale Order shall modify or waive any closing conditions or termination rights in the Purchase Agreement, and all such conditions and rights shall remain in full force and effect in accordance with their terms.

19.     Unless otherwise provided in this Sale Order, to the extent any inconsistency exists between the provisions of the Purchase Agreement and this Sale Order, the provisions contained herein shall govern.

20.     The Court shall retain exclusive jurisdiction to interpret, construe, and enforce the provisions of the Transaction Documents and this Sale Order in all respects, and further, to hear and determine all disputes between the Debtors and/or the Buyer, as the case may be, and any other counterparty to, among other things, the Assumed Contracts, concerning, among other things, assignment thereof by the Debtors to the Buyer under the Purchase Agreement and any dispute between the Buyer and the Debtors as to their respective obligations with respect to any asset, liability, or claim arising hereunder.

**IT IS SO ORDERED.**

Dated: _____, 2013                    ENTERED:

_____
Honorable _____
United States Bankruptcy Judge