# EXHIBIT D
# ESCROW AGREEMENT

# ESCROW AGREEMENT

AGREEMENT (the "Agreement") made as of this 29th day of May, 2013, by and among **Healthcare Uniform Company, Inc.**, a Delaware corporation ("Healthcare Uniform"), **Uniform City National, Inc.**, a Delaware corporation ("Uniform City", and together with Healthcare Uniform, collectively, "Sellers" and each individually, a "Seller"), **Scrubs & Beyond, LLC**, a Delaware limited liability company ("Purchaser"), and **PNC Bank, National Association**, as escrow agent (the "Escrow Agent").

## BACKGROUND

Purchaser and Sellers are parties to an Asset Purchase Agreement, dated as of May 29, 2013 (the "Purchase Agreement").

Pursuant to Section 3.2 of the Purchase Agreement, Purchaser and Sellers have agreed that Purchaser will deposit $4,525,000 in escrow with the Escrow Agent subject to the terms and conditions set forth in this Agreement.

NOW, THEREFORE, in consideration of the foregoing and of the mutual covenants herein contained and intending to be legally bound hereby, the parties hereto agree as follows:

1. Appointment of Escrow Agent. The Escrow Agent is hereby appointed as escrow agent hereunder and agrees to act on the terms and subject to the conditions hereinafter set forth.

2. Establishment of Escrow Fund. Simultaneously with the execution in full hereof, Purchaser shall deposit with Escrow Agent the sum of $4,525,000 which, together with any proceeds, income and reinvestments, is hereinafter referred to as the "Escrow Fund". Escrow Agent shall hold the Escrow Fund subject to the terms and conditions of this Agreement.

3. Deposit and Investment of Escrow Fund.

(a) The Escrow Agent shall have no investment discretion over the Escrow Fund. The Escrow Agent shall deposit or invest the Escrow Fund in the investments set forth on Appendix A attached hereto, and incorporated herein and as amended from time to time as herein provided. This deposit and investment direction may be altered only in a writing delivered to the Escrow Agent, jointly signed by Sellers and Purchaser, and agreed to in writing by the Escrow Agent.

(b) The Escrow Agent shall have the right to make withdrawals from any deposits or liquidate any investments held, in order to provide funds necessary to make required payments under this Escrow Agreement at such time or times as determined by the Escrow Agent in its sole discretion. The Escrow Agent in its capacity as escrow agent hereunder shall have no liability for any loss sustained as a result of any investment made pursuant to the instructions of the parties hereto or as a result of any liquidation of any investment prior to its maturity, for the failure of said parties to give the Escrow Agent instructions to invest or reinvest the Escrow Fund or any earnings thereon, or for

any investment made by the Escrow Agent in the absence of instructions from said parties.

(c) The Escrow Fund will be invested in investments, including without limitation, shares of mutual funds, which are not insured by the FDIC, are not deposits of or guaranteed by the Escrow Agent or any of its affiliates and are subject to investment risks, including the loss of principal. In addition, shares of money market mutual funds are neither insured nor guaranteed by the U.S. Government and there can be no assurance that a money market mutual fund will be able to maintain a stable net asset value of $1.00 per share.

(d) The parties hereto other than the Escrow Agent acknowledge and agree that the Escrow Agent or its affiliate(s) may provide financial or investment advice or other services to, or receive shareholder servicing fees from some or all of the investments permitted hereby and that the Escrow Agent or an affiliate may be a manager, promoter or placement agent for or have underwritten such investments and the Escrow Agent and its affiliate(s) may be separately and additionally compensated for providing such services or for underwriting such investments. The parties hereto other than the Escrow Agent hereby instruct Escrow Agent to vote all proxies in accordance with the proxy policy in effect from time to time for the Escrow Agent unless otherwise specifically instructed jointly by the parties. Each of said parties specifically acknowledges that it understands that this provision may involve the Escrow Agent's voting shares of mutual funds that pay fees to the Escrow Agent or its affiliates and that, in voting such shares, the Escrow Agent may be in a position to vote to change fees paid at the mutual fund level to itself or to an affiliate.

4. Income. All income, including interest and dividends, earned on the Escrow Fund (hereinafter called the "Income") shall be added to and held in the Escrow Fund.

5. Disposition of Escrow Fund. The Escrow Agent shall disburse the Escrow Funds in accordance with the provisions of Appendix B attached hereto and incorporated herein.

6. Statements. During the term of this Agreement, the Escrow Agent shall provide Sellers and Purchaser with monthly statements containing the beginning balance in the escrow account as well as all principal and income transactions for the statement period. Sellers and Purchaser shall be responsible for reconciling such statements. The Escrow Agent shall be forever released and discharged from all liability with respect to the accuracy of such statements and the transactions listed therein, except with respect to any such act or transaction as to which Sellers or Purchaser shall, within 90 days after making the statement available, file written objections with the Escrow Agent. Each of Sellers and Purchaser (for purposes of this paragraph, the "Recipient") is aware that Federal Regulations require the Escrow Agent, without charge and within one business day of its receipt of a broker/dealer confirmation for each security transaction in the Escrow Account to forward to Recipient a written notification which discloses, among other things: the Escrow Agent's name, Recipient's name, the capacity (capacities) in which the Escrow Agent is acting, the date (and time, within a reasonable period, upon written request of Recipient) of execution, the identity, price, number of shares or units or principal amount of debt securities purchased or sold by Recipient, the name of the

2

broker/dealer, the amount of any remuneration received by such broker/dealer from Recipient and the amount of any remuneration received by the Escrow Agent. Recipient is also aware that, under the terms of this Agreement, the Escrow Agent will be providing to Recipient periodic statements that include a listing of all securities transactions, receipts and disbursements during the period, together with a current listing of the assets held in the Escrow Account. Recipient shall accept such periodic statements in satisfaction of the Escrow Agent's obligation to provide written notification as described above; provided, that upon Recipient's request, the Escrow Agent will provide to Recipient within a reasonable time and at no additional cost the information required by Federal Regulations.

       7.       <u>Rights and Responsibilities of Escrow Agent.</u>  The acceptance by the Escrow Agent of its duties hereunder is subject to the following terms and conditions, which the parties to this Agreement hereby agree shall govern and control with respect to the Escrow Agent's rights, duties, liabilities and immunities:

       (a)       The Escrow Agent shall act hereunder as an escrow agent only, and it shall not be responsible or liable in any manner whatever for the sufficiency, correctness, genuineness or validity of any document furnished to the Escrow Agent or any asset deposited with it.

       (b)       The Escrow Agent may rely and shall be protected in acting or refraining from acting upon (and shall incur no liability for following the instructions contained therein) any written notice, instruction or request furnished to it hereunder and believed by it to be genuine and to have been signed or presented by the proper party or parties. The Escrow Agent shall be under no duty to inquire into or investigate the validity, accuracy or content of any such document. The Escrow Agent shall have no duty to solicit any payments which may be due to be paid into the Escrow Fund by any party.

       (c)       The Escrow Agent shall not be liable for any action taken or omitted by it unless a court of competent jurisdiction determines that the Escrow Agent's gross negligence or willful misconduct was the primary cause of any loss. In the administration of the escrow account hereunder, the Escrow Agent may execute any of its powers and perform its duties hereunder directly or through agents or attorneys and may consult with counsel, including in-house counsel, accountants and other skilled persons to be selected and retained by it. The Escrow Agent shall not be liable for anything done, suffered or omitted in good faith by it in accordance with the advice or opinion of any such counsel, accountants or other skilled persons, including in-house counsel.

       (d)       Sellers and Purchaser agree to jointly and severally indemnify, defend and hold the Escrow Agent and its affiliates and each of their respective directors, officers, agents and employees (collectively, the "<u>Indemnitees</u>") harmless from and against any and all claims, liabilities, losses, damages, fines, penalties, and expenses, including out-of-pocket and incidental expenses and legal fees and expenses ("<u>Losses</u>") that may be imposed on, incurred by, or asserted against, the Indemnitees or any of them (i) for following any instructions or other directions upon which the Escrow Agent is authorized to rely pursuant to the terms of this Escrow Agreement; or (ii) in connection with or arising out of the Escrow Agent's performance under this Escrow Agreement provided,

with respect to this clause (ii) only, the Indemnitees have not acted with gross negligence or engaged in willful misconduct. Anything in this Escrow Agreement to the contrary notwithstanding, in no event shall the Escrow Agent be liable for special, indirect, incidental, punitive or consequential loss or damage of any kind whatsoever (including but not limited to lost profits), even if the Escrow Agent has been advised of the likelihood of such loss or damage and regardless of the form of action. The provisions of this Section 7(d) shall survive the termination of this Escrow Agreement and the resignation or removal of the Escrow Agent for any reason.

(e)  The Escrow Agent shall have no duties except those specifically set forth in this Agreement and shall not be subject to, nor have any liability or responsibility under, nor be required to make any determination under, any other agreement or document the other parties hereto may be parties to or responsible for, including any determination whether any party thereto has complied with its terms or is entitled to payment thereunder, even if same is referenced herein or copies have been given to the Escrow Agent.

(f)  If, at any time, Escrow Agent is unable to determine, to Escrow Agent's sole satisfaction, the proper disposition of all or any portion of the Escrow Fund or the Escrow Agent's proper actions with respect to its obligations hereunder, or should any dispute arise between the parties hereto and others, or between the parties hereto themselves, it is understood and agreed that the Escrow Agent may petition (by means of an interpleader or any other appropriate measure) any court of competent jurisdiction for instructions with respect to such uncertainty or dispute and the other parties hereto will hold the Escrow Agent harmless and indemnify it against all consequences and expenses that may be incurred by the Escrow Agent in connection therewith, which indemnity shall survive the termination of this Escrow Agreement or the resignation or removal of Escrow Agent.

8.  Compensation.  The fee of the Escrow Agent for its services hereunder shall be paid one-half by Sellers and one-half by Purchaser in the amount of $3,900, payable in full on the date hereof. An additional annual escrow fee of $2,000 (payable one-half by Sellers and one-half by Purchaser) shall be paid to Escrow Agent on each twelve (12) month anniversary of this Agreement to the extent that this Agreement is still in effect as of such date. In addition, the Escrow Agent shall be entitled to reimbursement for all reasonable expenses, disbursements or advances made by it in the performance of its duties hereunder, including counsel fees and court costs incurred pursuant to Section 7(f) or otherwise. The parties hereby grant to Escrow Agent a first priority contractual possessory security interest in and a right of setoff against the Escrow Fund in an amount necessary to secure to Escrow Agent payment of Escrow Agent's fees, expenses and any other amounts owed to Escrow Agent under the terms of this Agreement.

9.  Tax Identification Number; Indemnification as to Taxes, Penalties and Interest.

(a)  All Income accrued in the Escrow Fund on or before Closing (as defined in the Purchase Agreement) shall be held for the account of Purchaser and shall be reported by Purchaser under applicable federal regulations using its tax identification number which is #37-1394610. All Income accrued in the Escrow Fund after Closing

4

PHIL1 2819719v.5

shall be held for the account of Sellers and shall be reported by Sellers under applicable federal regulations using their tax identification numbers which are #20-5430392 (Uniform City) and #20-1190640 (Healthcare Uniform). The Escrow Agent is authorized and directed to report all interest and other income earned on the Escrow Account to the Internal Revenue Service. Federal law may require withholding on earned income in the absence of the Escrow Agent's receipt of a completed and executed W-9 or W-8, as applicable that contains the Tax Identification Number or Employee Identification Number for the aforementioned party.

(b)     Without limiting the generality of any provision of this Agreement, Purchaser and Sellers, jointly and severally, shall indemnify, defend and hold harmless the Escrow Agent against and in respect of any liability for taxes and for any penalties or interest in respect of taxes attributable to Income earned by the Escrow Fund.

10.    Amendment. Except as provided in Section 3(a) above, this Agreement may not be amended or supplemented and no provision hereof may be modified or waived, except by an instrument in writing, signed by all of the parties hereto.

11.    Termination. The purpose of this Agreement and the terms hereof shall terminate when the Escrow Agent in accordance with the terms of this Agreement shall have distributed the entire balance of the Escrow Fund. Upon the termination of this Agreement and upon the delivery of all of the Escrow Fund by the Escrow Agent, in accordance with the terms hereof, the Escrow Agent shall be relieved of any and all further obligations hereunder.

12.    Resignation; Removal.

(a)     The Escrow Agent may resign at any time by giving thirty (30) days written notice of such resignation to Sellers and Purchaser. If no successor Escrow Agent has been named at the expiration of the thirty (30) day period, the Escrow Agent shall have no further obligation hereunder except to hold the Escrow Fund as a depository. Upon joint notification by Sellers and Purchaser of the appointment of a successor, the Escrow Agent shall, upon payment of any and all fees and expenses due to Escrow Agent, promptly deliver the Escrow Fund and all materials in its possession relating to the Escrow Fund to such successor, and the duties of the resigning Escrow Agent shall thereupon in all respects terminate, and Escrow Agent shall be released and discharged from all further obligations hereunder.

(b)     The Escrow Agent may be discharged from its duties as Escrow Agent under this Agreement upon thirty (30) days joint written notice from Sellers and Purchaser and upon payment of any and all fees due to Escrow Agent. In such event, the Escrow Agent shall be entitled to rely on joint instructions from Sellers and Purchaser as to the disposition and delivery of the Escrow Fund.

(c)     In the event of the termination of this Agreement or the resignation or removal of the Escrow Agent, the Escrow Agent shall have the right to retain for itself from the Escrow Fund an amount equal to the compensation due and owing to the Escrow Agent, plus any costs and expenses the Escrow Agent shall reasonably believe

5

may be incurred by the Escrow Agent in connection with the termination of the Escrow Agreement or the transfer of the Escrow Fund.

13. Execution. This Agreement may be executed in several counterparts, each of which shall be deemed an original, but such counterparts together shall constitute one and the same instrument.

14. Miscellaneous. All covenants and agreements contained in this Agreement by or on behalf of the parties hereto shall bind and inure to the benefit of such parties and their respective heirs, administrators, legal representatives, successors and assigns, as the case may be, and all references to such parties herein shall be deemed also to refer to any successors, assigns, heirs, administrators and legal representatives of said parties, as the case may be. Except as provided in Section 7(d), this Escrow Agreement is for the sole benefit of the parties hereto and their permitted assigns and nothing herein, express or implied, is intended to or shall confer upon any other person or entity any legal or equitable right, benefit or remedy of any nature whatsoever under or by reason of this Escrow Agreement. None of the parties may assign its rights under this Escrow Agreement, or assign or delegate its obligations hereunder, without the other parties' prior written consent. The headings in this Agreement are for convenience of reference only and shall neither be considered as part of this Agreement, nor limit or otherwise affect the meaning hereof. This Agreement shall be construed and enforced in accordance with the laws of the Commonwealth of Pennsylvania. This Agreement represents the entire understanding of the parties hereto with respect to the subject matter contained herein and supersedes any and all other and prior agreements between them.

15. Notices. All notices and communications hereunder shall be in writing and shall be deemed to be duly given as of the date sent in the case of registered mail, return receipt requested, or certified mail, postage prepaid, or upon delivery in the case of personal delivery or delivery by overnight courier, or upon successful facsimile transmission as indicated by voice or electronic confirmation to the address below. Notwithstanding anything to the contrary herein, Escrow Agent shall not be bound by any notice unless actually received by Escrow Agent.

(a) If to Sellers:

Healthcare Uniform Company, Inc.
2132 Kratky Road
St. Louis, MO 63114
Attention: Bryan Graiff, Senior V.P. Commercial Sales, I.T. and Logistics
Chief Financial Officer

Phone: (314) 824-2950
Fax: (314) 890-3973
E-mail: bgraiff@lifeuniform.com

6

With a copy to:

Klehr Harrison Harvey Branzburg LLP
919 N. Market Street, Suite 1000
Wilmington, DE 19801
Attention: Domenic E. Pacitti, Esq.

Phone: (302) 426-1189
Fax: (302) 426-9193
E-mail: dpacitti@klehr.com

and

Morgan Joseph TriArtisan LLC
600 Fifth Avenue, 19th Floor
New York, NY 10020
Attention: Alex C. Fisch

Phone: (212) 218-3807
E-mail: afisch@mjta.com

and

CapitalSource Finance LLC
5404 Wisconsin Avenue, Second Floor
Chevy Chase, Maryland 20815
Attention: Walter P. Schuppe
Email: WSchuppe@capitalsource.com

and

Brown Rudnick LLP
One Financial Center
Boston, MA 02111
Attn: Jeffrey L. Jonas, Esq.
Email: jjonas@brownrudnick.com

(b)  If to Purchaser:

Scrubs & Beyond, LLC
823 Hanley Industrial Court
Brentwood, MO 63144
Attention: Karla Bakersmith, President

Phone: (314) 961-9494
Fax: (314) 961-9454
E-mail: kbakersmith@scrubsandbeyond.com

<u>With a copy to</u>:

Ballard Spahr LLP
999 Peachtree Street
Suite 1000
Atlanta, Georgia 30309
<u>Attention</u>: Stephen A. Opler, Esq.

Phone: 678-420-9390
Fax: 678-420-9301
E-mail: oplers@ballardspahr.com

and

Genesis Capital, LLC
3414 Peachtree Road NE
Suite 700
Atlanta, GA  30326
<u>Attention</u>: Jeremy Ellis

Phone: 404-816-7538
Fax: 404-795-0849
Email: jellis@genesis-capital.com

(b)     If to Escrow Agent:

PNC Bank, National Association
620 Liberty Avenue, 7th Floor
Pittsburgh, PA 15222
<u>Attention</u>: Rose Provins

Phone: 412-762-4828
Fax: 800-449-7382
Email: rose.provins@pnc.com

<u>With a copy to</u>:

PNC Bank Legal Department
1600 Market Street, 28th Floor
Philadelphia, PA  19103

*The balance of this page is intentionally left blank.*

8

By signing below, Sellers certify under penalty of perjury that:

a.     The numbers shown in this Agreement are Seller' correct taxpayer ID numbers.

b.     Neither Seller is subject to backup withholding because

(i)     \_\_\_\_X\_\_\_\_\_ is exempt from backup withholding,

(ii)     _____ has not been notified by the Internal Revenue Service ("IRS") that _____ is subject to backup withholding as a result of a failure to report all interest or dividends, or

(iii)     the IRS has notified _____ that _____ is no longer subject to backup withholding.

By signing below, Purchaser certifies under penalty of perjury that:

a.     The number shown in this Agreement is Purchaser's correct taxpayer ID number.

b.     Purchaser is not subject to backup withholding because

(i)     \_\_\_\_X\_\_\_\_\_ is exempt from backup withholding,

(ii)     _____ has not been notified by the Internal Revenue Service ("IRS") that _____ is subject to backup withholding as a result of a failure to report all interest or dividends, or

(iii)     the IRS has notified _____ that _____ is no longer subject to backup withholding.

[Signature pages follow]

IN WITNESS WHEREOF, the parties hereto have duly executed this Escrow Agreement as of the date first above written.

Scrubs & Beyond, LLC

By: /s/ Karla Bakersmith
Name: KARLA BAKERSMITH
Title: President/CEO

823 Hanley Industrial Court
Brentwood, MO 63144

Healthcare Uniform Company, Inc.

By: _____
Name:
Title:

2132 Kratky Road
St. Louis, MO 63114

PNC Bank, National Association

By: _____
Name:
Title:

_____

Uniform City National, Inc.

By: _____
Name:
Title:

2132 Kratky Road
St. Louis, MO 63114

PHIL1 2819719v.5

IN WITNESS WHEREOF, the parties hereto have duly executed this Escrow Agreement as of the date first above written.

**Scrubs & Beyond, LLC**

By: _____
    Name:
    Title:

823 Hanley Industrial Court
Brentwood, MO 63144

**Healthcare Uniform Company, Inc.**

By: *[signature: Bryan Graiff]*
    Name:
    Title:

2132 Kratky Road
St. Louis, MO 63114

**PNC Bank, National Association**

By: _____
    Name:
    Title:

_____
_____

**Uniform City National, Inc.**

By: *[signature: Bryan Graiff]*
    Name:
    Title:

2132 Kratky Road
St. Louis, MO 63114

IN WITNESS WHEREOF, the parties hereto have duly executed this Escrow Agreement as of the date first above written.

| | |
|---|---|
| **Scrubs & Beyond, LLC** | **Healthcare Uniform Company, Inc.** |
| By: _____<br>  Name:<br>  Title: | By: _____<br>  Name:<br>  Title: |
| 823 Hanley Industrial Court<br>Brentwood, MO 63144 | 2132 Kratky Road<br>St. Louis, MO 63114 |
| **PNC Bank, National Association** | **Uniform City National, Inc.** |
| By: *[signature]* _____<br>  Name:<br>  Title: | By: _____<br>  Name:<br>  Title: |
| PNC<br>Institutional Investments<br>1600 Market Street  F2-F070-31-1<br>Philadelphia, PA 19103 | 2132 Kratky Road<br>St. Louis, MO 63114 |

**Appendix A**

Section 3. <u>Investment of Escrow Fund</u>

During the term of this Escrow Agreement, the Escrow Fund shall be invested and reinvested by the Escrow Agent in the following investment:

__X__    PNC Advantage Institutional Money Market #433 (PABXX)

_____ PNC Advantage Govt Money Market #435 (PAVXX)

_____    PNC Advantage Treasury Money Market #434 (PAIXX)

11

PHIL1 2819719v.5

**Appendix B**

Section 5. Disposition of Escrow Fund

The Escrow Agent shall distribute the Escrow Fund as follows:

(a) Upon receipt by the Escrow Agent at any time of joint written instructions signed by Purchaser and Sellers directing the Escrow Agent to pay any amount from the Escrow Fund, the Escrow Agent shall, within five (5) business days of receipt, make payment in accordance with those instructions.

(b) If the Escrow Agent receives an affidavit from an officer of Sellers and an officer of Purchaser stating that the Closing has occurred, the Escrow Agent shall, within five (5) business days of receipt, (i) transfer to Sellers an amount equal to the Escrow Fund (other than any Income earned thereon, which shall be paid to Purchaser), minus an amount equal to $500,000 (the "Current Assets Escrow"), by wire transfer of immediately available funds into an account designated in writing by Sellers, (ii) retain the Current Assets Escrow in accordance with the terms of this Agreement, and (iii) transfer to Purchaser an amount equal to any accrued Income on the Escrow Fund as of such date, by wire transfer of immediately available funds into an account designated in writing by Purchaser.

(c) If the Escrow Agent receives an affidavit from either an officer of Purchaser or an officer of Sellers stating that the Purchase Agreement has been terminated pursuant to paragraphs (a), (b), (d), (e), (f), (g), (h) or (i) of Section 4.4 of the Purchase Agreement, together with evidence that a copy of the affidavit has been delivered to the other party, subject to the terms of clause "(f)" below, promptly upon the expiration of twenty (20) calendar days after receipt by the Escrow Agent of the affidavit, then the Escrow Agent shall pay the entire Escrow Fund (together with all Income earned thereon) to Purchaser.

(d) If the Escrow Agent receives an affidavit from either an officer of Purchaser or an officer of Sellers stating that the Purchase Agreement has been terminated pursuant to paragraph (c) of Section 4.4 of the Purchase Agreement, subject to the terms of clause "(f)" below, promptly upon the expiration of twenty (20) calendar days after receipt by the Escrow Agent of the affidavit, then the Escrow Agent shall pay the entire Escrow Fund to Sellers (other than any Income earned thereon, which shall be paid to Purchaser).

(e) Upon the final determination of Final Closing Current Assets Statement (as defined in the Purchase Agreement), Escrow Agent shall promptly make distribution of the Escrow Fund (which will consist of the Current Asset Escrow and any Income accrued thereon from and after the Closing Date) in accordance with joint written instructions signed by Purchaser and Sellers.

(f) If within the twenty (20) day period described in clause (c) or (d) above, as applicable, the Escrow Agent receives conflicting instructions in affidavits from an officer of Sellers and an officer of Purchaser, the Escrow Agent shall hold the Escrow

12

PHIL1 2819719v.5

Fund until receipt of either (i) an affidavit signed by an officer of Sellers and an officer of Purchaser directing the disposition of the Escrow Fund or (ii) a certified copy of a final, non-appealable order of a court of competent jurisdiction ordering the Escrow Agent to dispose of the Escrow Fund. Within five (5) business days of receipt of any such affidavit or order, the Escrow Agent shall promptly comply with its terms.



## SCHEDULE OF AUTHORIZED INDIVIDUALS
(for Escrows/Settlement Trusts)

### PURSUANT TO AGREEMENT

Dated May 29, 2013

BETWEEN

### HEALTHCARE UNIFORM COMPANY, INC., UNIFORM CITY NATIONAL, INC., SCRUBS & BEYOND, LLC
(Insert Name of Escrow/Settlement Trust Account)

AND
**PNC BANK, NATIONAL ASSOCIATION AS ESCROW AGENT**

FOR

HEALTHCARE UNIFORM COMPANY, INC. and UNIFORM CITY NATIONAL, INC.,

(Insert Name of Escrow Party for which this Signature List applies – multiple signature lists are required if directions from multiple parties are required under the governing agreement)

The following named individual(s) is/are authorized and empowered to direct PNC Bank, National Association as to the opening of Escrow accounts, authorizing and executing governing agreements, notices, certifications, documents, instructions for disbursement, transfer and investment of funds, and any other instructions or communications required in connection with the above named Escrow account.

Only one authorized signer is required from each party unless the governing document stipulates otherwise.

| | | | |
|---|---|---|---|
| Bryan Graiff | CFO | 314.824.2950 | _bgraiff@lifeuniform.com_ |
| Print Name | Title | Phone Number | E-Mail Address |
| Robert Frezza | CRO | 973-271-2464 | rfrezza@capstoneag.com |
| Print Name | Title | Phone Number | E-Mail Address |

** Above information is **required** for all authorized individuals **

This authorization will remain in effect until revoked or amended in writing.

HEALTHCARE UNIFORM COMPANY, INC.
UNIFORM CITY NATIONAL, INC.,

By: _____ /s/ Bryan Graiff _____            Date   May 29, 2013
    Bryan Graiff, CFO