**Exhibit A**
**Capstone Agreement**

CAPSTONE ADVISORY GROUP, LLC
104 West 40th Street
16th Floor
New York, NY 10018

212 782 1400  tel
212 782 1479  fax

capstoneagp.com



restructuring \ litigation \ valuation

### *Confidential*

**Engagement Letter**

Effective as of May 29, 2013

Mr. Bryan Graiff
Chief Operating Officer
Life Uniform Holding Corp.
St. Louis, Mo. 63114

### *Re: Retention of Robert J. Frezza and Capstone Advisory Group, LLC*

Dear Bryan:

This letter agreement (the "Agreement") confirms the terms under which Life Uniform Holding Corp. (as currently constituted, the "Company," and with its affiliated debtors-in-possession in the event of a bankruptcy filing, the "Debtors" or "you") has engaged Robert J. Frezza ("Mr. Frezza") of Capstone Advisory Group, LLC (together with its wholly-owned subsidiaries, collectively, "Capstone", and, with Mr. Frezza, "we") as Chief Restructuring Officer ("CRO"), effective as of May 29, 2013 (the "Effective Date"). The CRO's engagement team will include professional staff from Capstone (the "Capstone Personnel"). The CRO and Capstone Personnel will provide services (as set forth herein) to the Company in connection with anticipated chapter 11 filing of the Company and the Debtors in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

1.    **Services.**    Capstone will assign Mr. Frezza to serve as the Debtors' CRO and assign the Capstone Personnel to perform other services required of the CRO to assist the CRO in the performance of his duties, as set forth in this Agreement. Mr. Frezza will report to the Debtors' board of directors and perform duties in the ordinary course as the Debtors' CRO, including, but not limited to, providing daily leadership to the Company and the Debtors on restructuring matters and activities related to the Debtors' chapter 11 cases (the "Cases"). Pursuant to this Agreement, Mr. Frezza with the assistance of the Capstone Personnel will provide the following services, among others, to the Company or Debtors (and report to the Debtors' board of directors):

150525/001-4132733.3

150525/001-4132733.8

a) Oversee the Debtors' operations;

b) Oversee the Debtors' analysis and reporting of their historical, current and projected financial affairs, including, monthly operating reports, schedules of assets and liabilities and statement of financial affairs;

c) Oversee the execution of any debtor-in-possession financing arrangements and/or use of cash;

d) Manage the Debtors' operations on an ongoing basis;

e) Advise and assist the Debtors and their counsel in reviewing and evaluating any court motions, applications or other forms of relief filed or to be filed by the Debtors, or any other parties-in-interest;

f) Provide information deemed by the CRO to be reasonable and relevant to stakeholders;

g) Develop strategies to maximize recoveries from the Debtors' assets and advise and assist the Debtors' management with such strategies;

h) Assist, as may be requested by the Debtors' investment banker, Morgan Joseph TriArtisan LLC, in managing the sale processes and assessing the reasonableness of consideration received;

i) Attend meetings and court hearings as may be required in the role of advisors to the Debtors;

j) Render such other general business consulting or such other assistance as the Debtors or their counsel may deem necessary that are consistent with the role of a CRO;

k) To the extent reasonably requested by the Debtors, give testimony before the Bankruptcy Court with respect to the services provided by the CRO and the Capstone Personnel, and participate in depositions, including by providing deposition testimony, related thereto; and

l) Other potential services, including, but not limited to: preparing and issuing expert reports; or performing litigation support or forensic or analytical work that has not yet been identified but may be requested from time to time by the Debtors or their counsel.

In addition to these specific services, we understand that we may be requested to participate, at your request and to the extent appropriate, in meetings and discussions with the Debtors' creditors committee and secured lenders, and the other parties-in-interest in the Cases and with their respective professionals.

The Company agrees that (i) Mr. Frezza will provide services as CRO as required, and (ii) the CRO may retain Capstone Personnel as additional personnel to assist the CRO in the performance of his duties on behalf of the Company or the Debtors. The Company agrees that the CRO will continue as a member and executive director of Capstone, and the Capstone Personnel will continue as employees of Capstone and may continue to provide services to other companies during the term of this Agreement. The Company acknowledges that since the CRO is a member and executive director

CAPSTONE ADVISORY GROUP, LLC                                        restructuring \ litigation \ valuation

Page 3

of Capstone that Capstone must release the CRO from his full-time obligations to Capstone in order for the CRO to perform hereunder and therefore to compensate Capstone for the loss of full-time access to the CRO or any other Capstone personnel providing services hereunder, all payments for the time charges of the CRO or any other Capstone Personnel providing services hereunder to the Company or the Debtors shall be made to Capstone. The CRO and Capstone Personnel who provide services to the Company under this Agreement are independent contractors and are not, and will not be deemed to be employees of the Company. Capstone shall be solely responsible for the payment of all federal, state, and local taxes and all appropriate withholdings, the payment or provision of any unemployment insurance benefits, state disability benefits, workers' compensation insurance, vacation, overtime or holiday pay, health, medical, dental or group insurance and other employee benefits for the CRO and Capstone Personnel, and shall indemnify the Company against any liabilities related to or arising from such matters. NOTWITHSTANDING ANYTHING CONTAINED HEREIN TO THE CONTRARY, IN THE EVENT THAT THE CONSULTING ARRANGEMENT HEREUNDER IS RECLASSIFIED TO BE AN EMPLOYMENT ARRANGEMENT BY ANY GOVERNMENTAL AGENCY OR COURT OF COMPETENT JURISDICTION, THE CRO SHALL NOT SEEK TO PARTICIPATE IN OR BENEFIT FROM ANY OF THE COMPANY'S EMPLOYEE BENEFIT PLANS OR PROGRAMS AS A RESULT OF SUCH RECLASSIFICATION. If necessary as a result of resignations of current officers and directors of the Company, the CRO or other Capstone Personnel shall agree to serve as officers of the Company and as directors of the Debtors.

We will work closely together and communicate regularly with Morgan Joseph TriArtisan LLC and Klehr Harrison Harvey Branzburg LLP to avoid any duplication of services.

2.    **Work Product.**    We will submit our evaluations and analyses pursuant to this engagement in periodic oral or written reports. Before submitting our reports to you, it may be necessary and appropriate for us to review certain information with management for accuracy and validity. Written reports will not be given to the third parties without your prior approval.

3.    **Company Cooperation.**    In order for us to perform our services, it will be necessary for the CRO and Capstone Personnel to have access to certain books, records and reports of the Company, and have discussions with its personnel and other advisors. Accordingly, we assume that the Company has agreed to cooperate with The CRO and Capstone Personnel, and to make available its personnel and any books, records and other sources from which data can be obtained.

4.    **Effect on Operations.**    We will perform our services in a manner which, we believe, will permit the business operations of the Company and Debtors to proceed in an orderly manner, subject to the requirements of this engagement; our personnel may need to be on site to review data located at the offices of the Company and to discuss matters with their personnel.

5.    **Disclaimers regarding Verification, Audit, Reliance, Scope and Update.**    Our reports will encompass only matters that come to our attention in the course of our work that we perceive to be significant in relation to the objectives of our engagement. Because of the time and scope limitations

150525/001-4132733.8

implicit in our engagement and the related limitations on the depth of our analyses and the extent of our verification of information, we may not discover all such matters or perceive their significance. Accordingly, we will be unable to and will not provide assurances in our reports concerning the integrity of the information used in our analyses and on which our findings and advice to you may be based. We understand, and you acknowledge, that we are not being requested to perform an audit nor apply generally accepted auditing standards or procedures. We understand, and you acknowledge, that we are entitled, in general, to rely on the accuracy and validity of the data disclosed to us or supplied to us by employees and representatives of the Company. We will not, nor are we under any obligation to, update data submitted to us or review any other areas unless you specifically request us to do so.

6.   **Level-of-Effort.**   Our work will be performed on a "level-of-effort" basis; that is, the circumstances of our engagement may cause our advice to be limited in certain respects based upon, among other matters, the extent of sufficient and available data and the opportunity for supporting investigations in the time period.

7.   **Company Engagement.**   Mr. Frezza is providing services, both individually and using Capstone and Capstone Personnel, as the Company's or the Debtors' CRO, and neither Frezza, Capstone nor any of the Capstone Personnel is providing any services on behalf of the individual stockholders, directors, officers, agents, representatives or other stakeholders of the Company. To the extent any issue arises as to the scope, nature or substance of Capstone's analysis, Capstone and the Company, with the advice of KLEHR HARRISON HARVEY BRANZBURG LLP, as counsel to the Company (the "Company Counsel"), shall in good faith work to mutually resolve such issue.

8.   **Client Confidentiality.**   We understand that the Company has agreed to treat any information received from Capstone, whether orally or in writing, with the utmost confidentiality and, except as provided in this letter, will not publish, distribute or disclose in any matter any information developed by or received from us without our prior or written approval. Such approval shall not be unreasonably withheld. Our approval is not needed if (a) the information sought is required to be disclosed by an order binding on the Company, Company Counsel, the CRO or Capstone, issued by a court having competent jurisdiction over Capstone (unless such order specifies that the information to be disclosed is to be placed under seal) or (b) such information is otherwise publicly available.

If access to any of the materials in our possession relating to this engagement is sought by a third party, we will promptly notify you and Company Counsel of such action, tender to you our defense responding to such request and cooperate with you concerning our response thereto and not tender such materials unless and to the extent counsel advises us is legally required. In the event that we are subpoenaed as the result of any work performed for you in connection with this engagement, you agree that we are entitled to be compensated by the Company for our time (and our expenses, including without limitation attorneys' fees) involved in responding to such subpoena(s).

150525/001-4132733.8

CAPSTONE ADVISORY GROUP, LLC                                   restructuring \ litigation \ valuation

Page 5

9.    **Capstone Confidentiality.** We agree that all information, not publicly available, which is received by us from the Company in connection with this engagement, will be treated confidentially by Capstone, except as required by process of law or as authorized by you.

10.   **Fees and Expenses.**    In consideration of Capstone's acceptance of this engagement and performance of services pursuant to this Agreement, the Debtors shall pay, subject to our filing the appropriate fee statements and staffing reports with the Bankruptcy Court and, where necessary, obtaining an order of the Bankruptcy Court, the following:

Our fees will be based on the actual hours charged at our standard hourly rates, which are in effect when the services are rendered; our rates are revised annually on or around January 1.  The current rates charged by Capstone professionals under this Agreement are as follows:

| | |
|---|---|
| Executive Directors | $575 - $830 |
| Managing Directors | $475 - $640 |
| Directors | $350 - $450 |
| Consultants | $240 - $340 |
| Support staff | $120 - $305 |

The rates for the Capstone professionals anticipated to be assigned to this engagement are as follows: Robert Frezza ($760), Peter Chadwick ($760), John Rooney ($595) and Adam Chonich ($390).

However, as discussed and agreed to with the Debtors, for purposes of this engagement, and with respect to the services to be provided under this Agreement we have agreed to:

  a)  An aggregate cap on our fees at $450,000 for the first three months of the engagement,

  b)  An aggregate cap on our fees at $650,000 for the first 5 months of the engagement,

  c)  An aggregate monthly cap on our fees of $50,000 commencing the sixth month and thereafter unless an alternative arrangement is otherwise agreed to with the Debtors.

In addition, we will be reimbursed for our reasonable out-of-pocket expenses including, but not limited to, travel and lodging expenses, costs of reproduction, research, communications, our legal counsel (including, but not limited to, its review of this Agreement and anything else directly or indirectly, caused by, related to, based upon, arising out of, or in connection with this Agreement or the engagement described in it, whether concerning a potential or existing contract, tort, or any other matter or issue), any applicable sales or excise taxes and other direct expenses.

We will submit to the Bankruptcy Court monthly fee applications for all services rendered and expenses incurred during the prior month, as well as interim and final fee applications.  It is our

150525/001-4132733.8

understanding that all invoices will be paid by the Company or the Debtors, subject to the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and the local rules of the Bankruptcy Court with jurisdiction, and pursuant to any additional procedures that may be established by the Bankruptcy Court specific for this matter.

The fees earned by Capstone shall generally be used to fund Capstone's operating costs and will be shared among its employees, members and independent contractors, if any, in accordance with applicable agreements, including but not limited to "at will" employee arrangements, and in accordance with Capstone's operating agreement, as the case may be.

11.    **Indemnification.**    In connection with our engagement to provide the services set forth herein to the Company, the Company agrees to indemnify and hold Capstone harmless against any and all losses, claims, damages, liabilities, penalties, judgments, awards, costs, fees (including, but not limited to attorneys' fees), expenses and disbursements including, without limitation, the defending of any action, suit, pre-proceeding investigations, proceedings or investigation (whether or not in connection with a proceeding or litigation in which Capstone is a party), directly or indirectly, caused by, related to, based upon, arising out of or in connection with the Company's engagement of Capstone or any services rendered pursuant to such engagement, unless there is a final, non-appealable order of a court of competent jurisdiction, finding Capstone directly liable for gross negligence or willful misconduct. The foregoing indemnification obligations of the Company shall survive any termination of this Agreement or confirmation of a plan of reorganization or liquidation by the Bankruptcy Court. These indemnification provisions extend to the Capstone Personnel and other members, employees, representatives, agents, counsel and affiliates of Capstone. All requests for payment of indemnity provided herein shall be made by means of an application and review of the Bankruptcy Court in accordance with an order of the Bankruptcy Court approving the Company's engagement of Capstone. We acknowledge that the Company's individual employees shall not have any liability hereunder for the indemnification in favor of Capstone by the Company.

Additionally, it is a condition of the CRO's retention as an officer of the Company that the Company enter into an indemnification agreement with him in the form attached hereto as Exhibit A (the "Indemnification Agreement").

12.    **General.**

    (a)    The Company shall use its best efforts to cause the Debtors to take responsibility for all the obligations of the Company under this Agreement, including without limitation Section 11 above and the Indemnification Agreement.

    (b)    Notwithstanding anything to the contrary contained herein, Capstone shall have the right to disclose its retention and/or the successful completion of its services hereunder in advertisement describing its services placed, at its own expense, in financial and other newspapers, on Capstone's website or otherwise.

150525/001-4132733.8

CAPSTONE ADVISORY GROUP, LLC                                     restructuring \ litigation \ valuation

Page 7

(c)     The interpretation and application of the terms of this Agreement shall be governed and construed in accordance with the laws of Delaware, excluding (to the greatest extent a court of such state would permit) any rule of law that would cause application of the laws of any jurisdiction other than the law of the state so specified. The parties consent to the jurisdiction of any federal and state court sitting in the City of Wilmington, State of Delaware (including the Bankruptcy Court) for any disputes directly or indirectly, caused by, related to, based upon, arising out of, or in connection with this Agreement, whether concerning a potential or existing contract, tort, or any other matter or issue.

(d)     The waiver by any party and the breach of any of the provisions of this Agreement shall not operate or be construed as a waiver of any subsequent breach hereof.

(e)     The Company has all necessary right, power and authority to enter into and perform this Agreement and the Indemnification Agreement.  Each of this Agreement and the Indemnification Agreement constitutes the valid and legally binding obligation of such party, enforceable against such party in accordance with its respective terms.

(f)     The execution, delivery and performance by the Company of this Agreement and the Indemnification Agreement will not, with or without the giving of notice or the passage of time or both, (a) violate the provisions of any law, rule or regulation applicable to The Company, (b) violate any judgment, decree, order or award of any court, governmental body or arbitrator applicable to the Company or (c) conflict with or violate any agreement to which the Company is a party or by which it is bound.

(g)     This Agreement shall be binding upon and inure to the benefit of the parties and their respective successors, assigns, legal representatives, executors, administrators and heirs. The CRO and Capstone may not subcontract or assign this Agreement or any rights or obligations hereunder to any person (other than Capstone or Capstone Personnel) without the prior written consent of the Company.

(h)     Each of the provisions of this Agreement is a separate and distinct agreement and independent of all others, so that if any provision hereof shall be held to be invalid or unenforceable for any reason, such invalidity or enforceability shall not affect the validity or enforceability of any other provisions hereof.

(i)     This Agreement may be executed simultaneously in two or more counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same instrument. Signatures delivered via PDF or facsimile shall have the same force and effect as an original signature page.

150525/001-4132733.8

CAPSTONE ADVISORY GROUP, LLC

restructuring \ litigation \ valuation

Page 8

(j)    IN NO EVENT SHALL THE CRO, CAPSTONE OR CAPSTONE PERSONNEL BE LIABLE FOR ANY SPECIAL, INCIDENTAL, INDIRECT, OR CONSEQUENTIAL DAMAGES OF ANY KIND IN CONNECTION WITH THIS AGREEMENT.

(k)    Nothing in the agreements, terms, and understandings set forth in this Agreement shall be construed to give any benefit or benefits to any person or entity, whether in their individual capacity or otherwise, other than the Company and the Debtors, which are the only intended beneficiaries hereunder.  Other Sections of this Agreement and the full contents thereof, whether specifically-worded or otherwise, are subordinate to this Section and shall not be construed in any way to make any person or entity, whether in their individual capacity or otherwise, other than the Company and the Debtors, intended beneficiaries under this Agreement, the parties' express intent being that only the Company and the Debtors are intended beneficiaries; and, without limiting the foregoing, the parties agree that this Agreement does not create an agency, fiduciary, or third party beneficiary relationship between Capstone and all or any of the respective affiliates or creditors of the Company or the Debtors, or any other person.  Reference to the Company and the Debtors in this Section shall not be construed to include any of their respective successors, assigns, affiliates, stakeholders or parents, whether direct or indirect, and whether presently existing or otherwise.  Our services are limited to those specifically provided in this Agreement, or subsequently agreed upon in writing, by the parties hereto.  We shall have no obligation or responsibility for any other services.  Mr. Frezza, Capstone and the Capstone Personnel are providing services hereunder as independent contractors.

(l)    In performing its services described in this Agreement, Capstone is not assuming any responsibility for the decisions of the Company or the Debtors to pursue, or not to pursue, any business plan or strategy, which decisions shall be made by the Company or the Debtors in their sole discretion.

13.    **Conflicts.**    We confirm that to the best of our knowledge no member, employee or independent contractor of Capstone has any financial interest or business connection with the Debtors and, as more fully described in Mr. Frezza's affidavit in support of the approval of Capstone as CRO by the Debtors, we are aware of no matter that would constitute a conflict in connection with this engagement.  Capstone has represented, currently represents and in the future will likely represent certain entities that are involved in these Cases, including members of the creditors committee, claimants or interest holders of the Debtors, their subsidiaries and affiliates, in matters wholly unrelated to the Debtors, their Cases or such parties' claims against or interest in the Debtors.  In addition, Capstone sometimes represents formal and ad hoc committees of creditors and interest holders in bankruptcy and other financial restructuring matters.  Accordingly, we believe that such representations have no bearing on the services for which Capstone is being asked to perform in these Cases.  Capstone will not advise any of these entities with respect to the Cases or have any relationships with any such entities that would be adverse to the interests of the Debtors.

14.    **Document Policy.**    Pursuant to Capstone's document retention policy, in general, short-term documents will be destroyed when, in Capstone's sole discretion, they are no longer needed (such as

150525/001-4132733.8

when a draft report has been superseded or if the information is available publicly or from the Company). Ongoing client files generally will be retained, in either hard copy or electronic format, for six (6) months following the conclusion of our engagement or for longer periods as required by applicable legal proceedings, after which time you will be provided written notice that the file will be scheduled for destruction. You may obtain copies of all or any portion of your file at any time prior to its destruction.

15.     **Termination.** We understand that you may terminate the engagement under this Agreement on thirty days prior written notice provided that Sections 8, 9, 10, 11 and 15 will survive any termination of the engagement under this Agreement. If you terminate this engagement, the Company will not be held responsible for fees that accrued after the effective date of termination, other than those fees and expenses related to any requirement to testify at any administrative or judicial proceeding related to this matter or perform related investigation as specified above.

16.     **Modification.** This Agreement (a) constitutes the entire agreement of the parties with respect to the subject matter hereof and supersedes any other communications, understandings or agreements (both written and oral) among parties with respect to the subject matter hereof, and (b) may be modified, amended or supplemented only by written agreement among all the parties hereto.

It is our intention to work closely with the Company and to discuss our engagement regularly. This should facilitate our progress and serve to confirm or modify the scope of our engagement on an ongoing basis.

We thank you for choosing us to advise the Company, and look forward to working with you on this engagement.

*[Signature Page Follows]*

CAPSTONE ADVISORY GROUP, LLC                                        restructuring \ litigation \ valuation

Page 10

Please sign and return a copy of this Agreement signifying your agreement with the terms and provisions herein.  If you have any questions, please call Peter Chadwick at (202) 507-7101 or Robert J. Frezza (201) 587-7123.

Very truly yours,

**Capstone Advisory Group, LLC**

Accepted and agreed to as of the Effective Date:

**CAPSTONE ADVISORY GROUP, LLC**

By: _____

Robert J. Frezza
Executive Director and Member of Capstone Advisory Group, LLC

**Life Uniform Holding Corp.**

By: _____

Mr. Bryan Graiff
Chief Operating Officer

Signature Page to Engagement Agreement
150525/001-4132733.3

150525/001-4132733.8

EXHIBIT "A"

INDEMNIFICATION AGREEMENT

This Agreement (the "Indemnification Agreement") is made as of the 29 day of May, 2013 by and between Life Uniform Holding Corp. (the "Company"), and Robert J. Frezza ("Frezza") and Capstone Advisory Group, LLC (together with its subsidiary, Capstone Management Services, LLC, and its other subsidiaries, "Capstone"). Frezza, Capstone, and their respective agents, members, officers, employees, independent contractors, representatives and affiliates are referred to herein as the "Indemnitees".

Under the retention/engagement letter to which this Indemnification Agreement is appended (the "Engagement Agreement"), Frezza is considering serving as the Chief Restructuring Officer ("CRO") of the Company and retaining the services of Capstone and Capstone's agents, members, officers, employees, independent contractors, representatives and affiliates (collectively, the "Capstone Personnel") to assist him with his duties. The Bylaws of the Company (the "Bylaws") provide certain indemnification rights to officers, directors, and certain other persons under certain circumstances  to the fullest extent authorized by, and subject to the conditions and (except as provided therein) procedures set forth in the Delaware General Corporation Law, as the same exists or may hereafter be amended ("Delaware Company Law").   Delaware Company Law provides that the indemnification provisions contained therein are not exclusive, and contemplates that contracts may be entered into between the Company and its directors, officers and agents (including without limitation a CRO), with respect to indemnification of such directors, officers or agents.

Frezza and Capstone have indicated their concern that, regardless whether the indemnities available under the Bylaws and the Engagement Agreement are adequate to protect them and the Capstone Personnel against the risks associated with their service to the Company, Frezza and Capstone wish further assurances from the Company for the Indemnitees in this regard.  The parties acknowledge that Frezza and certain Capstone Personnel will continue to be agents, members, officers, employees, independent contractors, representatives or affiliates of Capstone, which may also be engaged as an agent of the Company.  However the parties also recognize that services as an officer of the Company may be recharacterized from time to time as services as an agent of the Company and it is necessary to protect the CRO and Capstone Personnel, as individuals, and Capstone for liabilities relating to such recharacterized services.  In order to induce Frezza and Capstone to agree to serve as an officer or agent, respectively, and in consideration of Frezza' and Capstone's service after the date hereof, the parties hereby agree as follows:

1.      (a)      If Frezza, Capstone or any of the other Indemnitees are, or are threatened to be made, a party to or participant in any action, suit, alternative dispute resolution process, or proceeding, whether civil, criminal, administrative or investigative, including without limitation pre-proceeding investigations and discovery (the "proceeding"), by reason of the fact that such Indemnitee is or was a director, officer, employee or agent of the Company or is or was serving at the request of the Company as a director, officer, employee or agent of another corporation, limited liability company, partnership, joint venture, trust or other enterprise, including service with respect to

employee benefit plans, the Company shall indemnify and hold harmless the Indemnitees to the fullest extent authorized by the Delaware Company Law against all costs, expenses, liabilities, judgments and losses (including without limitation reasonable attorneys' fees, judgments, fines, excise taxes or penalties under the Employee Retirement Income Security Act of 1974, as amended) and amounts paid or to be paid in settlement of any proceeding, reasonably incurred or suffered by the Indemnitees in connection therewith.

(b)      Prior to execution of this Indemnification Agreement, the Company furnished to the Indemnitees a true, correct and complete copy of the Directors, Officers and Corporate Liability Insurance Policy (the "Policy") issued to the Company by its insurers (collectively, the "Insurer"). The Company represents that the Policy is in full force and effect and that, to the best of the Company's knowledge, (i) no event has occurred that constitutes or, with the passage of time or notice would constitute, an event of default thereunder or that would otherwise give the Insurer any right to cancel the Policy and (ii) there are no pending claims which have been made against the Policy. Promptly following the execution of this Indemnification Agreement the Company shall notify the Insurer of the appointment of the CRO or any Capstone Personnel as CRO or as another officer of the Company.    The Company shall cause its insurance broker to send copies of all documentation regarding the Policy, including without limitation any renewal or cancellation thereof, to the attention of the CRO at Capstone Advisory Group LLC, Park 80 West, 250 Pehle Avenue, Suite 105, Saddle Brook, NJ 07663. The Company (I) shall maintain directors and officer's liability insurance coverage covering each director, officer, employee or agent comparable as to terms and amounts as that provided under the Policy for as long as (x) Frezza or any of the Capstone Personnel serves as CRO or as a director, officer, employee or agent of the Company or (y) Capstone is engaged by the Company, whichever is longer, and (II) shall use commercially reasonable efforts to obtain an endorsement of the Policy to provide coverage for each of Frezza and any of the Capstone Personnel who serve as a director, officer, employee or agent of the Company. Upon any cancellation or non-renewal of the Policy (or substitution for the Policy), the Company shall promptly notify the CRO and Capstone. For a period of at least one year after Frezza or Capstone ceases to serve as a director, officer, employee or agent of the Company, whichever is later, the Company shall either (1) maintain directors and officer's liability insurance coverage covering former directors, officers, employees and agents (including the CRO and applicable Capstone Personnel) comparable as to terms and amounts as that provided under the Policy, or (2) purchase and maintain a tail policy or other policy specifically covering the Indemnitees that is comparable as to terms and amounts as that provided under the Policy. Any coverage and policies required to be maintained by the Company under this Section 1(b) shall be obtained from an insurer with a rating from a nationally recognized rating agency not lower than that of average rating of the insurers constituting the Insurer.

2.      The Company shall (within 20 days of written request made by the Indemnitees) pay to the Indemnitees all reasonable costs and expenses (including, but not limited to, reasonable attorneys, accountants, investment or other advisor and expert witness fees) incurred by the Indemnitees or reasonably anticipated to be incurred by the Indemnitees in defending any such proceeding in advance of its final disposition; provided that (i) each of Frezza and Capstone hereby agrees (which agreement shall be self-executing

2

through acceptance of payment) to reimburse the Company for all costs and expenses advanced by the Company in defending any proceeding against Frezza or Capstone, respectively, in the event and only to the extent that it shall ultimately be determined by a court of competent jurisdiction that such person was not entitled to be indemnified by the Company for such expenses under the provisions of the Delaware Company Law, this Indemnification Agreement or otherwise at the time the costs and expenses were advanced, and (ii) each of the other Indemnitees shall agree at the time of receipt of such payment of costs or expenses (which agreement shall be self-executing through acceptance of such payment) to reimburse the Company for all costs and expenses advanced by the Company in defending any proceeding against such Indemnitee in the event and only to the extent that it shall ultimately be determined by a court of competent jurisdiction that such person was not entitled to be indemnified by the Company for such expenses under the provisions of the Delaware Company Law, this Indemnification Agreement or otherwise at the time the costs and expenses were advanced.

3.    If the Company does not respond to a written claim for any payment (including advancement of expenses) under this Indemnification Agreement within forty five (45) days of having received such a claim, it shall be deemed to have waived any right to refuse to pay such claim under this Indemnification Agreement. In addition, if a claim under this Indemnification Agreement is not paid by the Company, or on its behalf, within forty five (45) days after a written claim has been received by the Company, the Indemnitees may at any time thereafter bring suit against the Company and the Company shall have the burden of proving that the Indemnitees are not entitled to payment under this Indemnification Agreement. If successful in whole or in part, the Indemnitees shall be entitled to be paid all expenses (including reasonable attorneys' fees and expenses) of prosecuting such claim together with interest at Prime Rate (as defined below) per annum from the date the expenses were paid by the Indemnitees. "Prime Rate" means the rate of interest per annum quoted in the "Money Rates" section of The Wall Street Journal from time to time and designated as the "Prime Rate". If such prime rate, as so quoted, is split between two or more different interest rates, then the Prime Rate shall be the highest of such interest rates.

4.    In the event of payment to the Indemnitees under this Indemnification Agreement, the Company shall be subrogated to the extent of such payment to all of the rights of recovery of the Indemnitees (and their respective successors, assigns, executors, administrators, legal representatives and heirs), who shall execute all documents and take all actions reasonably requested by the Company to implement such right of subrogation, including cooperating in the prosecution of any subrogation action in the name of Indemnitees.

5.    The Company shall not be liable under this Indemnification Agreement to make any payment to or on behalf of the Indemnitees:

(a)    for which payment is actually made to or on behalf of the Indemnitees under a valid and collectible insurance policy;

(b)    based upon liability for a claim arising from a final adjudication by a court of competent jurisdiction that the Indemnitees are liable to the Company; provided

3

that if and to the extent that the court in which such action or suit giving rise to such adjudication of liability was brought shall determine upon application that, despite the adjudication of liability but in view of all the circumstances of the case, the Indemnitees are fairly and reasonably entitled to indemnity for such expenses as such court shall deem proper, the Company shall indemnify the Indemnitees for such expenses;

(c)     on account of the Indemnitees' conduct which is finally adjudged in a court of competent jurisdiction to have been knowingly fraudulent, deliberately dishonest, grossly negligent or willful misconduct; or

(d)     for which advancement or indemnification under this Indemnification Agreement is determined finally by the Delaware Court of Chancery or any court in which the proceeding was brought shall determine upon application that Indemitee is not entitled to such advancement or indemnity.

6.     Within five business days after receipt by the Indemnitees of notice of the commencement of any proceeding, the Indemnitees will, if a claim in respect thereof is to be made against the Company under this Indemnification Agreement, notify the Company of the commencement thereof; but the omission so to notify the Company will not relieve the Company from any liability which it may have to the Indemnitees otherwise than under this Indemnification Agreement except to the extent that the Company is prejudiced by such delay.  With respect to any such action, suit or proceeding as to which the Indemnitees notify the Company of the commencement thereof;

(a)     the Company will be entitled to participate therein at its own expense;

(b)     Except as otherwise provided below, to the extent that it may wish, the Company jointly with any other indemnifying party similarly notified will be entitled to assume the defense thereof, with counsel reasonably satisfactory to the Indemnitees.  After notice from the Company to the Indemnitees of its election so to assume the defense thereof, the Company will not be liable to the Indemnitees under this Indemnification Agreement for any legal or other expenses subsequently incurred by the Indemnitees in connection with the defense thereof other than reasonable costs of investigation or as otherwise provided below.  The Indemnitees shall have the right to employ their counsel in such action, suit or proceeding, but the fees and expenses of such counsel incurred after notice from the Company of its assumption of the defense thereof shall be at the expense of the Indemnitees unless (i) the employment of counsel by the Indemnitees has been authorized in writing by the Company, or (ii) the Indemnitees shall have reasonably concluded, upon the written advice of counsel, that there may be a conflict of interest between the Company and the Indemnitees in the conduct of the defense of such action or (iii) the Company shall not in fact have employed counsel reasonably satisfactory to Indemnitees to assume the defense of such action, in each of which cases the fees and expenses of counsel shall be at the expense of the Company.  The Company shall not be entitled to assume the defense of any action, suit or proceeding brought by or on behalf of the Company or as to which the Indemnitees shall have made the conclusion provided for in (ii) above; and

4

(c)    the Company shall not be liable to indemnify the Indemnitees under this Indemnification Agreement for any amounts paid in settlement of any action or claim effected without its written consent, provided such claim is filed within the applicable statute of limitations.    The Company shall not settle any action or claim without the Indemnitees' written consent.    Neither the Company nor the Indemnitees shall unreasonably withhold consent to any proposed settlement.

7.    All agreements and obligations of the Company contained herein shall continue during the period any of Frezza, Capstone or the Capstone Personnel is serving in any of the capacities referred to in Section 1 hereof and shall continue thereafter so long as the Indemnitees or their respective successors, assigns, executors, administrators, legal representatives or heirs could be subject to any possible claim or threatened, pending or completed proceeding by reason of the fact that the Indemnitees was serving in any of such capacities.    The Indemnitees shall be third party beneficiaries of this Indemnification Agreement with the right to enforce this Indemnification Agreement.

8.    (a)    Any notice or other communication under this Indemnification Agreement shall be in writing and shall be deemed given when delivered personally or mailed by certified mail, return receipt requested, to the parties as follows:

If to the Company:

Life Uniform Holding Corp.
2132 Kratky Road
St. Louis, Mo. 63114
Attention: Bryan Graiff
Fax:            314-890-3973

If to the Indemnitees:

Robert J. Frezza
Capstone Advisory Group, LLC
Park 80 West
250 Phele Avenue, Suite 105
Saddle Brook, NJ 07663
Fax:            201-587-7102

With a copy to:

Hahn & Hessen LLP
488 Madison Avenue
New York, NY 10022
Attention:    James Kardon
Fax:            212-478-7400

or to such other address or person as any party hereto may specify by notice to the other.

5

(b)     The waiver by any party and the breach of any of the provisions of this Indemnification Agreement shall not operate or be construed as a waiver of any subsequent breach hereof.

(c)     This Indemnification Agreement shall be binding upon and inure to the benefit of the parties and their respective successors, assigns, executors, administrators, legal representatives and heirs.

(d)     This Indemnification Agreement shall be governed by and construed in accordance with the internal laws of the State of Delaware without regard to conflict of law provisions.

(e)     Each of the parties hereto submits to the jurisdiction of the Chancery Court of the State of Delaware or the State of New York with respect to any disputes, directly or indirectly, to any matter of interpretation of this Indemnification Agreement or the respective rights or obligations of each of the parties hereto (whether or not any such party is otherwise subject to the jurisdiction or venue of the federal and state courts sitting in the States of Delaware or New York). Each of the parties specifically waives any objection which it may otherwise have to the jurisdiction or venue of any such courts and acknowledges that service of process may be made by mailing a copy thereof in accordance with the provisions of subsection (a) above.

(f)     Each of the provisions of this Indemnification Agreement is a separate and distinct agreement and independent of all others, so that if any provision hereof shall be held to be invalid or unenforceable for any reason, such invalidity or enforceability shall not affect the validity or enforceability of any other provisions hereof. This Indemnification Agreement is being entered into pursuant to the Delaware Company Law and as such is intended to be supplemental to any other rights to indemnification available to the Indemnitees. Nothing herein shall be deemed to diminish or otherwise restrict the Indemnitee's right to indemnification under any provision of the Certificate of Incorporation or bylaws of the Company.

(g)     No amendment, modification, termination or cancellation of this Indemnification Agreement shall be effective unless in writing and signed by both parties hereto.

9.     The obligations of the Company hereunder are solely Company obligations, and no officer, director, employee, agent, shareholder, member, manager or controlling person of the Company shall be subjected to any personal liability whatsoever to the Indemnitee, nor will any such claim be asserted by or on behalf of the Indemnitees or their respective successors, assigns, executors, administrators, legal representatives or heirs. The limitations on liability and indemnification contained in this Indemnification Agreement shall survive the completion, expiration, termination or suppression of this Indemnification Agreement.

*[Signature Page Follows]*

6

IN WITNESS WHEREOF, the parties hereto have executed this Indemnification Agreement on and as of the day and year first above written.

Life Uniform Holding Corp.

By: _____
Name:    Bryan Graiff
Title:    COO

_____
Robert J. Frezza

Capstone Advisory Group, LLC

By: _____
Name:    Robert J. Frezza
Title:    Member