## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| LUHC WIND DOWN CORP., *et al.*, [1] | Case No. 13-11391 (KJC) |
| Debtors. | Jointly Administered |
|  | **Objections Due: February 27, 2015 at 4:00 p.m. (ET)** |
|  | **Hearing Date: March 27, 2015 at 10:00 a.m. (ET)** |

## MOTION TO APPROVE PAYMENT TO ADMINISTRATIVE
## CREDITORS AND TO DISMISS CHAPTER 11 CASES

The debtors and debtors-in-possession (collectively, the "**Debtors**")[2] in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), hereby move (the "**Motion**") the Court for the entry of an Order, substantially in the form attached hereto as **Exhibit A**, authorizing payment to administrative creditors and professionals as set forth herein and dismissing the Debtor's Chapter 11 Cases. In further support of this Motion, the Debtors respectfully represents as follows:

### PRELIMINARY STATEMENT

On July 30, 2013, the Debtors completed a sale of substantially all of their assets to the Purchaser (defined below). Given the closing of the sale and the Debtors' inability to effectuate additional borrowings other than amounts previously funded under the Budget (defined below) and the lack of remaining assets to monetize, the Debtors will not be able to propose or confirm a plan in these cases and continue to incur administrative expenses. Based on these circumstances,

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer-identification number, are: LUHC Wind Down Corp. f/k/a Life Uniform Holding Corp. (1018), HUCI Wind Down, Inc., f/k/a Healthcare Uniform Company, Inc. (0640), and UCNI Wind Down, Inc., f/k/a Uniform City National, Inc. (0392).

[2] A detailed description of the Debtors and their businesses are set forth in greater detail in the Declaration of Robert Frezza (the "***First Day Declaration***"), filed contemporaneously with the Debtors' voluntary petitions for relief filed under chapter 11 of title 11 of the United States Code (the "***Bankruptcy Code***"), which were filed on May 29, 2013 (the "***Petition Date***").

the Debtors request that the Court grant the Motion.

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is core within the meaning of 28 U.S.C. § 157(b).

2.      The statutory predicates for the relief requested herein are: (a) sections 105(a), 349 and 1112(b) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended or modified, the "**Bankruptcy Code**"); (b) Rules 1017(f), 2002(a)(4) and 9013 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"); and (c) Rule 1017-2 of the Local Rules of Bankruptcy Practice and Procedure for the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**").

## BACKGROUND

3.      On May 28, 2013 (the "**Petition Date**"), each of the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "**Court**").

4.      From the Petition Date through the closing of the Sale (as defined below), the Debtors continued in possession of their properties and operated and managed their businesses as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.      No request has been made for the appointment of a trustee or examiner.

6.      On June 11, 2013, the Office of the United States Trustee appointed an official committee of unsecured creditors (the "**Committee**").

7.      The Debtors were the nation's largest independently owned medical professional supplier that offered a leading selection of popular third party and proprietary brands of scrubs, shoes, jackets, lab coats, stethoscopes and other medical accessories.

A.    **The Sale**

8.    On July 26, 2013, this Court entered an Order Approving Sale of Substantially all of the Debtors' Assets (Including Assumption and Assignment of Contracts) Free and Clear of all Liens, Encumbrances, Claims, and Interests  [Docket No. 268] (the "**Sale Order**").

9.    In accordance with the Sale Order, the Debtors closed on the sale of substantially all of its assets (the "**Sale**"), including all causes of action and avoidance actions, to Scrubs & Beyond, LLC (the "**Purchaser**") on July 30, 2013 (the "**Closing Date**").

10.    Following the Closing Date, the Debtors continued the process of resolving transition issues, completing post-closing obligations under the Sale documents, liquidating remaining assets, winding down its businesses, reconciling claims and paying administrative expenses.

B.    **Debtor-in-Possession Financing and the Budget**

11.    On December 17, 2013, the Court entered a *Final Order Pursuant to 11 U.S.C. Sections 105, 361, 362, 363 and 364 and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (1) Authorizing Incurrence by the Debtors of Post-Petition Secured Indebtedness With Priority Over All Secured Indebtedness and With Administrative Superpriority, (2) Granting Liens, (3) Authorizing Use of Cash Collateral by the Debtors Pursuant To 11 U.S.C. Section 363 and Providing For Adequate Protection and (4) Modifying The Automatic Stay* [Docket No. 186] as amended on July 29, 2013 by the *Order Amending the Final Order Pursuant to 11 U.S.C. Sections 105, 361,362, 363 and 364 and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (1) Authorizing Incurrence By The Debtors Of Post-Petition Secured Indebtedness With Priority Over All Secured Indebtedness And With Administrative Superpriority, (2) Granting Liens, (3) Authorizing Use Of Cash Collateral*

*By The Debtors And Providing For Adequate Protection And (4) Modifying The Automatic Stay* [Docket No. 275] (collectively, the "**DIP Order**") which approved the use of cash collateral and debtor in possession financing from CapitalSource Finance LLC,  ("**DIP Lender**") and approved a budget (the "**Budget**") for the Debtors' administration of these Chapter 11 Cases through their closure. The Budget contemplated payment of all then known administrative expense claims in the Chapter 11 Cases incurred before and after the Closing Date.

12.     Pursuant to the DIP Order, the Debtors waived, discharged and released any right it may have to challenge any of the Prepetition Obligations (as defined in the DIP Order) and the security for those obligations, and to assert any offsets, defenses, claims, objections, challenges, causes of action and/or choses of action against the DIP Lender and/or any of its affiliates, parents, subsidiaries, equity holders, managers, members, agents, attorneys, advisors, professionals, officers, directors, employees and affiliates of any of the foregoing, subject to challenge rights for the Committee and other third parties under the DIP Order.  No challenges to the secured claims asserted by the Committee or any other party were initiated prior to the deadline established by the DIP Order, rather, the Committee agreed with the DIP Lender to a resolution of potential claims against the DIP Lender, subordinated lender and others, that resulted in the funding by the DIP Lender of $1,100,000 (the "**Additional Contribution**") in addition to the Budget to fund expenses, claims and other items in or relating to the Chapter 11 Cases.

**C.     Claims Bar Date**

13.     On August 13, 2013 the Court entered the *Order (A) Establishing Bar Dates for Filing Proofs of Claim, (B) Approving the Form and Manner for Filing Proof of Claim; and (C) Approving Notice Thereof* [Docket No. 294] (the "**Bar Date Order**") which set  October 4, 2013

as the general bar date for filing proofs of claim in these cases, including all priority claims and claims under section 503(b)(9) of the Bankruptcy Code, and November 27, 2013 as the governmental bar date (collectively, the "**Bar Date**").

14.     The Debtors have filed two omnibus objections to claims in the Chapter 11 Cases and on May 30, 2014 the Court entered the:   (a) *Order Granting Debtors' First Omnibus Objection (Non-Substantive) to Claims Pursuant to 11 U.S.C. Sections 501(a) and 502(b), and Fed. R. Bankr. P. 3003(c)(2) and 3007 and the Bar Date Order to Certain Amended/Superseded Claims* [Docket No. 502]; and (b) *Order Granting Debtors' Second Omnibus Objection (Substantive) to Claims Pursuant to 11 U.S.C. Sections 501(a) and 502(b), and Fed. R. Bankr. P. 3003(c)(2) and 3007 and the Bar Date Orders to Certain Misclassified Claims and No Liability Claims* [Docket No. 503] (collectively, the "**Claims Orders**").   Additionally, the Debtors had discussions and negotiations with several creditors who agreed to file amended claims rather than litigate through a formal claims resolution process.

15.     After entry of the Claims Orders and review of the claims register,  the Debtors believe that all normal post-Petition Date administrative expenses in these Chapter 11 Cases have been paid.  The remaining administrative claims to be paid, other than professional fees and expenses totaling $1,219,916.24 (inclusive of $33,330.00 for fees and expenses of the Fee Examiner and his counsel, and $8,450.00 for 4th Quarter 2014 and 1st Quarter 2015 U.S. Trustee fees), are set forth on the attached claims schedule as  **Exhibit B** (the "**Administrative Claims Schedule**").

16.     The amounts remaining due and owing for professionals' fees and expenses in these Chapter 11 Cases, subject to approval of final fee applications, is estimated to be $1,086,830 after reductions agreed upon with the Court appointed fee examiner Richard Stern

(the "**Fee Examiner**") and as reflected on the attached fee schedule as **Exhibit C** (the

"**Professional Fee Schedule**"), each professional has agreed to a pro rata distribution of the

remaining funds after payment of the amounts on the Administrative Fee Schedule, which

amount is $750,569.

17.    The remaining unencumbered funds provided for in the Budget and that are in the

Debtors' account total $1,970,485.

18.    The Debtors have no other assets to liquidate or monetize.

### RELIEF REQUESTED

19.    Because the lack of remaining assets will not support the implementation of a

chapter 11 plan of reorganization in these cases, the Debtors request authorization for (a) the

payment *in full* to administrative creditors on and in the amounts set forth on the Administrative

Claims Schedule, (b) the payment of fees and expenses to professionals set forth on the

Professional Fee Schedule, subject to approval of final fee applications, *on a pro rata basis* from

funds remaining after payment of the claims on the Claims Schedule, and (c) the dismissal of the

Chapter 11 Cases pursuant to sections 1112(b)(1) and (b)(4)(A) of the Bankruptcy Code.

### BASIS FOR RELIEF

**A.    Payment of 503(b)(9) and other Administrative Claims**

20.    In *In re Global Home Products, LLC*, 2006 B.R. LEXIS 3608 (Bankr. D. Del.

2006) the Court denied a creditor's motion for immediate payment of a section 503(b)(9)

administrative claim, holding that "Section 503 does not specify a time for payment of these

expenses"[3] and, therefore, the timing of payment of administrative claims is left to the discretion

of the court.  In support of its ruling, the court cited an article that described Section 503(b)(9) as

---

[3]    *Id.* at *9.

a "rule of priority, rather than payment."[4] In determining when payment of a 503(b)(9) claim

should be made, the court relied on the three factor test found in *In re Garden Ridge*

*Corporation*, 323 B.R. 136 (Bankr. D. Del. 2005) when considering when an administrative

claim should be paid.   The test, which was applied in the context of a 503(b) administrative

claim, includes weighing: (a) the prejudice to the debtor, (b) hardship to the claimant, and (c)

potential detriment to other creditors. The *Global Home Products* court applied those factors and

denied the creditor's request for immediate payment.  *See*, *also*, *In re NE OPCO, Inc.*, 501 B.R.

233 (Bankr. D. Del. 2013) (creditor's request for immediate payment of 503(b)(9) claim denied

when creditor did not establish the necessity of payment).

     21.    At this juncture of the Chapter 11 Cases, the Debtors believe it is appropriate to

make payment to holders of section 503(b)(9) claims and other administrative claims as set forth

on the Administrative Claims Schedule.

**B.**    **Dismissal**

     22.    The Debtors believe, given the facts of this case, dismissal of the Chapter 11

Cases is the most efficient means to move these cases to closure.

     23.    Section 1112(b) of the Bankruptcy Code requires a court to dismiss or convert a

case if a party in interest establishes "cause," absent "unusual circumstances" specifically

identified by the Court that establish that the requested conversion or dismissal is not in the best

interests of the creditors and the estate. *See* 11 U.S.C. § 1112(b)(1) and (2).

     24.    Specifically, section 1112(b) of the Bankruptcy Code provides as follows:

     (1)    Except as provided in paragraph (2) and subsection (c), on request of a
party in interest, and after notice and a hearing, the court shall convert a
case under this chapter to a case under chapter 7 or dismiss a case under

---

[4]    Alan N. Resnick, *The Future of Chapter 11: A Symposium Cosponsored by the American College of Bankruptcy: The Future of the Doctrine of Necessity and Critical Vendor Payments in Chapter 11 Cases*, 47 B.C.L. Rev 183, 204-205 (2005)

this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.

(2)     The court may not convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter if the court finds and specifically identifies unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate, and the debtor or any other party in interest establishes that-

(A)     there is a reasonable likelihood that a plan will be confirmed within the timeframes established in sections 1121(e) and 1129(e) of this title, or if such sections do not apply, within a reasonable period of time; and

(B)     the grounds for converting or dismissing the case include an act or omission of the debtor other than under paragraph (4)(A)-

(i)     for which there exists a reasonable justification for the act or omission; and

(ii)     that will be cured within a reasonable period of time by the court.

11 U.S.C § 1112(b)(1) and (2).

25.     Accordingly, where a movant establishes "cause" under section 1112(b)(4)(A), a court must dismiss or convert the case regardless of the presence of "unusual circumstances" that might otherwise weigh against dismissal or conversion. *See* 11 U.S.C. § 1112(b)(1) and (2)(B). Whether a court dismisses or converts a debtor's case depends upon "whichever is in the best interests of creditors and the estate." 11 U.S.C. § 1112(b)(1). For the reasons set forth above, given the Debtors' belief that there are no assets left for a chapter 7 trustee to administer, dismissal, rather that conversion, may be in the best interests of creditors and the Debtors' estates.

26.     Section 1112(b)(4)(A) provides that "cause" exists for dismissal where a debtor incurs "substantial or continuing loss to or diminution of the estate" and there is an "absence of a

reasonable likelihood of rehabilitation." *See* 11 U.S.C. § 1112(b)(4)(A). In this case, dismissal is mandated under the plain language of section 1112(b)(1) because the Debtors can establish "cause" for dismissal under section 1112(b)(4)(A) due to the Debtors' substantial or continuing losses (given the Debtors' inability to access any additional borrowings under the DIP Order) and the absence of any reasonable likelihood of rehabilitation.

27.    As this Court is aware, the Debtors cannot sustain a stand-alone operational reorganization based upon, among other things, the Sale of all of the Debtors' assets, the level of the Debtors' secured debt and a lack of long term financing.

28.    While the DIP Lender previously agreed to provide a specific limited Budget and the Additional Contribution to properly wind down these Chapter 11 cases and ensure payment of administrative expenses incurred through the proceedings, the amount of the Budget and the Additional Contribution will not support a plan of liquidation and, in fact, will result in a shortfall to case professionals.  Continuing to incur costs going forward is not in the best interests of the Debtors' estates.  Furthermore, the Debtors believe that conversion to chapter 7 is not appropriate because, as this Court is aware, all of the Debtors' assets, including avoidance actions, have been monetized and transferred to the Purchaser.  Further, if any assets remained in the estates they would be liquidated for the benefit of the Debtor's DIP Lender. The DIP Lender and Committee both support dismissal rather than conversion.

29.    Accordingly, there is no dispute that the Debtors are incurring continued losses and that this case should be dismissed. *See, e.g., In re AdBrite Corp.*, 290 B.R. 209, 215 (Bankr. S.D.N.Y. 2003) ("Courts have held that a negative cash flow postpetition and an inability to pay current expenses satisfy the elements of§ 1112(b)(1)" [now § 1112(b)(4)(A)]); *In re Route 202 Corp.*, 37 B.R. 367, 376 (Bankr. E.D. Pa. 1984) ("Obviously, if the debtor has a negative cash

flow after the entry of the order for relief in the chapter 11 case, the [elements of former § 1112(b)(1) are] satisfied").

30.     Additionally, there is no reasonable likelihood of "rehabilitation" under section 1112(b)(4)(A) of the Bankruptcy Code. It is well-settled that reference in section 1112 to "rehabilitation" means something different than "reorganization," which includes liquidation. Courts consistently hold that "rehabilitation," as distinguished from "reorganization," denotes a restoration of a viable business and does not include liquidation. *Loop Corp. v. U.S. Trustee*, 379 F.3d 511, 516 (8th Cir. 2004) ("Courts have consistently understood 'rehabilitation' to refer to the debtor's ability to restore the viability of its business."); *In re Gonic Realty Trust*, 909 F.2d 624, 627 (1st Cir. 1990) ("[W]ith no business left to reorganize, Chapter 11 proceedings were not serving the purpose of rehabilitating the debtor's business."); *United Food & Commercial Workers Union, Local 21 v. Family Snacks, Inc. (In re Family Snacks, Inc.)*, 257 B.R. 884, 895 (8th Cir. BAP 2001) ("Congress has distinguished the narrower concept of rehabilitation from the broader concept of reorganization"); *AdBrite*, 290 B.R. at 216[5] ("rehabilitation does not mean the same thing as reorganization for purposes of Chapter 11 because a reorganization may include an orderly or complete liquidation. In this context, rehabilitation means to put back in good condition and reestablish on a sound basis. It signifies that the debtor will be reestablished on a secured financial basis, which implies establishing a cash flow from which its current obligations can be met.").

31.     As this Court is aware, the Debtors have sold all of their assets and have no business or financing to attempt any reorganization and no intention of attempting any reorganization. As such, there is no reasonable likelihood of rehabilitation.

---

[5]     Internal citations omitted.

32.    This Court and other bankruptcy courts in this District and Circuit have dismissed cases pursuant to section 1112(b) under similar circumstances, where the debtor lacks sufficient funds to confirm a chapter 11 plan and/or where the costs associated with plan confirmation would eliminate the possibility of a meaningful creditor recovery. *See, e.g., In re Bellmont Rock Holdings, LLC*, Case No. 13-15090 (CSS) [Docket No. 177, 183, 184, 190]; *IN re Trade Secret, Inc.*, Case No. 10-12153 [Docket No. 538, 555, 578]; *In re G.I. Joe's Holding Corp.*, Case No. 09-10713 (KG) (Bankr. D. Del. Mar. 10, 2011) [Docket No. 753, 773, 804]; *In re CFM US. Corp.*, Case No. 08-10668 (KJC) (Bankr. D. Del. Feb. 1, 2010) [Docket No. 1282]; *In re Foamex Int'l Inc.*, Case No. 09-10560 (KJC) (Bankr. D. Del. Jan. 20, 2010) [Docket No. 761]; *In re Alternative Distribution Systems, Inc.,* Case No. 09-13099 (PJW) (Bankr. D. Del. Dec. 1, 2009) [Docket No. 213]; *In re KB Toys, Inc.*, Case No. 08-13269 (KJC) (Bankr. D. Del. Dec. 1, 2009) [Docket No. 914]; *In re Wickes Holdings, LLC*, Case No. 08-10212 (KJC) (Bankr. D. Del. May 11, 2009) [Docket No. 1418]; *In re Magnolia Energy L.P.*, Case No. 06-11069 (MFW) (Bankr. D. Del. Feb. 12, 2007) [Docket No. 196]; *In re New Weathervane Retail Corp.*, Case No. 04-11649 (PJW) (Bankr. D. Del. Sept. 4, 2005) [Docket No. 566]; *In re Princeton Ski Shop*, Case No. 07-26206 (MS) (Bankr. D. N.J. Dec. 23, 2008) [Docket No. 546]; *In re Blades Board and Skate, LLC*, Case No. 03-48818 (Bankr. D. N.J. June 29, 2004) [Docket No. 126].  The attached dismissal order represents parties' cooperative efforts at reaching a solution within the confines of the Bankruptcy Code. Authorizing dismissal of the Debtors' Chapter 11 Cases simply furthers the Bankruptcy Code's goal of efficient administration of the Debtors' bankruptcy estate, eliminates the accrual of administrative expense obligations and brings closure to these cases in a timely manner.  Courts in other jurisdictions have also dismissed cases pursuant to section

1112(b) under similar circumstances. *See In re Buffet Partners, L.P.*, 2014 Bankr. LEXIS 3204 (N.D. Tex., July 28, 2014).

33.    Accordingly, the Debtors respectfully request that the Court enter an order dismissing the Chapter 11 Cases at its earliest convenience.

## NOTICE AND NO PRIOR REQUEST

34.    Notice of this Motion will be given to: (a) the Office of the United States Trustee; (b) counsel for the Committee; (c) counsel for secured lenders; (d) all parties in interest and creditors; and (e) all creditors requesting notice in this case pursuant to Bankruptcy Rule 2002 and this Court's Orders. In light of the nature of the relief requested herein, the Debtors submit that no further notice need be given.

35.    No prior request for the relief requested herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court enter the Order substantially in the form attached hereto as **Exhibit A**, (a) authorizing payments to administrative creditors and professional in accordance with **Exhibit B** and **Exhibit C** attached hereto, (b) dismissing the Debtors' Chapter 11 Cases, and (c) granting such other and further relief as is just and proper.

Dated:  January 21, 2015                **KLEHR HARRISON HARVEY**
Wilmington, Delaware                    **BRANZBURG LLP**

*/s/ Domenic E. Pacitti*
Domenic E. Pacitti (DE Bar No. 3989)
Michael W. Yurkewicz (DE Bar No. 4165)
919 Market Street, Suite 1000
Wilmington, Delaware 19801-3062
Telephone:    (302) 426-1189
Facsimile:    (302) 426-9193

Counsel to the Debtors and Debtors in Possession